IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| WILLIAM HEATH HORNADY, CHRISTOPHER MILLER, and TAKENDRIC STEWART,<br><br>      Plaintiffs,<br><br>v.<br><br>OUTOKUMPU STAINLESS USA, LLC,<br><br>      Defendant. | CASE NO.: 18-cv- 317 |

# COMPLAINT

Plaintiffs William Heath Hornady, Christopher Miller and Takendric Stewart bring this action against Defendant Outokumpu Stainless USA, LLC ("Defendant") seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, et seq.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. §§ 201, et seq. and 28 U.S.C. § 1331.

2. Venue is this Court is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

3. The Plaintiffs are all individuals residing in Mobile County, Alabama.

4. Defendant Outokumpu Stainless USA, LLC is a corporate entity registered to do business in Alabama. Defendant is subject to personal jurisdiction in the State of Alabama for purposes of this Lawsuit.

5. At all material times to this action, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce as defined by § 203(s)(1) of the FLSA.

6. Defendant is an interstate company whose employees are engaged in interstate commerce and whose employees handle and/or work on goods that moved in and/or were produced in commerce.

7. Defendant is an employer covered by the record-keeping, minimum wage, and overtime mandates of the FLSA.

## FACTS

8. Plaintiff William Heath Hornady was employed by Defendant as a First Operator at its facility located in Calvert, Alabama at all relevant times through June 30, 2018. Plaintiff, Christopher Miller was employed by Defendant as a First Operator at all relevant times through July 12, 2018. Plaintiff Takendric Stewart was employed by Defendant as an operator at all relevant times through the date this Complaint is filed.

9. Prior to May 6, 2018 (including the entirety of 2015 – 2017), Defendant would round recorded time when an employee clocked in before a scheduled shift to the scheduled start time (up to a maximum of 30 minutes). Employees who clocked in even 1 minute after the scheduled start of a shift were assigned "occurrences" which were tallied and could lead to discipline and termination. If employees clocked out even 1 minute before the scheduled end of shift they were also assigned "occurrences" which were tallied and could lead to discipline and termination. When employees clocked out between 1 and 14 minutes after the scheduled end of shift, the time worked was rounded down to the scheduled end of shift. Employees who clocked out more than 15 minutes after the scheduled end of shift without obtaining approval were also

given "occurrences" that could lead to discipline or termination. This was the defendant's practice for at least a 3 year period preceding May 6, 2018.

10. After May 6, 2018 Defendant would only "round" time to result in a maximum 7 minutes an employee would not be paid. Defendant instructed Plaintiffs that they were not to clock in more than 7 minutes before the scheduled start of shift. However, "occurrences" were still assigned when employees clock in either 1 minute after the scheduled start of a shift, or 1 minute before the scheduled conclusion of a shift. Defendant instructed Plaintiffs not to clock out more than 7 minutes after the scheduled end of shift, and employees who clock out more than 7 minutes after the scheduled end of shift without supervisor authorization results in an "occurrence."

11. Under Defendant's timekeeping practices until May 6, 2018, for example, if any Plaintiff clocked in at 5:31 p.m. for a scheduled shift at 6:00 p.m., he was not paid for time worked until 6:00 p.m.

12. Under Defendant's timekeeping practices after May 6, 2018 if, for example, if any Plaintiff clocked in at 5:54 p.m. for a scheduled shift at 6:00 p.m. he was not paid for time worked until 6:00 p.m.

13. Defendant's stated reason for its change in practices effective May 6, 2018 was to "align our timekeeping with Department of Labor regulations."

14. Since at least 2009, the regulations promulgated pursuant to the FLSA allowed "rounding" of time to the nearest quarter hour. The regulations only allow for rounding time "down" to result in 7 minutes of unpaid work. The regulations also only allowed for "rounding" time down if time would also be rounded "up" under an arrangement that "averages out so that the employees are fully compensated for the time they actually worked." 29 CFR 785.48(b)

15. Before clocking in, each Plaintiff was required to be dressed to perform work, including wearing a hard hat, boots and ear protection. Entry Operators, Setup Operators, First Operators and Inspectors arriving for shifts were required to coordinate work progress with employee being relieved from the prior shift. This required either that the arriving employee perform work before the scheduled start of a shift, or that the departing employee perform work after the scheduled end of shift, or both. Each Plaintiff would routinely perform work tasks before and after the scheduled shift times, while having clocked in.

16. As examples:

(a) In the 7 day period from February 11, 2018 – February 17, 2018, Plaintiff Hornady clocked in and out as follows:

|           |         | Clock In   | Clock Out |
|-----------|---------|------------|-----------|
| Sunday    | 2/11/18 | 5:42 p.m.  | 6:00 a.m. |
| Monday    | 2/12/18 | 5:44 p.m.  | 6:05 a.m. |
| Tuesday   | 2/13/18 | 5:42 p.m.  | 6:02 a.m. |
| Wednesday | 2/14/18 | 5:38 p.m.  | 6:01 a.m. |
| Thursday  | 2/15/18 | 5:37 p.m.  | 6:00 a.m. |
| Friday    | 2/16/18 | -          | -         |
| Saturday  | 2/17/18 | -          | -         |

During the period, Plaintiff Hornady should have been paid for 61 hours and 55 minutes, including overtime pay at a 1.5 x regular hour rate for 1 hour and 55 minutes. Instead, Plaintiff Hornady was paid for 60 hours, including overtime for only 20 hours.

