IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **WILLIAM HEATH HORNADY, CHRISTOPHER MILLER and TAKENDRIC STEWART, Individually and on behalf of all other similarly situated,** | ) ) ) ) ) ) | CIVIL ACTION NO. 1:18-CV-00317-JB-N |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | |
| **OUTOKUMPU STAINLESS USA, LLC,** | ) ) ) | |
| Defendant. | ) ) | |

### DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL CONCERNING SECOND SET OF DISCOVERY

Defendant, OUTOKUMPU STAINLESS USA, LLC ("Defendant"), by and through the undersigned counsel, files this Response in Opposition to Plaintiffs' Motion to Compel Concerning Second Set of Discovery (Doc. 160) in accordance with the Court's Text-Only Order (Doc. 162) and the Court's Amended Rule 16(b) Scheduling Order For Phase 1 Discovery (Doc. 137).

As Plaintiffs note, the current Amended Rule 16(b) Scheduling Order for Phase 1 Discovery governs discovery through December 31, 2019. (Doc. 160; 137). However, the Scheduling Order also notes that the parties arranged to attend private mediation and a second settlement conference with the Court prior to December 31, 2019, and it anticipated that if the litigation is not resolved pursuant to those dispute resolution mechanisms, that additional

scheduling orders will be entered thereafter, **and the subject matter of discovery in later phases may include the subjects of Phase 1 Discovery.**  (Doc. 137 at 3).  Therefore, unlike Plaintiffs' suggestion, Plaintiffs were not under a pressing deadline that necessitated the filing of this motion prior to Defendant providing Plaintiffs with its response to Plaintiffs' conferral letter regarding Plaintiffs' Second Set of Discovery.

Nonetheless, in anticipation of the upcoming settlement conference on December 9, 2019, Defendant provides the following in response to Plaintiffs' Motion to Compel Concerning Second Set of Discovery to Defendant (Doc. 160).

For ease of the Court and pursuant to the Court's Amended Rule 16(b) Scheduling Order (Doc. 137 at 6), Defendant will quote in full each interrogatory and request for production to which Plaintiffs raised issue with the response provided.

**Interrogatories 1 and 3, RFP 7, 9:**

**INTERROGATORY NO. 1.**

Describe each and every oral communication Chris Comstock participated in relating to what Defendant describes as "legal compliance, including as to compensation and human resources policies and practices, during the relevant time period."  Include the date, or approximate date, conversation participants, and who said what.

**REQUEST NO. 7.**

All documents sent to, received by, or created by, Chris Comstock relating to what Defendant describes as "legal compliance, including as to compensation and human resources policies and practices, during the relevant time period."

Interrogatory No. 1 and Request No. 7 pertain to Defendant's former Human Resource Manager.  Plaintiffs claim that the requests are "narrowly limited" because they are limited to the subjects of Phase 1 Discovery.  However, Phase 1 Discovery topics are plentiful, including "what day and time of the week defendant designated as the workweek, bonus methodology, time and pay methodology, statute of limitations period and liquidated damages, maintenance of time and

pay records, and exemplar plaintiffs' and their supervisors' knowledge/belief about pay practices and working hours (as affects them individually)." (Doc. 137 at 3).   Mr. Comstock left the Company approximately two years ago.  Defendant listed Mr. Comstock in its disclosures for one reason - the very nature of the role of a Human Resources Manager could include involvement in each of the above topics in various capacities at any given time.  However, Defendant is not aware of any specific conversations Mr. Comstock had except to recall that he may have had some general discussions with Mr. Scheid and outside counsel, Gavin Appleby, regarding rounding and perhaps, regarding time clocks.  , the plain language of the interrogatory states, "describe each and every oral communication" Plaintiffs request for production requests "all documents" and these requests span years.  The plain language on its face is overly broad and there was no effort made to narrowly tailor the requests to information that is reasonably likely to this case involving overtime matters and the scope of the request is not proportional to the needs of this case.  As such, Defendant objected accordingly. For a practical example, each new hire would be told of work matters in orientation by HR.  That may have included when the workweek begins and about the time and pay and bonus methodology.  Mr. Comstock was involved in some orientations.  As a result, these requests would likely encompass each and every communication with many new hires over multiple years.  Those communications are clearly beyond the scope of any proportional needs of this case at this time.  Given the broad scope of the requests, Defendant further objected on the basis that it potentially seeks communications that would be protected by attorney-client privilege and to the extent it seeks communications with attorneys outside of the scope of the limited good faith issues in this case.  Since there is no limitation to "each and every communication," these requests encompass potentially privileged communications and Defendant did not want to risk waiver of same.

