**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **WILLIAM HEATH HORNADY,** | ) | |
| **CHRISTOPHER MILLER, and** | ) | |
| **TAKENDRIC STEWART,** | ) | |
| | ) | |
| Plaintiffs, | ) | CASE NO.: 18-cv- 317-JB-N |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| **OUTOKUMPU STAINLESS USA, LLC,** | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' MOTION FOR SANCTIONS, RELATED MOTION TO COMPEL WITH INCORPORATED BRIEF (AND REQUEST FOR EXPEDITED BRIEFING SCHEDULE)

### I.     Introduction.

This motion is filed, with reluctance, pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure as well as the court's inherent power is "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R.R., 370 U.S. 626, 630-631 (1962) It is now apparent that Defendant's personnel have repeatedly violated this Court's discovery orders and that those violations justify significant sanctions. The alternative is that this case is stalled indefinitely because the hundreds of Plaintiffs cannot fully quantify damages because the Defendant continues to refuse to provide the data it maintains in the usual course of business. That is an unworkable alternative from a litigation management standpoint, and it should be entirely unacceptable to the Court.

Whatever the Court may decide about sanctions involves substantial discretion. No matter what that determination is the Plaintiffs will still need at least some of the data they are entitled to which Defendant has failed or refused to produce. Exactly what Plaintiffs will still need the Court to compel Defendant to produce depends on what sanctions the Court imposes. The current

1

scheduling Order (Doc. 201, PageID.2048) was entered after the Magistrate Judge heard from the parties and after Plaintiffs' counsel specifically explained that the Plaintiffs would need about two months to generate quantifications related to damages **after** Defendant produced data files with the relevant time and pay data.

Mindful of the warning in the scheduling Order that motions to compel "should be brought in a timely manner so as to allow sufficient time for the completion of discovery according to the schedule set by the Court" (Doc. 201, PageID.2055) the associated and intertwined motion to compel part of this submission is expeditiously filed after Plaintiffs were unable to obtain what Defendant violated the stipulated Order which would have, if complied with, addressed the issue. (See Doc. 212, PageID.2438)  **To maximize the odds that this case will stay on track for final resolution as provided for by the current scheduling Order, Plaintiffs' also move the Court to shorten the standard briefing times as it may deem appropriate.**  These discovery issues have been identified for months, and have already been brought to the Court's attention, so there is no good reason that whatever Defendant might have to say cannot be said quickly.

 In brief summary, here is where we stand: Defendant provided significantly inaccurate and incomplete **verified** responses to the Court's initial Orders in 2018, and even after its misconduct came to the attention of counsel for both Plaintiffs and Defendant the Defendant has continued to ignore its obligations as a litigant. Remarkably, Defendant has failed to comply with even the provisions of the May 28, 2020 Order which Defendant stipulated to just days before it was entered. (Doc. 212, PageID.2438)

Defendant's actions, and inaction speak louder and more accurately than words.  There is nothing that would allow the Court to plausibly conclude that the situation can be blamed on

negligence, misunderstanding, or some sort of as-yet-undescribed inability to comply that would provide any legitimate reason not to impose the significant but proportional sanctions requested.

This submission is also fairly considered against the backdrop of the FLSA jurisprudence which already provides significant adverse litigation consequences for employers who violate their statutory recordkeeping duties. The sanctions proposed by Plaintiffs are intended to put the parties in approximately the same position as if Defendant failed to come forward with evidence of the precise amounts it claims it should get credit for paying. This is entirely fair because – rather than come forward with nothing – Defendant provided only inaccurate and inflated amounts.

## II.   Relevant Authorities.

> The Court in Mt. Clemens held that when employers violate their statutory duty to keep proper records, and employees thereby have no way to establish the time spent doing uncompensated work, the "remedial nature of [the FLSA] and the great public policy which it embodies ... militate against making" the burden of proving uncompensated work "an impossible hurdle for the employee." Id., at 687, 66 S.Ct. 1187; see also Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 173, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) ("The broad remedial goal of the statute should be enforced to the full extent of its terms"). Instead of punishing "the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work," the Court held "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." 328 U.S., at 687, 66 S.Ct. 1187. Under these circumstances, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Id., at 687–688, 66 S.Ct. 1187.

Tyson Foods, Inc. v. Bouaphakeo, __ U.S. ___; 136 S. Ct. 1036, 1047 (2016)

The employer's recordkeeping duty is not delegable. Kuebel v. Black & Decker Inc., 643 F.3d 352, 363 (2d Cir. 2011) "It is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment." Allen v. Bd. of Pub. Educ. for Bibb

Cty., 495 F.3d 1306, 1315 (11th Cir. 2007) (citing Mt. Clemens, at 687)      The information and

data the employer is "required" to maintain and preserve under the statute is detailed in 29 CFR

§§ 516.1 et. seq and includes (emphasis added):

> (6)(i) **Regular hourly rate of pay for any workweek** in which overtime compensation is due under section 7(a) of the Act, (ii) explain **basis of pay by indicating the monetary amount paid on a per hour, per day, per week**, per piece, commission on sales, **or other basis**, and (iii) the amount and nature of each payment which, pursuant to section 7(e) of the Act, is excluded from the "regular rate" (these records may be in the form of vouchers or other payment data),

> (8) **Total daily or weekly straight-time earnings or wages due for hours worked during the workday or workweek**, exclusive of premium overtime compensation,

> (9) Total premium pay for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under paragraph (a)(8) of this section,

> (10) **Total additions to or deductions from wages paid each pay period** including employee purchase orders or wage assignments. Also, **in individual employee records, the dates, amounts, and nature of the items which make up the total additions and deductions**,

> (11) Total wages paid each pay period,

> (12) **Date of payment and the pay period covered by payment**.