(b) In a 7 day period from August 13, 2017 – August 19, 2017, Plaintiff Miller clocked in and out as follows:

4

|           |          | Clock In    | Clock Out  |
|-----------|----------|-------------|------------|
| Sunday    | 8/13/17  | -           | -          |
| Monday    | 8/14/17  | 5:47 a.m.   | 6:00 p.m.  |
| Tuesday   | 8/15/17  | 5:49 a.m.   | 6:00 p.m.  |
| Wednesday | 8/16/17  | -           | -          |
| Thursday  | 8/17/17  | 5:47 a.m.   | 6:00 p.m.  |
| Friday    | 8/18/17  | 5:45 a.m.   | 6:00 p.m.  |
| Saturday  | 8/19/17  | 5:53 a.m.   | 6:00 p.m.  |

During the period, Plaintiff Miller should have been paid for 60 hours and 59 minutes, including overtime pay at a 1.5 x regular hour rate for 20 hours and 59 minutes. Instead, Plaintiff Miller was paid for 60 hours, including overtime for only 20 hours.

(c) in a 7 day period from October 22, 2017 – October 28, 2017, Plaintiff Stewart clocked in and out as follows:

|           |           | Clock In    | Clock Out  |
|-----------|-----------|-------------|------------|
| Sunday    | 10/22/17  | -           | -          |
| Monday    | 10/23/17  | 5:44 p.m.   | 6:00 a.m.  |
| Tuesday   | 10/24/17  | 5:53 p.m.   | 6:01 a.m.  |
| Wednesday | 10/25/17  | -           | -          |
| Thursday  | 10/26/17  | -           | -          |
| Friday    | 10/27/17  | 5:44 p.m.   | 6:06 a.m.  |
| Saturday  | 10/28/17  | 5:50p.m.    | 6:04 a.m.  |

During the period, Plaintiff Stewart should have been paid for 49 hours and 0 minutes, including overtime pay at a 1.5 x regular hour rate for 9 hours and 0 minutes.  Instead, Plaintiff Stewart was paid for 48 hours, including overtime for only 8 hours.

17. Almost every month Defendant paid each Plaintiff a bonus.  The amount of the bonus was not included in the regular hourly rate from which the overtime pay rates were calculated.  The bonus payments are not any of the types of payments excluded in 29 CFR § 778.20(a)(1-8).

18. Each Plaintiff should have been paid at least the minimum cash wage for the time he was actually on the premises as calculated and recorded by Defendant after clocking in until clocking out during weeks that he worked less than 40 hours.

19. Each Plaintiff should have been paid for hours worked in excess of 40 hours in a single week at time and a half a regular hourly rate which included the monthly bonus payment.

20. Each Plaintiff should have been paid time and a half his regular hourly rate for all time he was actually on the premises as calculated and recorded by Defendant after clocking in and until clocking out until the end of his shift which exceeded 40 hours in a single week.

21. At all times since 2015 Defendant's policies systematically resulted in the Plaintiffs, and all hourly employees at the Defendant's facility in Calvert, Alabama considered collectively, being undercompensated for the time actually worked, and averaged out so that employees are compensated for less time than they actually worked.

## COUNT I
(Alleging Violations of the FLSA)

22. All previous violations are incorporated as though fully set forth herein.

23. Each Plaintiff is an employee fully entitled to the FLSA's protections.

24. Defendant is an employer covered by the FLSA.

25. The FLSA entitles employees to minimum hourly compensation of $7.25 for hours worked under 40 in a week. 29 U.S.C. § 206(b).

26. The FLSA entitles employees to pay at 1.5 times the employee's regular hourly rate for hours worked in excess of 40 hours a week. 29 U.S.C. § 207(a).

27. By failing to pay each Plaintiff for time he was clocked in working and/or available to work prior to, or after, his scheduled shift (unless the additional time exceeded 30 minutes on any one particular shift), Defendant violated the FLSA's minimum wage mandates and overtime pay mandates.

28. By failing to pay overtime at 1.5 times an hourly rate that included monthly bonus payments, Defendant violated the FLSA's overtime pay mandate.

29. In violating the FLSA, Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions.

## PRAYER FOR RELIEF

Each Plaintiff seeks the following relief:

A. All unpaid minimum wages from July 12, 2015 – present;

B. All unpaid overtime wages from July 12, 2015 – present;

C. Prejudgment interest;

D. Liquidated damages:

E. Litigation costs, expenses, and attorneys' fees; and

F. Such other and further relief as this Court deems just and proper.

Respectfully submitted,

**HOLSTON, VAUGHAN & ROSENTHAL, LLC.**

By: /s/ Ian D. Rosenthal

                                Ian D. Rosenthal – ROSEI6905
                                P.O. Box 195
                                Mobile, AL 36601
                                (251) 432-8883 (office)
                                (251) 432-8884 (fax)

**DEFENDANT TO BE SERVED BY CERTIFIED MAIL AS FOLLOWS:**

Outokumpu Stainless USA, LLC
Corporation Service Company, Inc. Reg. Agent
641 South Lawrence Street
Montgomery, Alabama 36104