Notwithstanding and without waiver of its objections, Defendant advised that it is not aware of specific conversations involving Mr. Comstock. Nevertheless, Mr. Comstock's role may have included various discussions regarding legal compliance. As such, Defendant disclosed Mr. Comstock in a good faith method of disclosure. However, Mr. Comstock does not work for Defendant and has not worked for Defendant for some time. Further, counsel for Defendant have not been able to interview Mr. Comstock about this litigation. Defendant believes that Mr. Comstock may have had some involvement in discussions related to rounding and overtime matters alleged in this Complaint. If those discussions occurred, they likely involved Mr. Scheid, Mr. Appleby and perhaps another HR or payroll employee, but no specific discussions are recalled. Plaintiffs claim that this is not an adequate response to an interrogatory about the specifics of oral communications on the subjects identified. Although Plaintiffs do not like Defendant's response, Defendant stating that it is not aware of a specific conversation involving Mr. Comstock related to legal compliance, including as to compensation and human resources policies and practices, during the relevant time as it pertains to the specific allegations of this lawsuit is responsive. Defendant cannot provide specific details on conversations that it is not aware of.

Further, with regard to request for production no. 7, Defendant advised that it has not found any documents written by Mr. Comstock regarding matters related to this case. Again, in an attempt to respond to an overly broad request to what Defendant anticipates Plaintiffs are seeking with the request, Defendant responded that it has not found any documents written by Mr. Comstock regarding matters related to this case. To clarify, Defendant meant that it has not found any documents written by Mr. Comstock related to the specific allegations of this lawsuit involving rounding and overtime.

Rule 26(a)(1)(A)(i) requires a party to disclose the name of each individual likely to have

discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses.  In this case, Mr. Comstock was employed as a Human Resources Manager for Defendant during a portion of the time encompassed by Plaintiffs' allegations in this action and therefore, Mr. Comstock implemented Defendant's policies and practices during that time and he may have discoverable information by the very nature of his role. In compliance with Rule 26, Defendant disclosed Mr. Comstock accordingly.

## <u>INTERROGATORY NO. 3.</u>

Describe each and every oral communication David Scheib (sic) participated in relating to what Defendant describes as "legal compliance, including as to compensation and human resources policies and practices, during the relevant time period."  Include the date, or approximate date, conversation participants, and who said what.

## <u>REQUEST NO. 9.</u>

All documents sent to, received by, or created by, David Scheib (sic) relating to what Defendant describes as "legal compliance, including as to compensation and human resources policies and practices, during the relevant time period."

Interrogatory No. 3 and Request No. 9 are the same requests as Interrogatory No. 1 and Request No. 7 above, except that these requests pertain to Defendant's Vice President Human Resources, David Scheid.  Given the same, overly broad, plain language was used in the requests, Defendant objected on similar grounds as described in detail above.  Further, Defendant also noted that Mr. Scheid's daily duties easily involve the Company's compensation and human resources policies and practices and a request that seeks to describe each and every oral communication for years related to this daily duties would be unduly burdensome.

Notwithstanding and without waiver of its objections, Defendant supplemented its response to describe the communications between Mr. Scheid with the undersigned regarding wage and hour matters, including rounding of pay and incentive bonuses as described in Defendant's responses to Plaintiffs' initial interrogatory requests.  Defendant further explained

that Defendant revised its policy related to clocking in and out and introduced new time clocks to the premises around May of 2018 and as a result, Mr. Scheid and the Human Resources department and relevant management had to communicate the change in policy to all employees and explain the locations of the new time clocks.  Additionally, in its supplemental response to request for production no. 9, Defendant produced email correspondence between Mr. Scheid and the undersigned.  Again, Defendant has provided responses that are within the proportional needs of this case and Plaintiff claims it is not what is being sought.  But as described in detail, Plaintiffs' requests as currently drafted are entirely too broad and would encompass years of communications for Mr. Scheid's daily duties and that is beyond the proportional needs of this case.  Moreover, Plaintiffs take issue with the redactions on the documents provided.  With regard to Outokumpu_001507, the redaction is a privileged communication between Defendant and its counsel that is not subject to the good faith defense and is not responsive to the request and has been redacted accordingly.

**Interrogatories 2, 4(g), 4(h), and 5(d) (Capacity to bind Defendant/Contact Information for Persons with knowledge)**

**<u>INTERROGATORY NO. 2.</u>**

Does Defendant contend that, with regard to any subject relating to its compensation practices during the relevant time period, statements of Chris Comstock will bind Defendant in this litigation?