29 CFR § 516.2(a)[1]. And:

> *Wage rate tables.* From their last effective date, **all tables or schedules** of the employer which provide the piece rates or other rates **used in computing straight-time earnings, wages, or salary, or overtime pay computation**.

29 CFR § 516.6(a)(2)

> Thus, in situations where the employer's records cannot be trusted and the employee lacks documentation, the Supreme Court held "that an employee has carried out his burden if he proves that he has in fact performed work

---

[1] By regulation, these records are to be preserved for three years. 29 U.S.C. § 516.5.  Plaintiffs' records requests go back three years before the date the collective action was filed so Defendant had an undeniable obligation to preserve its records under Fed. R. Civ. P. 37(e).  Regardless, Defendant has never claimed that the responsive data has been deleted.

for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."

Allen, at 1315–16 (quoting Mt. Clemens)

> Indeed it is axiomatic that **where uncertainty as to the damages stems from the defendant's illegal conduct, the defendant should not benefit from the uncertainty it created.** Mid–America Tablewares, Inc. v. Mogi Trading Co. , Ltd., 100 F.3d 1353, 1365 (7th Cir.1996) (specifying that in the calculation of damages, "doubts should be resolved against the wrongdoer"). The fact that the calculation of economic damages cannot be made with absolute certainty does not preclude recovery of those damages. *See, e.g.,* Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931) ("**The wrongdoer is not entitled to complain that [damages] cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise**."). This general rule has been adopted by courts in Section 303 actions. *See, e.g.,* Great Coastal Express, Inc. v. Int'l Bhd. Of Teamsters, Chauffers, Warehousemen and Helpers of America, 511 F.2d 839 (4th Cir.1975).

Fid. Interior Constr., Inc. v. The Se. Carpenters Reg'l Council of The United Bhd. of Carpenters & Joiners of Am., 2009 WL 2477637, at *3 (N.D. Ga. Aug. 11, 2009) (emphasis added), aff'd sub nom. Fid. Interior Const., Inc. v. Se. Carpenters Reg'l Council of United Bhd. of Carpenters & Joiners of Am., 675 F.3d 1250 (11th Cir. 2012)

These principles apply to both time and pay records. This Defendant's production of inaccurate records warrants no better treatment than other employers receive in the more commonplace situations where they fail to keep records of cash payments or creditable expenses. See Perez v. Palermo Seafood, Inc., 548 F. Supp. 2d 1340, 1347 (S.D. Fla.), aff'd, 302 F. App'x 905 (11th Cir. 2008) (issue created by cash wage payments); Nail v. Shipp, 2019 WL 3719397, at *9 (S.D. Ala. Aug. 6, 2019) (employer could not claim undocumented meal expenses).

The applicable precedents regarding sanctions apply just as clearly.  Plaintiffs submit that

the following text from Malautea v. Suzuki Motor Co., 987 F.2d 1536, 1542–43 (11th Cir. 1993)

applies here:

> The sanction of striking the defendants' answers and entering a default
> judgment against them was authorized by Rule 37(b)(2)(C). This rule
> provides in relevant part:
>
>> If a party ... fails to obey an order to provide or permit discovery ...
>> the court in which the action is pending may make such orders in
>> regard to the failure as are just, and among others the following:
>>> .   .   .
>
> Fed.R.Civ.P. 37(b)(2)(C). This rule gives district judges broad
> discretion to fashion appropriate sanctions for violation of discovery
> orders; however, this discretion is guided by judicial interpretation
> of the rule. For example, a default judgment sanction requires a
> willful or bad faith failure to obey a discovery order. Societe
> Internationale pour Participations Industrielles et Commerciales v.
> Rogers, 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255
> (1958). Violation of a discovery order caused by simple negligence,
> misunderstanding, or inability to comply will not justify a Rule 37
> default judgment or dismissal. In re Chase and Sanborn Corp., 872
> F.2d 397, 400 (11th Cir.1989) (inability to comply); Equal
> Employment Opportunity Comm'n v. Troy State Univ., 693 F.2d
> 1353, 1357 (11th Cir.1982) (simple negligence or
> misunderstanding). . . .
>
> In this case, the defendants richly deserved the sanction of
> a default judgment. . . . The plaintiff specifically requested the
> General Motors information pertaining to testing, design, and
> marketing of the Samurai and similar vehicles. In Judge Edenfield's
> orders, he expressly referred to these materials. Therefore, the
> judge's orders undoubtedly compelled the defendants to provide the
> General Motors information.

Malautea v. Suzuki Motor Co., 987 F.2d 1536, 1542–43 (11th Cir. 1993) (footnotes omitted)  More

recently, those simple principles were cited and applied in this District Court in Navarro v. BP

Expl. & Prod., Inc.. 2019 WL 5445753, at *3 (S.D. Ala. Sept. 23, 2019), report and

recommendation adopted, 2019 WL 5431318 (S.D. Ala. Oct. 23, 2019) (dismissal as sanction for

"clear pattern of willful refusal.") <u>United States v. Certain Real Prop. Located at Route 1, Bryant, Ala.</u>, 126 F.3d 1314, 1317 (11th Cir. 1997) reflects the same principles.