As Defendant's objections note, this request is vague and ambiguous and that may be causing a disconnect between what Plaintiffs apparently seek and what Defendant attempted to understand from the language of this request.  Based on their correspondence and motion, Plaintiffs apparently are using this request to determine the basis for Defendant's prohibition on Plaintiffs' direct contact with former management employee Chris Comstock.

Defendant acknowledges that Mr. Comstock was a management employee and therefore, his statements, regarding the scope of his employment, can be binding on the company, unless his statements exceeded his authority.  Therefore, Defendant contends that the undersigned counsel should be present in any communications with Mr. Comstock and Plaintiffs should not be permitted to directly communicate with Mr. Comstock.  As evidenced by the Alabama Office of General Counsel Opinion cited by Plaintiffs in their motion, contact is prohibited with those employees who have 'speaking authority' for the company.  (Doc 160 at 4).  Further, in Mr. Comstock's role, he did engage in communications with legal counsel and therefore, there is also risk of divulgement of privileged information that is beyond the limited scope of good faith defense in this case.

## INTERROGATORY NO. 4.

For each "Manager" (as the term "Manager" has been used to describe various current employees identified in Section B(3) of Defendant's Initial Disclosures dated August 30, 2019 under Rule 26(A)(1)(a)(i)) employed by Defendant as a "Manager" since July 30, 2015, but no longer employed by Defendant, please state:

    a.      Name;

    b.      Period of employment with Defendant;

    c.      Period of responsibility as a "Manager" with Defendant;

    d.      Areas / Departments of responsibility as "Manager" at the Calvert facility and time frame of such responsibilities;

    e.      Last known phone number, email, physical address;

    f.      Whether Defendant contends that the individual was involved in the underlying pay and timekeeping transactions.  And, if so, describe in detail the nature of the individual's involvement in the underlying pay and timekeeping transactions;

    g.      Whether Defendant contends that the individual was privy to privileged information, including work product, concerning the subject matter of this litigation; and

    h.      Whether Defendant contends that it is bound, in this litigation, by any statements

made by the individual concerning the subject matter of this litigation.

Defendant's first objection to this interrogatory is on the grounds that Plaintiffs have exceeded the number of permissible interrogatories. Plaintiffs claim that the objection is groundless because there is no limitation in the Court's scheduling orders. However, this Court's Local Rule 33 explicitly provides a limitation on the number of interrogatories a party may serve. Civil L.R. 33. Civil L.R. 33 allows for no more than twenty-five (25) written interrogatories and stated that the permissible interrogatories may not be expanded by the creative use of subparts. *Id* at (a)(1). Importantly, the local rule also states that the Court will not compel a party to answer any interrogatories served in violation of this rule. *Id.* at (a)(4). Local Rule 33 is consistent with Federal Rule of Civil Procedure 33, which limits interrogatories to twenty-five as well including subparts. Fed. R. Civ. P. 33 (a)(1). Nothing in the Court's scheduling orders in this matter to date contradict the limitation set by the Local Rules of this Court and Federal Rules of Civil Procedure.

Here, Plaintiffs First Set of Interrogatories contained 10 numbered requests, however, interrogatory no. 3 had subparts (a) and (b) and interrogatory no. had subparts (a) through (f). Other interrogatories did not specifically list subparts but the questions arguably were creatively using unidentified subparts as they were multifaceted requests. Notwithstanding, conservatively, based on Plaintiffs' numbering and lettering of subparts, there were 16 interrogatories. In Plaintiffs' Second Set of Interrogatories, at issue here in this motion to compel, there are an additional 7 numbered requests, however, interrogatory no 4. has subparts (a) – (h) and no. 5 has subparts (a) – (i). Similar to the first set, the other interrogatories arguably include the creative use of subparts as well. Notwithstanding, within interrogatory no. 4, Plaintiffs hit their maximum number of 25 interrogatories and Defendant objected accordingly. Given Plaintiffs have not moved the Court for permission and pursuant to Local Rule 33, this Court should not compel

Defendant to answer any interrogatories in excess of 25 at this time and therefore, no interrogatory after no. 4(f).