> When a party refuses to participate in discovery, the court may issue an order compelling the party to disclose. Fed. R. Civ. P. 37(a). If a party then disobeys the court's order, more severe sanctions are available, including the entry of a default judgment. Fed. R. Civ. P. 37(b)(2)(C). These sanctions "are intended to 1) compensate the court and parties for the added expenses caused by discovery abuses, 2) compel discovery, 3) deter others from engaging in similar conduct, and 4) penalize the offending party or attorney." <u>Wouters v. Martin County</u>, 9 F.3d 924, 933 (11th Cir. 1993). Before a district court imposes the sanction of default judgment, the court must find a willful or bad faith failure to comply with its discovery orders. <u>Malautea v. Suzuki Motor Co.</u>, 987 F.2d 1536, 1542 (11th Cir. 1993). But a court does not need to first impose lesser sanctions if those sanctions would be ineffective. <u>Id</u>. at 1544.

<u>Thornton v. Hosp. Mgmt. Assocs., Inc.</u>, 787 F. App'x 634, 638 (11th Cir. 2019)

Fed. R. Civ. P. 26 is pertinent because Plaintiffs can only assume that Defendant's well-respected counsel have candidly and accurately described to the Court in various recorded teleconferences and hearings their own self-professed willingness to make sure the Defendant was providing required information.  If so, there is no excuse for the Defendant's acts:  Rule 26 applies to parties which are complicit in violations, because attorneys can only certify their own reasonable efforts:

> Rule 26(g) thus imposes upon attorneys the duty to make a reasonable investigation to assure that their clients have provided all available responsive information and documents. <u>Sexton v. U.S.</u>, No. 6:99 CV 102-ORL-3AB-122, 2001 WL 649445, at *1 (M.D.Fla. April 12, 2001). **The signing attorney is not required to certify the truthfulness of the client's response, only that he made a reasonable effort to insure that his clients provided all responsive documents and information**. <u>Tampa Port Auth. v. M/V Duchess</u>, No. 94-1727-CIV-T-23C, 1997 WL 1175718, at *6 (M.D.Fla. June 6, 1997) (citing 1983 Advisory Committee notes).

<u>Bernal v. All Am. Inv. Realty, Inc.</u>, 479 F. Supp. 2d 1291, 1333-1334 (S.D. Fla. 2007) (emphasis added) (sanctions apply to parties when they are complicit in the violations).

### III.   <u>The Sanctions Requested and The Misconduct Warranting Sanctions</u>.

A. *Sanctions Requested*.

The sanctions requested by Plaintiffs are significant, but they are also directly correlated with Defendant's substantive litigation misconduct.  It may help to frame the discussion of what Defendant did, and did not do, by first setting out a set of sanctions that Plaintiffs submit would be justified.  Of course, other alternatives are within the Court's discretion.  All of the information the Defendant has mis-stated, concealed, or omitted is information which would increase Defendant's liabilities to the Plaintiffs (as compared to the information which was disclosed) and/or it is information which is essential to calculate Defendant's liability so this case can move forward.  Because the FLSA does not provide for pre-judgment interest, the prolonged delay in adjudication provides a significant financial benefit to Defendant because Defendant continues to hold and use the money that the Plaintiffs were entitled to be paid years ago.  The specific sanctions Plaintiffs ask the Court to impose follow.

1.      Entry of judgment under the Fair Labor Standards Act ("FLSA") for unpaid, underpaid, and late-paid overtime in favor of all Plaintiffs.

2.      With regard to the alternative FLSA / common law claim(s) asserted for the time Plaintiffs were clocked in during weeks in which Plaintiffs worked less than 40 hours, entry of judgment in favor of all Plaintiffs' with damages to be quantified based on Defendant's choice of:

   (i)      FLSA minimum wage plus equal liquidated damages (i.e. $14.50 an hour), or

   (ii)     Each Plaintiff's actual rate of pay each week.

3(a).    Because Defendant has not produced accurate wage rate data, a ruling that all FLSA overtime damages quantifications will be based on the highest hourly day rates each Plaintiff was

ever paid since July 30, 2015 (with a $.50 per hour upwards adjustment for time worked between 6:00 p.m. and 6:00 a.m.)

      (b)    An Order requiring Defendant to arrange, at its sole expense, for Plaintiffs' counsel to inspect, download, and copy, the historical pay rate data of each Plaintiff to determine the highest pay rate code since July 30, 2015.  This data review should be done at the United States District Courthouse for the Southern District of Alabama to ensure that the Court can effectively and expeditiously intervene to supervise that process if necessary.

      4.    Because Defendant now admits that the first paycheck issued to employees during a calendar month may include "trued up," upwardly adjusted, amounts of pay, including unspecified amounts **of overtime pay** that Plaintiffs earned in earlier pay periods but which Defendant did not pay,  a proportionate sanction is to enter an Order that Defendant is not entitled to any credit against overtime pay obligations for amounts designated as "overtime" in **only** the first paychecks of a calendar month.[2]

      5.    The claims for pay in weeks in which less than 40 hours were worked (discussed in paragraph 2) depend on how much time the Plaintiffs were clocked in for and should have been paid for versus how much time they were actually paid.[3]  For shifts in which more, or less,

---

[2] This is because nothing the Defendant has produced under assorted prior Court orders identifies the number of hours (or amount of money) from earlier pay periods that are paid in later paychecks. These "trued up" amounts for prior pay periods cannot be credited against Defendant's overtime pay liability for the two week period that the later paycheck covers, and Defendant's non-compliant discovery responses make it impossible to determine how much, if any, of what is documented as overtime pay can be properly credited to Defendant.