Notwithstanding Defendant's objections and without waiving same, Defendant provided an excel sheet with the 85 disclosed managers' dates of employment and area worked in. Defendant further explained the roles of these disclosed managers and the potential scope of their knowledge, which is limited with regard to the specific allegations of this lawsuit. These disclosed managers were disclosed because Defendant requires manager approval for any overtime worked. Therefore, these managers may have knowledge of circumstances involving overtime worked by specific employees that report to them and these managers have access to change a pay rate on a team member's time card if a team member works in a different role due to an absence. However, these managers do not have access to make a permanent change in the payroll system and their ability to change a pay rate is for time and attendance on a daily basis.

Despite having information regarding 85 current managers, Plaintiffs seek information regarding managers who no longer work at Outokumpu. At some point, a reasonable number of managers to be considered as potential witnesses should be considered and applied. It is extremely unlikely that former managers will be able to provide information that is not already available from current managers. Absent a specific reason why a former manager is needed as a potential witness, 85 potential witnesses seems adequate.

**<u>INTERROGATORY NO. 5.</u>**

Other than Melissa Pledger, for <u>each</u> person listed in Section B(3) of Defendant's Initial Disclosures dated August 30, 2019 under Rule 26(A)(1)(a)(i), state:

      a.      Whether the individual was ever an hourly employee of Defendant and, if so, for what time period;

      b.      The period of employment as a "Manager" with the Defendant;

      c.      Areas / Departments of responsibility as "Manager" at the Calvert facility and time

frame of such responsibilities;

d. Whether the individual was communicated with by counsel for Defendant about any aspect of this litigation prior to August 30, 2019;

e. How the individual's job responsibilities as a Manager provide that individual with "knowledge of Defendant's payroll systems";

f. How the individual's job responsibilities as a Manager provide that individual with "knowledge" "of aspects of compensation practices during relevant period."

g. Whether that "Manager" has been provided with, or otherwise obtained, a list of some (or all) of the Plaintiffs (including opt-in Plaintiffs) in this civil action and, if so, (i) for what purpose, and (ii) how and /or from whom such lists were obtained?

h. Whether that Manager has made any statement to anyone to the effect that he or she has, or would, obtain a list of some (or all) of the Plaintiffs (including opt-in Plaintiffs) in this civil action;

i. Whether that Manager has any information that any other employee of Defendant has made any statement to anyone to the effect that he or she has, or would, obtain a list of some (or all) of the Plaintiffs (including opt-in Plaintiffs) in this civil action;

As explained in detail above, the entirety of interrogatory no. 5 exceeds the limitation on interrogatories and therefore, this Court should not compel any answer to same.  Further, this request is overly broad and the scope of the request is beyond the proportional needs of the case at this time.

Defendant can agree to supplement its response to reflect the time periods these managers worked in area if they have worked in the managerial capacity in more than one area and whether these managers were formerly hourly employees.  However, Defendant objects to the production of contact information for these managers.  As a management employee, statements within the scope of the employment, that do not exceed the employee's authority, could bind Defendant and therefore, the undersigned represents the employee in the capacity of its representation of Defendant.  Plaintiffs should not be permitted to communicate directly with these employees

outside the presence of the undersigned as it could cause undue prejudice to Defendant and violate attorney-client privilege.  Defendant further objects to the requests contained within subparts (d) through (i) as the requests are not proportional to the needs of this case and not likely to make any material fact more or less likely.  In an effort to respond to what must be a rumor, Defendant states that its leadership did not provide a list of opt-in plaintiffs to its managers unless there was a legitimate need to know, such as to limited Human Resources professionals to assist with defense purposes related to mediation and Court conferences.  Defendant has no ability or knowledge to be responsive to sub-sections (h) and (i).

**Interrogatory 6 and RFP 6:**

**<u>INTERROGATORY NO. 6.</u>**

Describe in detail every communication concerning Defendant's practices concerning clocking in before / after scheduled shift times, and whether employees would be paid for some / all of the time employees clocked in before / after scheduled shift times that Carrie Walker (sic) and / or Michael Carter had at any time since July 30, 2015 with anyone (including each other).  Include the date (or approximate date), location, and participants in each such conversation.

**<u>REQUEST NO. 6.</u>**

All documents reflecting or relating to any communications about Defendant's practices concerning clocking in before / after scheduled shift times, and whether employees would be paid for some / all of the time employees clocked in before / after scheduled shift times that Carrie Walker (sic) and / or Michael Carter had at any time since July 30, 2015 with anyone (including each other).

Plaintiffs claim their requests are about two narrow subjects.  However, the plain language of the requests are the opposite of narrow because the requests seeks "every communication" and "all documents reflecting or relating to any communications" concerning clocking in and pay of a Human Resources employee with anyone and a Director with anyone, including one another.  The scope of this request is clearly beyond the proportional needs of the case as it encompasses each conversation where an employee mentions clocking in for a shift.