[3] In this respect, the overtime pay claims are somewhat simpler because they boil down to a comparison of how much overtime **pay** the Plaintiffs actually received versus what they should have been paid for overtime under the FLSA.  The claims for shorted time in weeks that overtime is not worked depends on how much **time** was not already paid for at regular rates.

than 12.0 hours is recorded by Defendant, Defendant cannot show how much time it actually approved for payment. Therefore, the Court should:

      (a)    Enter an Order stating that all time in excess of 12.0 hours a shift that was recorded as being considered for payment shall be presumed to be unpaid; and

      (b)    Enter an Order stating that all time recorded under 12.0 hours a shift that was recorded as being  considered for payment shall be presumed to be unpaid in excess of the amount of time the employee was clocked in.

Very conservatively calculated, Defendant's acts and omissions have resulted in a delay of 6 months in this litigation.  Therefore, as a monetary sanction Plaintiffs request that all amounts awarded to Plaintiffs should be increased by 3%.  That is half of the 6% pre-judgment interest rate under Ala. Code § 8-8-1.  That statute admittedly has no direct application, but its monetary provisions apply to contract cases where damages are certain or capable of being made certain. Finger v. State Farm Fire & Cas. Ins. Co., 2011 WL 2621020, at *5, n. 2 (S.D. Ala. July 5, 2011) Even if the Court orders the Defendant to provide all the data Plaintiffs are entitled to within 30 days, the Plaintiffs will have been delayed in quantifying damages by at least 6 months by Defendant's misconduct.

    B.   *Misconduct Warranting Sanctions.*

This FLSA collective action was filed in July, 2018.  It was filed shortly after the individual civil action Hartery v. Outokumpu Stainless USA, LLC case was filed on June 29, 2018. (1:18-cv-00291-KD-B, Doc. 1, PageID.1)  The Hartery matter has now been combined with this civil action. The Magistrate Judge assigned to this matter is familiar with Plaintiffs' efforts to obtain complete discovery responses from Defendant which have resulted in multiple motions, several audio-

recorded hearings, and resulting Orders – some stipulated and some not.  In hindsight, Defendant's sanctionable misconduct began at the very outset and has never abated.

In FLSA cases, the judges of this District Court routinely enter Rule 16(b) Scheduling Orders promptly after an Answer is filed to "promote the just, speedy, and inexpensive administration of justice." On **July 30, 2018**: such an order was entered in the Hartery matter.  That Order required Defendant to file "a **Verified** Summary of **all hours worked** by the plaintiff during each relevant pay period, **the rate of** pay and wages paid, **including overtime pay** if any" and to serve on Plaintiff's counsel  "a copy of **all time sheets and payroll records that support or relate to the time periods in the Verified Summary.**"  (1:18-cv-00291-KD-B, Doc. 11, PageID.48)

In this Hornady action, the Preliminary Scheduling Order entered **September 4, 2018** (Doc. 24, PageID.265) required the exact same information.

On **September 11, 2018** in the Hartery matter the Defendant filed what it stated was a verified summary of hours and served certain other records. (1:18-cv-00291-KD-B, Doc. 11, PageID.88)  That information was obviously incomplete and inaccurate which Plaintiffs' counsel brought to Defendant's counsel's attention and which, on the surface, Defendant addressed on **October 3, 2018**. (Discussed below)

While that was going on in Hartery, on **September 21, 2018** the parties in this Hornady case filed a Joint Motion to Modify or Set Aside Preliminary Scheduling Order. (Doc 47, PageID.368)  In that joint submission, the parties represented that the most important of the Court's initial interrogatories to the Plaintiffs was number 6 which required an accounting of claims, but because the Plaintiffs did not have complete records:

> **Therefore, the parties agree that the Defendant should produce a copy of all time sheets and payroll records as the first part of discovery**.

And:

> The same **verified records of the Defendant** will encompass the relevant information sought from Plaintiff in the Court's Interrogatory Number 1 (employment period) and Number 5 (regular rate of pay).

On **October 3, 2018** in the <u>Hartery</u> case the Defendant filed what it described as a Notice of a Revised Filing of Defendant's Verified Summary of Hours Worked.  (1:18-cv-00291-KD-B, Doc. 20, PageID.98)   The transmittal email from Defendant described what was provided as (emphasis added):

> . . . a **verified** summary of hours worked by the plaintiff, **including the rate of pay**, wages paid and overtime pay.  I've also included supporting time records, as called for in the court's order.  Where possible, I've provided the records in Excel format.

(Ex. 1.A, transmittal email)  This revised "Verified Summary" was provided in <u>Hartery</u> because Defendant's original "Verified" summary had omitted data before April, 2017 and included "incorrect rates of pay."  (1:18-cv-00291-KD-B, Doc. 20, PageID.98) That second, revised attempt by Defendant at a data production identified just one "pay rate" for each two-week pay period. Various columns had dollar amounts and hour amounts over two week periods.  A sample page is attached as Exhibit 1.B.[4]  Defendant also provided several formats of time documents (all in black and white).  (Sample pages attached as Ex. 1.C) Some of those formats had "Total time" or "Totaled Amount" columns which sometimes vary from 12.0.  It is now known that when displayed in black and white those records are inaccurate because whether that time was approved for payment or not is only shown by whether those numbers are in red or green.