Notwithstanding the broad nature of the request and without waiver of its objections, Defendant sought to provide responsive information about conversations between Karrie Walker and Michael Carter. Specifically, Defendant explained that Ms. Walker spoke to Mr. Carter about the addition of time clocks in 2018 and the cost of those time clocks. Defendant further explained that Ms. Walker generally had communications with other non-hourly employees related to the addition of the new time clocks and communication regarding the new policy related to clocking in and out once it was implemented to non-hourly employees. With regard to the request for production, Defendant produced email correspondence between Ms. Walker and Mr. Carter related to the time clocks which is responsive to the request. The redaction is of communication between Defendant and its counsel that is not subject to the limited scope of good faith defense and therefore, it is privileged. Lastly, Defendant will produce the memo referenced in the correspondence previously produced.

**RFP 1:**

**REQUEST NO. 1.**

The "certain, relevant non-privileged documents from Plaintiffs and Opt-in Plaintiffs' personnel files" referred to in Defendant's Initial Disclosures which Defendant "may use to support its claims or defenses."

Defendant did not object to this request as it based on Defendant's initial disclosures. However, as Plaintiffs have argued throughout their motion, Phase 1 has limited subjects. Here, Phase 1 is limited to Exemplar Plaintiffs. (Doc. 137 at 3). Therefore, Defendant need only review the personnel files of the six exemplar Plaintiffs named in Plaintiffs' initial discovery requests, as opposed to the approximate two hundred opt-ins. Defendant will review and provide responsive information related to the 6 exemplar plaintiffs within 20 days of the date of this motion.

**RFP 3:**

**REQUEST NO. 3.**

The "incentive plans applicable to Defendant's hourly, non-exempt manufacturing employees at Defendant's Calvert, Alabama facility" referred to in Defendant's Initial Disclosures which Defendant "may use to support its claims or defenses."

Plaintiffs claim that Defendant did not provide the data for incentive plan bonuses as it indicated in its supplemental response to request for production no. 3.  However, Defendant did provide an excel document with its supplemental responses on October 24, 2019 labeled Outokumpu_001460 that contained the productive incentive data for each month of 2019 through September 2019.  This data, along with the Standard Operating Procedures related to the productive incentive, the production incentive data for 2017 and 2018, and Defendant's handbook have all been provided to Plaintiffs.

In conclusion, as demonstrated above, Defendant's objections to Plaintiffs' interrogatories and request for production are appropriate and should be sustained.  Defendant respectfully requests this Court deny Plaintiffs' Motion to Compel Concerning Second Set of Discovery to Defendant.

WHEREFORE, Defendant respectfully requests that this Court deny Plaintiffs' Motion to Compel Concerning Second Set of Discovery to Defendant (Doc. 160) and any other relief this Court deems appropriate.

DATED: December 3, 2019                          Respectfully submitted,

*s/ Gavin S. Appleby*
Gavin S. Appleby, GA Bar 020825
(Admitted *pro hac vice*)

**OF COUNSEL:**
**LITTLER MENDELSON, P.C.**
3424 Peachtree Road N.E., Suite 1200
Atlanta, GA 30326
Telephone: (404) 233-0330
Facsimile: (404) 233-2361
gappleby@littler.com


Jennifer F. Swain, ASB-7761-I67J

**OF COUNSEL:**
**LITTLER MENDELSON, P.C.**
420 20th Street North, Suite 2300
Birmingham, AL 35203-3204
Telephone: (205) 421-4700
jswain@littler.com

Attorneys for Defendant
Outokumpu Stainless USA, LLC

14

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 3, 2019, **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL CONCERNING SECOND SET OF DISCOVERY** was filed electronically through the ECF system, is available for viewing and downloading from the ECF system and will be sent electronically to the registered participants identified on the Notice of Electronic Filings, including Plaintiffs' counsel of record as follows:

Ian D. Rosenthal
HOLSTON, VAUGHAN & ROSENTHAL, LLC
P. O. Box 195
Mobile, AL  36601
idr@holstonvaughan.com


Patrick H. Sims
SIMS LAW FIRM, LLC
P. O. Box 7112
Mobile, AL  36670
Tel: 251.725.1316
patrick@simslawfirm.net


*/s/ Gavin S. Appleby*
Gavin S. Appleby
Counsel for Defendant