---

[4] One non-issue should be mentioned for clarity's sake.  In October, 2018 Defendant's counsel made it clear  that the pay rates listed were day rates, and that any regular hours worked between 6:00 p.m. and 6:00 a.m. would be paid at $.50 an hour more.  Although those night shift differential rates have never been specified in any subsequent data production, Plaintiffs are **<u>not</u>** complaining about that because they have understood since October, 2018 that those night shift rates  could be calculated by adding $.50 to the stated day rates.

In this <u>Hornady</u> case, the Magistrate Judge held a conference call to address scheduling issues on **October 9, 2018** and the parties then jointly submitted a proposed Amended Preliminary Scheduling Order on **October 19, 2018** (Doc 61. PageID.416).   A Superseding Preliminary Scheduling Order based upon that joint submission was entered **October 25, 2018**. (Doc 64, PageID.459) with the stated purpose of securing "the just, speedy, and inexpensive determination of the action."  Defendant has engaged in a full scale effort to sabotage that result.

Plaintiffs emphasize that at the time they jointly proposed the Amended Scheduling Order on **October 19, 2018** they had been (mis)led to believe that what Defendant had produced in the <u>Hartery</u> case for exactly the same sort of information was legitimately and truthfully verified.[5] This is because the Defendant's production was presented as tracking the Order which required "a **Verified** Summary of **all hours worked** by the plaintiff during each relevant pay period, **the rate of** pay and wages paid, **including overtime pay** if any" and  "a copy of **all time sheets and payroll records that support or relate to the time periods in the Verified Summary**."  (1:18-cv-00291-KD-B, Doc. 11, PageID.48)   Plaintiffs were (mis)led to believe that the information produced included all required pay rates (except night shift differential rates), and they had been (mis)led to believe that Defendant had produced the real time and payroll records that were supposed to support its Verified Summary.

Now, in 2020 Defendant's personnel have substantively admitted that the responses were falsely verified, and that Defendant had manually prepared for specific litigation records which were inaccurate and incomplete. None of that was known to Plaintiffs in 2018 and Defendant's

---

[5] To be clear, Plaintiffs' counsel has no reason whatsoever to believe that the attorneys for Defendant had any reason to know that the information being provided in 2018 was not what the Court's Orders required.  The Defendant itself, however, certainly know that what it prepared was not what the Orders required.

misrepresentations and omissions set the stage for a huge amount of subsequent work about calculating FLSA liability which is now known to be largely useless.

The superseding Order in this Hornady case stated that by **October 31, 2018** the Defendant "shall produce the following information for each Plaintiff" (with the same information to be provided for other Plaintiffs who joined the litigation).  The information to be produced included (emphasis added):

> c. A separate Excel Data file for each Plaintiff reflecting the following information as set out in the "Earnings Statements" provided to each employee every two weeks: pay date; **pay period ending date**; gross pay; total overtime earnings; **regular shift hourly rate(s), including multiple regular shift hourly rates if applicable**. To the extent the corresponding "Earnings Statements" are also readily available, they are to be produced, and if they are not produced, the Plaintiffs may request documents that would be reasonable to produce and that may be helpful before the settlement conference. If this becomes an area of dispute, any party may request appropriate relief from the Court by filing a motion. **This data shall be for July 1, 2015 – present (or employment termination date). This information shall be verified by the Defendant.**

(Doc 64, PageID.461)

On **October 31, 2018** Defendant produced what it represented was the information required by the Scheduling Order in <u>Hornady</u> for the 32 Plaintiffs at that time.  With regard to regular rates of pay, it was represented that

> With regard to the regular rates, **the only other wage rates paid other than those listed in the "Pay Rate" column are for night shifts (6pm – 6am), which have a .50/hr premium for straight time and .75/hr for OT**.

(Transmittal e-mail, Ex 2.A)  Illustrative examples of the pay detail spreadsheets and time records (in black and white) produced at that time are attached as Exhibit 2.B and 2.C.  In relevant part those documents were substantively the same as what had previously been verified and produced in <u>Hartery</u>.

14

Discovery continued without Court involvement and when the pay data spreadsheets for those 32 Plaintiffs contained apparent errors or inconsistencies, Plaintiffs' counsel would request (and Defendant would provide) the actual Pay Summaries and / or Earnings Statements that accompanied specific two week pay periods.  Using that data, the Plaintiffs complied with the Court's Order **requiring** damages calculations in advance of a Settlement Conference that was ultimately held on January 31, 2019. (Doc. 64, PageID.462-463, Doc 99, PageID.605)   The (mis)information Defendant provided was incorporated in precisely calculated damages estimates for the 32 Plaintiffs in the case then which took substantial time to prepare, and which are inaccurate because what Defendant had verified and produced was inaccurate and incomplete.

**Over about 17 months, Defendant never disclosed that the Pay Summaries, Earnings Statements, Excel spreadsheets, and purportedly supporting documents it had produced and verified for <u>Hartery</u>, and then for the other <u>Hornady</u> Plaintiffs (a) showed inaccurate and incomplete pay rates, (b) included amounts of overtime pay from earlier pay periods, at various rates, that had been "trued up," or (c) had overtime pay rates and hours that were inaccurate.**  This was only substantively admitted by Defendant's deposition representative in March 2020.

When the initial Settlement Conference did not result in a resolution, the Plaintiffs were precluded from further discovery until another Scheduling Order was entered.  The timing of that Scheduling Order ultimately depended on the adjudication of the Motion for Conditional Certification and for Court Facilitated Notice filed August 31, 2018. (Doc. 23, PageID.120) Once an Order on that was known to be somewhat imminent, the parties submitted a Report of Parties Planning Meeting on **March 18, 2019**. (Doc. 83, Page ID.527) On **April 8, 2019** the Court entered a Rule 16(b) Scheduling Order for Phase One Discovery (Doc. 91, PageID.559).

Based on what Defendant had previously produced and verified in response to the Court's Orders, on **April 9, 2019** Plaintiffs served First Interrogatories and Request for Production which included these discovery items (emphasis added):

> RFP 6: **To the extent not previously produced before the Initial Settlement Conference, produce the Earnings Statements, Pay Statements, and time records created and maintained in the ordinary course** by Defendant for six exemplar Plaintiffs: Colin Hartery, Heath Hornady, Christopher Miller, Jeff Redding, William Joseph Phillips, and Takendric Stewart.

> RFP 10: Produce the time and pay records for each opt-in Plaintiff **in the same manner as previously produced** within 28 days of the filing of each opt-in and update such records for all Plaintiffs within 14 days of the close of the opt-in period.

> RFP 11: **If Defendant contends that from July 1, 2015 – present it has maintained in the usual course of its business time and pay records for the Plaintiff employees on a workweek basis in formats <u>other than</u> those previously produced in this litigation** then produce exemplars of such records from July, 2015 – present for Colin Hartery, Heath Hornady, Christopher Miller, Jeff Redding, William Joseph Phillips and Takendric Stewart. Note: (The formats previously produced as (a) the Earnings Statements, (b) Pay Statements (c) the Excel clock in / clock out records through August 13, 2017 and (d) the "Punch Detail" clock in / clock out pdf records since August 14, 2017). Plaintiffs reserve the right to seek additional production of such records once exemplars are produced and reviewed.

These Requests for Production were specifically intended to ensure that Plaintiffs obtained all time and pay information for all Plaintiffs and that there were no records maintained in the usual course in different formats than what Defendant had provided.

On **June 12, 2019** Plaintiffs filed a submission including a motion to compel. (Doc. 96, PageID.585)  On **July 12, 2019** the Court entered an Order granting the motion.  (Doc. 108, PageID.630) Defendant was ordered to serve "complete responses to the Plaintiff's First Set of Interrogatories and Requests for Production" (except some interrogatories relating to the struck defenses).  Plaintiff responded as follows on **July 12, 2019**.  The responses to Requests 6 and 10

consisted of objections and references to previously produced documents.   The response to Request 11 begins

> **Defendant does not contend that it has maintained records differently than formats previously produced to Plaintiffs' counsel to date.**

(Ex. 3)

This is entirely untrue.

Nonetheless, still under the (mis)impression that the information Plaintiffs sought from Defendant would be accurate and complete, Plaintiffs' counsel agreed to various informal (and then formal) extensions based on assorted assurances from Defendant's counsel to both Plaintiffs' counsel and the Magistrate Judge that Defendant was proceeding in good faith on various discovery issues.  As part of that, on **August 26, 2019** the parties filed a joint motion to amend the Rule 16(b) Scheduling Order after a teleconference with the Magistrate Judge on August 19, 2019. (Doc. 132, PageID.814)  An Amended Rule 16(b) Scheduling Order for Phase 1 Discovery was then entered August 30, 2019. (Doc. 137, PageID.834)  That order provided a timeline for "Current Discovery Disputes" and explicitly required Defendant to provide whatever supplementations it was willing to make on or before September 6, 2019 with residual disputes to be addressed by Plaintiffs in a motion to compel. (Doc. 137, PageID.840-841)

On **September 13, 2019** Plaintiffs filed a Motion to Compel encompassing Request for Production 10 (quoted above). (Doc. 146, PageID.929) With regard to that request, Plaintiffs acknowledged that it was not feasible or necessary to have the time and pay records immediately, but set out that Plaintiffs would need "all the time and pay records for all Plaintiffs over the next couple of months" so individuals could make decisions about settlement proposals, and that Plaintiffs were "entirely willing to let Defendant have ample time to provide each Plaintiffs time / pay records." (Doc. 146, PageID.929).  Defendant agreed it would "provide such records within a

reasonable time period." (Doc. 148, PageID.963)   **Defendant affirmatively (mis)represented that the time and pay records data it had produced on October 31, 2018 "provided Plaintiffs an opportunity to assess the time and pay practices of Defendant . . . ."** (Doc. 148, PageID.949)

Both the private mediation and another Settlement Conference with the Magistrate Judge on December 9, 2019 did not result in any sort of resolution.  So, discovery continued.

In a Miscellaneous Submission dated **January 14, 2020** about various discovery issues, Plaintiffs set out their prolonged efforts to obtain time and pay data.  (Doc. 170, PageID.1092) That submission explicitly raised the prospect of ESI issues.  (Doc. 170, PageID.1089, 1091-1093) Plaintiffs  included in that discussion apparent issues about temporary pay rates, and whether employees were actually paid for the time documented.  (Doc. 170, PageID.1091-1093) On **January 21, 2020** the Court entered an Order requiring Defendant to produce the time and pay records in Excel formats in 1/3 increments on February 28, 2020, March 31, 2020, and April 30, 2020. (Doc. 172, PageID.1105)  Sample pages of the spreadsheets and time records are attached as Exhibit 4.A, 4.B, and 4.C.   They are, in substance, just like what was produced in 2018 – with the notable exception that **there is no pay rate information at all!**

The examples included in Exhibit 4 were produced April 30, 2020.  Essentially identically formatted records had been produced at the end of February and March, 2020.   Plaintiffs had sought depositions from Defendant since the fall of 2019 and on March 11, 2020 Defendant's Senior Payroll Specialist, Ms. Melissa Pledger, was finally put up for deposition individually and as a corporate representative.  The subjects she testified about for defendant included "time and pay methodology for hourly nonexempt employees" since July, 2015. (Doc. 187-1, PageID.1177-1178) Some of her testimony is already of record.  Plaintiffs ask the Court to keep in mind that

what Defendant produced at the end of March and April, 2020 (like Exhibit 4) was **after** Pledger had already testified.

At that deposition, Defendant (through Pledger) disclosed for the first time in this litigation that at the beginning of each month OTK runs a calculation to "true up" payments. As Pledger explained it, OTK sometimes does not pay overtime rates on its regular paychecks every two weeks at the proper rate of 1.5 X regular rates. So, she says, each month OTK runs an analysis which includes whether overtime in earlier pay periods was underpaid. If so, OTK includes an additional amount in the first regular paycheck of the next calendar month which includes a "trued up" amount. This is "built into our payroll system that the payroll provider trues up the regular rate of pay, the first pay of the month for the previous month. And then its divided across that first pay of the next month." (Pledger 38, Ex. 5[6]) Pledger's testimony at pages 38-42, 45, and 57-62 of her deposition indicates this affects a significant number of employees every month. She says she does not know whether the "trued up" calculations might include step up rates. (Ex. 5, Pledger 138)

Pledger admitted that neither the spreadsheets she prepared, nor the documents the employees receive with their pay include "trued up" payment information. (Ex. 5, Pledger 58-59, 61-62) Pledger testified that the electronic "payroll register" has the "trued up" payments. (Ex. 5, Pledger 61) She also admitted that the higher "step up" rates Defendant pays to employees who are temporarily assigned job responsibilities of a higher pay grade employee are nowhere on the spreadsheets OTK produced (**which she prepared**), or on any other documents the Defendant

---

[6] Some of the referenced pages of deposition were submitted in support of the Motion for Partial Summary Judgment of four Plaintiffs, and some were not. Because Plaintiffs do not know whether the Page ID system makes it easier for the Court to view links to the same document versus going back and forth to different documents, the cited pages from Pledger's deposition are included as Exhibit 5 even if they were also part of the prior submission.

produced or that employees receive with their pay.  (Ex. 5, Pledger 132-138) These step-up rates directly affect how much Plaintiffs are entitled to for overtime pay, and this information has been intentionally concealed.

The step-up rate information is nowhere to be found in anything Defendant produced before Pledger was deposed, but that information is in electronic "time cards" and an "app" that Pledger can still access back to 2015.  (Ex. 5, Pledger 222-226) Pledger knows that information still exists because she reviewed it in manually preparing the pay spreadsheets – which left out that same information. "It exists because I'm creating these reports."  (Ex. 5, Pledger 226-227)

Turning from the pay records to the time records, as described above, all of the time stamp data was produced in black and white formats.  Pledger admitted that the "Totaled Amounts" over 12.0 do **not** reflect hours that are paid but merely show time that might be paid.  In the colorized data that Defendant uses, but did **not** produce, those numbers are in red if the time is not authorized for payment the numbers are in green if it is.  (Ex. 5, Pledger.76-80)[7]

Other than producing inadequate, incomplete, and inaccurate records at the end of March and April, 2020 Defendant did nothing **even after** Pledger testified to remedy the misconduct she had admitted to.  Obviously, in mid-March there were pandemic-related issues, but that does not explain why Defendant would **continue** to produce manually prepared inaccurate and incomplete records through the end of April, 2020.

---

[7] It is probably apparent that this entire situation could have been avoided if Defendant had ever identified that there were ESI issues to be dealt with.  If Defendant had done so, it would have had to identify what data and records actually existed.  Defendant never initiated that process and never even responded to any inquiries from Plaintiffs' counsel about potential ESI discussions.  In addition to the much more recent efforts to get ESI information under the May 28, 2020 Stipulated Order, Plaintiffs' counsel also asked about  ESI discussions on **August 21, 2019, September 19, 2019**, **September 23, 2019**, **October 6, 2019 October 25, 2019, and December 12, 2019**.  There was never a substantive response of any sort.

A Scheduling Conference was held with the Magistrate Judge on May **5, 2020**, and a Scheduling Order was entered on **May 8, 2020**. (Doc. 201, PageID.2048)  After that, in compliance with that Order's standard provisions about trying to resolve discovery disputes without court involvement, Plaintiffs' counsel raised with Defendant, again, the issues described above.  The result was the submission and entry of a Stipulated Order Addressing Discovery Issues signed on **May 28, 2020 and entered June 2, 2020**.  (Doc. 212, PageID.2438)

Defendant did, eventually, produce the couple of pages referred to in paragraphs 4-6 of the May 28, 2020 Order. (Doc. 212, PageID.2438) The rest of Defendant's stipulated obligations were basically ignored.

Paragraph 1(a)(b), (c) required Defendant to produce by May 29 and June 5, 2020 for just 11 employees **native** and **excel** format data files reflecting pay rates, start date, and shift time, and the colorized data about authorized time, as well as documents and data reflecting the amounts and calculations of trued-up payments since June/July, 2015. Instead, Defendant produced **only PDFs going back only to August 2017 which showed only the step-up rates and not regular rates**. A follow-up email request for that information in Excel/native format[8] made June 8, 2020 has been ignored.  The same is true for inquiries about the information before August 2017 and the absence of regular, daily pay rate data.

Paragraph 2 of the Stipulated Order set a June 2, 2020 deadline for the parties to confer about when Defendant will produce the required data for the other Plaintiffs, and to then advise the Court.  (Doc. 212,PageID.2439).  Plaintiffs' counsel asked Defendant's counsel when they

---

[8] Throughout this case, Plaintiffs have been open with Defendant's counsel and the Magistrate Judge that the important reason that certain time and pay information needs to be produced in data formats (which is how they are kept anyway) is that data files can be more efficiently incorporated into necessary quantifications than PDFs or paper productions which have to be re-typed at needless expense and with inevitable errors.

could discuss these sorts of issues by e-mails on May 27 (in advance of the entry of the Stipulated Order), June 1 and June 8, 2020.  No response, or responsive information, has been provided.

Paragraph 3 required Defendant to identify by May 29, 2020 dates for 30(b)(6) testimony on time and pay methodology as it applied to "trued up" calculations with alternate conferencing provisions.  Again, Defendant has neither complied nor conferred.  (Defendant does claim to have sent a letter to its current payroll services provider ADP).  While, perhaps, Plaintiffs can simply take Pledger's representative testimony and use it to Defendant's detriment, Plaintiffs tried through the process reflected in the Stipulated Order to let Defendant address the issue substantively.  It has chosen not to.[9]

Paragraph 7 required Defendant to produce certain documents concerning bonuses which its other representative, Dave Scheid, had testified were transmitted by e-mail. Defendant has produced nothing required by that paragraph and has offered no explanation at all for why not.

### IV.   Conclusion.

As Plaintiffs said at the beginning, this motion is reluctantly filed.  There is no reasonable alternative.  From the outset of this case Plaintiffs have made it abundantly clear that the most important evidence they need are complete, accurate, time and pay records in data formats that can be efficiently used to prepare damages quantifications.  The parties and the Court know that in cases like these the mechanical step of preparing essential quantifications is more time-consuming

---

[9] QBE Ins. Corp. v. Jorda Enterprises, Inc., 277 F.R.D. 676 (S.D. Fla. 2012) contains a thorough discussion of 30(b)(6) testimony. There is a duty to prepare, or "create" a witness after investigation of various potential sources. Id, at 689.  The failure to meet those obligations justifies sanctions and a corporate answer that amounts to "we don't know" can be binding. Id, at 690.  The reason the "trued up" calculations issue did not come to light until Pledger testified is because Defendant, specifically Pledger herself, had prepared and verified inaccurate summaries in 2018, and then misrepresented the accuracy of the documents Defendant produced.

than any other aspect of the litigation.  The parties and the Court know that delays in this sort of litigation only benefit the Defendant at the further expense of Plaintiffs who, now, have been owed certain payments for almost five years.

There is an inherent slowness to this litigation process.  The judges of this District Court have tried to address that with their standard FLSA scheduling orders.  Here, Defendant has intentionally made that process exponentially slower by its intentional misconduct.  Unfortunately, the entirely predictable next steps are either going to be (a) a complete halt to this discovery process while responsive briefs are filed and this motion is considered, or (b) the sudden and not-so-miraculous production by Defendant of the exact information in the exact formats that should have been provided long ago.  The latter would, essentially, be an admission by Defendant of how easily it could have produced what it concealed.  The former will only further delay resolution.

This is the unusual case in which significant but proportionate sanctions are entirely justified.

Respectfully submitted,

**HOLSTON, VAUGHAN & ROSENTHAL, LLC.**

By: /s/ Ian D. Rosenthal
Ian D. Rosenthal – ROSEI6905
Attorney for Plaintiffs
P.O. Box 195
Mobile, AL 36601
(251) 432-8883 (office)
(251) 432-8884 (fax)

**SIMS LAW FIRM, LLC.**

Patrick H. Sims – SIMSP8145
Attorney for Plaintiffs
P.O. Box 7112
Mobile, AL 36670
(251) 725-1316 (office)
Email: patrick@simslawfirm.net

## CERTIFICATE OF SERVICE

I hereby certify that I have on this the 15th day of June, 2020, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jennifer F. Swain, Esq.
LITTLER MENDELSON, P.C.
420 20th Street North, Suite 2300
Birmingham, Alabama 35203-3204

Gavin S. Appleby, Esq.
Sinead Daly, Esq.
LITTLER MENDELSON, P.C.
3344 Peachtree Road, N.E., Suite 1500
Atlanta, GA 30326

/s/ Ian Rosenthal
OF COUNSEL