**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **WILLIAM HEATH HORNADY,** | ) | |
| **CHRISTOPHER MILLER, TAKENDRIC** | ) | |
| **STEWART, and COLIN HARTERY** | ) | |
| **Individually and on behalf of all others** | ) | |
| **similarly situated who have opted to** | ) | CASE NO.: 18-cv- 317-JB-N |
| **participate in this action,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| **OUTOKUMPU STAINLESS USA, LLC,** | ) | |
| | ) | |
| Defendant. | | |

_____

### THIRD AMENDED COMPLAINT (INDIVIDUAL AND COLLECTIVE ACTION)

Plaintiffs William Heath Hornady, Christopher Miller, Colin Hartery and Takendric Stewart bring this action against Defendant Outokumpu Stainless USA, LLC ("Defendant") individually and on behalf of all others similarly situated.[1]  Plaintiffs seek for themselves and all others similarly situated relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, et seq.  and/or the common law of Alabama for the claims described herein.

---

[1] As of the date this Third Amended Complaint is filed the additional Plaintiffs who have filed their Consent forms and not withdrawn them are listed in the final numbered paragraph of this Third Amended Complaint.  They are all collectively referred to herein as "Plaintiffs."  Included in that listing are names of six individuals who Defendant has informally claimed were not employed during the relevant period.  All of those six people were identified by Defendant in its verified list of hourly non-exempt employees employed since July 30, 2015.  Defendant has declined to produce any documentation to support its contention that they were not employed, but it is acknowledged by Plaintiffs that any entitlement to damages depends on employment after July 30, 2015.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. §§ 201, et seq. and 28 U.S.C. § 1331, and supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because the state law claims derive from a common nucleus of operative facts as the claims under the FLSA.

2.      Venue is this Court is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

3.      The Plaintiffs are all individuals who are or were employed by Defendant at Defendant's facility in Mobile County, Alabama.

4.      William Heath Hornady resides in Baldwin County, Alabama.  Christopher Miller resides in Mobile County, Alabama.  Takendric Stewart resided in Mobile County, Alabama at the time the Complaint was filed, but now resides in McKinney, Texas. Colin Hartery resides in Mobile County, Alabama.

5.      Defendant Outokumpu Stainless USA, LLC is a corporate entity registered to do business in Alabama.    Defendant is subject to personal jurisdiction in the State of Alabama for purposes of this Lawsuit.

6.      At all material times to this action, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce as defined by § 203(s)(1) of the FLSA.

7.      Defendant is an interstate company whose employees are engaged in interstate commerce and whose employees handle and/or work on goods that moved in and/or were produced in commerce.

2

8.      Defendant is an employer covered by the record-keeping, minimum wage, and overtime mandates of the FLSA.

9.      The Plaintiffs performed work for Defendant in Mobile County, Alabama as "employees" of Defendant as defined by § 203(e)(1) of the FLSA.  All the factual allegations set out herein pertain to practices of Defendant at its Mobile County, Alabama facility.  All references to "employees" refer to non-exempt, hourly manufacturing employees at Defendant's Mobile County, Alabama facility.

## FACTS

10.     Plaintiff William Heath Hornady was employed by Defendant as a First Operator at its facility located in Calvert, Alabama at all relevant times through June 30, 2018.  Plaintiff Christopher Miller was employed by Defendant as a First Operator at all relevant times through July 12, 2018.  Plaintiff Takendric Stewart was employed by Defendant as an Operator at all relevant times through July 19, 2018.  Plaintiff Colin Hartery was employed by Defendant as an Electrician at all relevant times through May 31, 2018.

11.     Prior to May 6, 2018 (including the entirety of 2015 – 2017), Defendant's timekeeping and/or pay systems would automatically round recorded time when an employee clocked in before a scheduled shift to the scheduled start time up to a maximum of 30 minutes. Employees who clocked in even 1 minute after the scheduled start of a shift were assigned "occurrences" which were tallied and could lead to discipline and termination.  If employees clocked out even 1 minute before the scheduled end of shift, they were also assigned "occurrences" which were tallied and could lead to discipline and termination.  When employees clocked out between 1 and 14 minutes after the scheduled end of shift, the time worked was automatically rounded down to the scheduled end of shift.  Employees who clocked out more than 15 minutes

after the scheduled end of shift without obtaining approval were also given "occurrences" that could lead to discipline or termination.  This was the Defendant's practice for at least a 3 year period preceding May 6, 2018.

12.     After May 6, 2018 Defendant's timekeeping and/or pay systems would automatically round recorded time when an employee clocked in before a scheduled shift to the scheduled start time up to a maximum of 7 minutes.  After May 6, 2018 Defendant's timekeeping and/or pay systems would automatically round recorded time when an employee clocked out after the scheduled end time of a shift to the scheduled end time up to a maximum of 7 minutes. Defendant instructed Plaintiffs that they were not to clock in more than 7 minutes before the scheduled start of shift.  "Occurrences" are assigned when Plaintiffs clock in even 1 minute after the scheduled start of a shift, or 1 minute before the scheduled conclusion of a shift.  Defendant instructed its employees not to clock out more than 7 minutes after the scheduled end of shift, and employees who clock out more than 7 minutes after the scheduled end of shift without supervisor authorization are given an "occurrence."

12.1     Defendant's Team Member Handbook as of August, 2018 states that employees who clock in more than 7 minutes before the scheduled start of a shift, or more than 7 minutes after the scheduled end of a shift "are subject to discipline up to and including termination of employment for the unapproved time."

13.     Under Defendant's timekeeping practices until May 6, 2018, for example, if any Plaintiff or similarly situated employee clocked in at 5:31 p.m. for a scheduled shift at 6:00 p.m., the employee was not paid for time worked until 6:00 p.m. unless Defendant's supervisory personnel manually over-rode the automated rounding by Defendant's timekeeping and/or pay system.

14.     Under Defendant's timekeeping practices after May 6, 2018 if, for example, if any Plaintiff or similarly situated employee clocked in at 5:54 p.m. for a scheduled shift at 6:00 p.m. the employee was not paid for time worked until 6:00 p.m. unless Defendant's supervisory personnel manually over-rode the automated rounding by Defendant's timekeeping and/or pay system.

15.     Defendant's stated reason for its change in practices effective May 6, 2018 was to "align our timekeeping with Department of Labor regulations."

16.     Since at least 2009, the regulations promulgated pursuant to the FLSA allowed "rounding" of time to the nearest quarter hour.  The regulations only allow for rounding time "down" to result in 7 minutes of unpaid work.  The regulations also only allow for "rounding" time down if time would also be rounded "up" under an arrangement that "averages out so that the employees are fully compensated for the time they actually worked." 29 CFR § 785.48(b)

16.1    Defendant assumes employees work from the time the employee clocks in until the employee clocks out.  Defendant's designated representative to testify about time and pay has stated this is correct.

16.2    Defendant's time records show the exact time employees clock in and out.

16.3    Arriving employees "make relief," which means they coordinate the status of their work with departing employees before each shift.  Defendant does not do anything to keep track of when arriving employees make relief.  Defendant's designated representative to testify about time and pay methodology for hourly, non-exempt employees states "only clock punches are taken into consideration" for pay purposes.

16.4    Employees cannot clock out and leave before the scheduled end of their shift without receiving points towards termination.

16.5    At all times since June, 2015 Defendant's rounding arrangements averaged out so that Plaintiffs were not fully compensated for the time they actually worked.

17.    Defendant also failed to pay Plaintiffs, and similarly situated employees, for all of the rounded down overtime they worked each workweek.  Instead, Defendant would pay Plaintiffs and similarly situated employees "regular" pay for some of the overtime hours and shifts they worked during a week.  As an illustration employees who (after rounding down) were recorded as working 60 hours over five shifts in one week of the two week pay period designated by Defendant, and (after rounding down) were recorded as working 24 hours over two shifts in the other week of the two week pay period designated by Defendant, would typically be paid for 8 hours at overtime rates rather than 20 hours.  These payment practices were standardized for Defendant's employees.

18.    Each week for which overtime pay obligations are based upon 29 U.S.C. § 207(a) stands alone and entitlement to overtime pay for a particular work week cannot be calculated based on averaging, or aggregating, hours worked in any other week for hourly non-exempt employees such as the Plaintiffs and similarly situated employees.  At all relevant times since June, 2015 Defendant was aware that 29 CFR § 778.104 provides:

> The Act takes a single workweek as its standard and does not permit averaging of hours over 2 or more weeks. Thus, if an employee works 30 hours one week and 50 hours the next, he must receive overtime compensation for the overtime hours worked beyond the applicable maximum in the second week, even though the average number of hours worked in the 2 weeks is 40. This is true regardless of whether the employee works on a standard or swing-shift schedule and regardless of whether he is paid on a daily, weekly, biweekly, monthly or other basis. The rule is also applicable to pieceworkers and employees paid on a commission basis. It is therefore necessary to determine the hours worked and the compensation earned by pieceworkers and commission employees on a weekly basis.

18.1    At all times since June, 2015 Defendant was aware that 29 CFR § 778.105 provides that:

An employee's workweek is a fixed and regularly recurring period of 168 hours - seven consecutive 24-hour periods. It need not coincide with the calendar week but may begin on any day and at any hour of the day. For purposes of computing pay due under the Fair Labor Standards Act, a single workweek may be established for a plant or other establishment as a whole or different workweeks may be established for different employees or groups of employees. Once the beginning time of an employee's workweek is established, it remains fixed regardless of the schedule of hours worked by him. The beginning of the workweek may be changed if the change is intended to be permanent and is not designed to evade the overtime requirements of the Act. The proper method of computing overtime pay in a period in which a change in the time of commencement of the workweek is made, is discussed in §§ 778.301 and 778.302.

18.2     Through and until the designated pay period ending Sunday January 27, 2019 Defendant identified in the Defendant's computer system that was used and viewable by Defendant's payroll personnel "Pay Period Beginning Dates" that were Mondays, and "Pay Period Ending Dates" that were Sundays on all "Pay Summaries."

18.3     In reaction to the allegations presented in this civil action, Defendant's Senior Payroll Specialist, Melissa Pledger, changed the Pay Period Beginning and Ending dates in Defendant's computer system so that beginning January 27, 2019 in Defendant's computer system that is used and viewable by its payroll personnel the "Pay Period Beginning Dates" are Sundays, and "Pay Period Ending Dates" are Saturdays on all "Pay Summaries."

18.4     The business payroll data records Defendant maintained in its ordinary course of business for every two week pay period from 2015 until January 27, 2019 identified work weeks beginning Mondays and ending Sundays. Since January 27, 2019 Defendant's business payroll data records maintained in the ordinary course of business identified workweeks beginning Sunday and ending Saturday.

18.5    The Earnings Statements employees received from Defendant have the same Ending Dates as the Pay Summaries Defendant's payroll personnel use and view in Defendant's computer systems.  Those Earning Statements do not contain a Beginning Date.

18.6    From June, 2015 – January 27, 2019 Defendant did not pay employees for overtime in excess of 40 hours a week based on time worked for the fixed, recurring 168 hour period of Mondays – Sundays.

18.7    Since January 27, 2019, Defendant has not paid employees for overtime in excess of 40 hours a week based on time worked for the fixed, recurring 168 hour period of Sundays – Saturdays.

18.8    Since  June, 2015 Defendant has not paid its employees for overtime in excess of 40 hours a week based on any fixed, recurring 168 hour weekly period.  For any individual employee, Defendant calculates the approved time to be paid for so that the time any employee is paid for any single shift is not allocated between different pay periods no matter what time the employee started working or stopped working.

18.9    As examples, an hourly non-exempt employee who clocks in at 7:00 p.m. or a Saturday during 2017, and clocked out at 7:00 a.m. on Sunday would be paid by Defendant for the hour worked Sunday 6:00 a.m. – 7:00 a.m. as pay for a different pay period than a different employee who clocked in the same Sunday at 6:00 a.m. and clocked out Sunday at 6:00 p.m.  The two employees would work the same hour, and Defendant paid them as if they worked that same hour in two different workweeks.  Defendant combines all the time associated with an employee's shift regardless of when a shift begins or ends.  All time for any particular shift worked by any particular employee is included in a single pay period for that particular employee.  Defendant's designated representative to testify about time and pay methodology for non-exempt hourly

employees states that OTK does not track time for purposes of calculating pay based on any 168 hour period and that pay is driven by the shift start time and day and not by the day of the week and time the employee works.

18.10   Each employee had an hourly rate of pay that generally applied to work performed from 6:00 a.m. – 6:00 p.m.  For time worked between 6:00 p.m. and 6:00 a.m. an additional $.50 an hour premium was added to the rate of pay.

18.11   Each employee's rate of pay was subject to temporary increases at "step up rates" depending on specific job assignments.

18.12   "Step-up pay rates" are paid to employees who perform work at a higher level position than their usual position, and are paid at a higher pay rate.

18.13   Step-up pay rates are not identified on Earning Statements provided to Employees. Step-up pay rates are recorded in Defendant's electronic "time cards."

18.14   Defendant's designated representative to testify about time and pay methodology for non-exempt, hourly employees states that on a monthly basis Defendant, though its Payroll Services provider, recalculates overtime pay due.  This calculation process is referred to as "truing up" or, once completed, "trued up."  That designated representative states that in the first payment made to Plaintiffs during the following month, any additional amounts of overtime pay Defendant has calculated were due to be paid for previous pay periods are included.

18.15   As an example, an employee who worked July 29, 2018 – August 25, 2018 who was determined by Defendant to be entitled to additional pay for overtime from the "truing up" process would receive that additional amount September 14, 2018 but the Earning Statement itself accompanying that September 14, 2018 payment would contain no information about how much the trued up payment was, for how many hours, or at what rate or pay.  If the same employee

received a bonus at the end of October, 2018 for the results of work during September, 2018 the amount of the bonus was, in part, based on pay the employee earned from July 29, 2018 – August 25, 2018 that resulted in a "trued up" payment during September, 2018.

18.16   Defendant's designated representative to testify about time and pay methodology for non-exempt, hourly employees states that the Earning Statements provided to employees do not identify the amount of "trued up" payments.

18.17   On a regular and recurring basis, the Earnings Statements employees receive and the Pay Summary data records Defendant maintains inaccurately document overtime rates of pay. Neither the Earnings Statements nor the Pay Summary data records identify "step up rates" of pay. All Pay Summary data records and Earning Statements for payments which include "trued up" amounts inaccurately state the hours employees work for which employees are paid, and inaccurately state hourly rates of pay.

18.18   At all times since June, 2015 Defendant has been an employer which is required, pursuant to 29 CFR § 516.2 (a) to maintain and preserve for each employee information and data identifying the regular hourly rate of pay for any workweek in which overtime compensation is due, and the basis of pay by indicating monetary amounts paid on a per hour, per day, per week, or other basis and the total wages paid for each pay period.  Neither the Earnings Statements nor the Pay Summary records identify amounts paid pursuant to "true up calculations" or the basis for such amounts.

18.19   Any "trued up" payments to employee attributable to overtime pay are payments which Defendant previously failed to pay to employees on a timely basis as required by the FLSA.

19.     Before clocking in, the Plaintiffs and similarly situated employees were required to be dressed to perform work, including wearing a hard hat, boots and ear protection.  Typically, the

scheduled start time of an employee's shift was the same as the scheduled end time of the shift of another employee who was being relieved. Each Plaintiff and all similarly situated employees arriving for shifts were required by Defendant to coordinate work progress with employee being relieved from the prior shift. This required either that the arriving employee perform work before the scheduled start of a shift, or that the departing employee perform work after the scheduled end of shift, or both. Each Plaintiff and all similarly situated employees would routinely perform work tasks before and after the scheduled shift times, while having clocked in, for which they were not paid by Defendant. Coordinating work progress with the employee working the prior/scheduled shift was required by Defendant and was an integral part of the performance of job duties by each Plaintiff and all similarly situated employees, and the required coordination between employees was for the direct benefit of Defendant.

20. As examples:

(a) Plaintiff William Heath Hornady: In the 14 day, two week, pay period designated by Defendant ending February 25, 2018, Plaintiff Hornady clocked in and out as follows:

|  |  | Clock In | Clock Out |
|---|---|---|---|
| Monday | 2/12/18 | 5:44 p.m. | 6:05 a.m. |
| Tuesday | 2/13/18 | 5:42 p.m. | 6:02 a.m. |
| Wednesday | 2/14/18 | 5:38 p.m. | 6:01 a.m. |
| Thursday | 2/15/18 | 5:37 p.m. | 6:00 a.m. |
| Friday | 2/16/18 | - | - |
| Saturday | 2/17/18 | - | - |
| Sunday | 2/18/18 | - | - |
| Monday | 2/19/18 | 5:32 a.m. | 6:00 p.m. |

| | | | |
|---|---|---|---|
| Tuesday | 2/20/18 | 5:38 a.m. | 6:00 p.m. |
| Wednesday | 2/21/18 | 5:45 a.m. | 6:00 p.m. |
| Thursday | 2/22/18 | - | - |
| Friday | 2/23/18 | 5:35 a.m. | 6:00 p.m. |
| Saturday | 2/24/18 | 5:37 a.m. | 6:00 p.m. |
| Sunday | 2/25/18 | 5:38 a.m. | 6:00 p.m. |

During this period, Plaintiff Hornady should have been paid for 49 hours and 28 minutes the first week, including overtime pay at 1.5 times a regular hourly rate for 1 hour and 28 minutes, and he should have been paid for 74 hours and 15 minutes the second week, including overtime pay at a 1.5 times a regular hourly rate for 34 hour and 15 minutes.  He was paid for less.

(b) <u>Plaintiff Christopher Miller</u>:  In the 7 day work week designated by Defendant from August 14, 2017  -  August 20, 2017, Plaintiff Miller clocked in and out as follows:

| | | <u>Clock In</u> | <u>Clock Out</u> |
|---|---|---|---|
| Monday | 8/14/17 | 5:47 a.m. | 6:00 p.m. |
| Tuesday | 8/15/17 | 5:49 a.m. | 6:00 p.m. |
| Wednesday | 8/16/17 | - | - |
| Thursday | 8/17/17 | 5:47 a.m. | 6:00 p.m. |
| Friday | 8/18/17 | 5:45 a.m. | 6:00 p.m. |
| Saturday | 8/19/17 | 5:53 a.m. | 6:00 p.m. |
| Sunday | 8/20/17 | 5:52 a.m. | 6:00 p.m. |

During this period, Plaintiff Miller should have been paid for at least 73 hours and 7 minutes, including overtime pay at a 1.5 times a regular hourly rate for 33 hours and 7 minutes.  He was paid for less.

(c) Plaintiff Takendric Stewart:  In the 7 day work week designated by Defendant from October 23, 2017 – October 29, 2017, Plaintiff Stewart clocked in and out as follows:

|  |  | Clock In | Clock Out |
|---|---|---|---|
| Monday | 10/23/17 | 5:44 p.m. | 6:00 a.m. |
| Tuesday | 10/24/17 | 5:53 p.m. | 6:01 a.m. |
| Wednesday | 10/25/17 | - | - |
| Thursday | 10/26/17 | - | - |
| Friday | 10/27/17 | 5:44 p.m. | 6:06 a.m. |
| Saturday | 10/28/17 | 5:50 p.m. | 6:04 a.m. |
| Sunday | 10/29/17 | 5:56 p.m. | 12:00 a.m. |

During this period, Plaintiff Stewart should have been paid for 55 hours and 14 minutes, including overtime pay at a 1.5 times a regular hourly rate for 15 hours and 14 minutes.  He was paid for less.

(d)   Plaintiff Colin Hartery:  In the 7 day workweek designated by Defendant from February 12, 2018 – February 18, 2018 Plaintiff Hartery clocked in and out as follows:

|  |  | Clock In | Clock Out |
|---|---|---|---|
| Monday | 02/12/2018 | 5:43 p.m. | 6:00 a.m. |
| Tuesday | 02/13/2018 | 5:42 p.m. | 6:00 a.m. |
| Wednesday | 02/14/2018 | - | - |
| Thursday | 02/15/2018 | - | - |
| Friday | 02/16/2018 | 5:40 p.m. | 6:00 a.m. |
| Saturday | 02/17/2018 | 5:47 p.m. | 6:00 a.m. |
| Sunday | 02/18/2018 | 5:38 p.m. | 12:00 a.m. |

During this week, Plaintiff Hartery should have been paid for 55 hours and 30 minutes including overtime pay at 1.5 times the regular rate for 15 hours and 30 minutes.  He was paid for less.

21.    Almost every month Defendant paid each Plaintiff and all similarly situated employees a bonus.  The amount of the bonus was not included in the regular hourly rate from which the overtime pay rates were calculated.  The bonus payments are not any of the types of payments excluded in 29 U.S.C. § 207(e)

21.1.    The criteria for the amounts of bonuses are set in advance.  When the criteria are changed, they are changed prospectively not retroactively. Collectively, those criteria calculated based on results over a calendar month dictate whether all employees receive the same percentage bonuses of up to 25%.

21.2.    After a month ends the various criteria are individually accounted for.  Defendant typically has all the information it needs to calculate bonuses by the 15th of the month after the end of the month on which the bonus is earned.

21.3.    All the bonus criteria are quantified based on calendar monthly results for the entire facility.

21.4.    The bonus earned is stated as a percentage. The percentage is applied to the gross amount of pay received by the employee during the calendar month (not counting other monthly bonuses). The Plaintiffs are paid every 2 weeks. Paydays are Fridays.  The percentage is not applied to the gross amount of pay the employee earned during the calendar month.

21.5.    The calendar month that a bonus is earned is never the same time period as the 4 weeks (or sometimes 6 weeks) of previously received pay that the bonus percentage is applied to. The bonus paid at the end of a month (based on criteria for the prior month) is always applied to

earnings from part of the month for which the criteria were considered, and also part of the month before that.

22.     Each Plaintiff and all similarly situated employees should have been paid at least the minimum cash wage for all time recorded by Defendant after clocking in until clocking out during weeks that he worked less than 40 hours.

23.     Each Plaintiff and all similarly situated employees should have been paid for hours worked in excess of 40 hours in a single week at time and a half a regular hourly rate which included the monthly bonus payment.

24.     Each Plaintiff and all similarly situated employees should have been paid time and a half the regular hourly rate for all time recorded by Defendant after clocking in and until clocking out which exceeded 40 hours in a single week.

24.1    All payments at time and a half the regular hourly rate (not including adjustments for bonuses) were due to be paid during the pay period that included the time worked and should not have been delayed until "trued up" calculations were later performed.

24.2    The delayed "trued up" payments may not be credited by Defendant against employee entitlement to overtime pay during workweeks after the "trued up" workweek payments were earned.

25.     At all times pertinent to the claims asserted herein, and specifically from 2015 to the present, the Defendant's practices and procedures ensued that Plaintiffs and all similarly situated employees were not, on average, fully compensated for time they actually worked.  On a daily, weekly, monthly and annual basis the Defendant's "rounding" arrangement averaged out so that Plaintiffs and all similarly situated employees were paid for less time than they actually worked as quantified by the times clocked in and out.  As a concise example to illustrate the alleged

practices of Defendant and their effect on Plaintiffs and similarly situated employees, from January 6, 2018 – May 24, 2018 Plaintiff Hornady had time rounded for every single shift he worked so that he was paid for less time than he was clocked in and working, and there was never a shift that his time was rounded by Defendant so that he was paid for even a minute that he was not clocked in.  This is an example which is illustrative of Plaintiff Hornady's entire employment period with Defendant and is similar to the experiences of the other Plaintiffs and all similarly situated employees who were undercompensated for the time they actually worked throughout 2015 – present.   All the named Plaintiffs, and all similarly situated employees, were subject to substantially similar discrepancies that resulted in, on average, systematic undercompensation.

26.     Defendant's failure to pay each Plaintiff and all other similarly situated employees the compensation, including overtime pay, to which they were entitled under the FLSA as alleged herein was willful, intentional, unreasonable, and not in good faith.

<u>**COLLECTIVE ACTION ALLEGATIONS**</u>

27     The Plaintiffs repeat and reallege all of the preceding paragraphs of this Third Amended Complaint as if fully set forth herein.

28     Plaintiffs bring this action individually and on behalf of all other similarly situated employees, former and present, who worked for Defendant at its facility in Calvert, Alabama who were paid on an hourly basis and who were/are affected by Defendant's acts, omissions, timekeeping and wage payment practices described in this Amended Complaint ("The Collective").

29     Plaintiffs bring this collective action to recover compensation owned by Defendant to Plaintiff and members of the Collective for all time worked as reflected in the time records of Defendant.

30      Plaintiffs bring these claims for relief as a collective action.  The Collective has been defined as:

> (a)     **"All hourly-paid employees of Outokumpu Stainless USA, LLC in manufacturing positions in Calvert, Alabama since July 30, 2015" by Order dated May 30, 2019.**

31      This action is properly brought as a collective action because the Plaintiffs and all Collective members are similarly situated in that they were all subject to the common policies and practices  described herein.

### COUNT I
(Individual Claims for Violations of the FLSA)

32.     All preceding allegations are incorporated as though fully set forth herein.

33.     Each Plaintiff is an employee fully entitled to the FLSA's protections.

34.     Defendant is an employer covered by the FLSA.

35.     The FLSA entitles employees to minimum hourly compensation of $7.25 for hours worked under 40 in a week.  29 U.S.C. § 206(b).

36.     The FLSA entitles employees to pay at 1.5 times the employee's regular hourly rate for hours worked in excess of 40 hours a week.  29 U.S.C. § 207(a).

37.     By failing to pay each Plaintiff for all time each Plaintiff was clocked in, and working and/or available to work prior to, or after Defendant violated the FLSA's minimum wage mandates and overtime pay mandates.

38.     By failing to pay overtime at 1.5 times an hourly rate that included monthly bonus payments, Defendant violated the FLSA's overtime pay mandate.

39.     By failing to pay overtime at 1.5 times the regular hourly rate for all hours worked in excess of 40 hours in a work week, Defendant violated the FLSA's overtime pay mandate.

39.1    By failing to pay overtime pay on the regular payment date and, instead, paying some overtime pay on later dates as part of "trued up" amounts, Defendant violated 29 U.S.C. § 206(b) and 29 CFR § 778.106.  Each Plaintiff is entitled to damages in an equal amount of the late "trued up" payments.

40.    In violating the FLSA, Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions.

40.1    Each Plaintiff is entitled to recover for unpaid time, unpaid overtime compensation, liquidated damages, reasonable attorney's fees and costs.

## COUNT II
(Alternative Common Law Claims)

41.    All preceding allegations are incorporated as though fully set forth herein.

42.    To the extent that it may be determined that the FLSA does not provide a cause of action for Plaintiffs to recover wages for time they were clocked in and available to work, during weeks in which they worked less than 40 hours, in the alternative all Plaintiffs claim they are entitled to recover from Defendant for the value of the time they worked, but were not paid for, under common law theories of quantum merit and/or unjust enrichment.  All Plaintiffs seek to recover wages for all uncompensated work performed up to 40 hours per week, as opposed to overtime work.

43.    All Plaintiffs reported to work, clocked in, and were available to work and/or working as directed by Defendant and for the benefit of Defendant, but received no compensation for that part of their time and work which was "rounded" down.

44.    All Plaintiffs performed work which enabled Defendant to produce goods which Defendant sold to generate revenue, but Plaintiffs were not paid for their work.  Defendant knew that all Plaintiffs performed work between clocking in and clocking out, for which they were not

compensated by Defendant.  Defendant elected to accept the benefits of Plaintiffs' uncompensated work.

45.     Defendant was unjustly enriched at all the Plaintiffs' expense.

46.     All Plaintiffs are entitled to recover damages as calculated by the amount of time they were clocked in, but not paid for, at the hourly rate they were paid for other work performed in the same week.

46.1    Plaintiffs, and all similarly situated employees who consent to join in this civil action may assert these state law claims as a Collective, or in the alternative each of their state law claims is properly joined herein pursuant to Fed. R. Civ. P. 18 and 20.

## COUNT III
(Collective Action Claim for Violations of the FLSA, Monetary and Injunctive Relief)

47.     All preceding allegations are incorporated as though fully set forth herein.

48.     Defendants failed to pay Plaintiffs and all other similarly situated employees in the Collective proper overtime compensation for hours worked in excess of 40 in a work week, and failed to pay Plaintiffs and all other similarly situated employees in the Collective proper compensation for all hours worked.

49.     Defendant failed to pay Plaintiffs and all other similarly situated employees in the Collective overtime at a rate of 1.5 times a regular hourly rate inclusive of bonus payments.

49.1    The "trued up" payments made to Plaintiffs and all other similarly situated employees in the Collective were overtime payments that were not timely paid in violation of 29 U.S.C. § 206(b) and 29 CFR § 778.106.

50.     All opt-in Plaintiffs who are employees in the Collective are entitled to recover for unpaid time, unpaid or underpaid overtime compensation, liquidated damages, damages in an equal amount to the late "trued up" overtime payments, reasonable attorney's fees and costs.

50.1    Plaintiffs and all other similarly situated employees in the Collective are entitled to injunctive relief, specifically:

a.  That Defendant calculate entitlement to pay on the basis of time worked during a fixed, recurring, 168 hour workweek, and be enjoined from calculating entitlement to pay on any other basis.

b.  That Defendant cease the automated time-rounding procedures which result in employees, on average, being paid for less time than they are working and/or suffered to work.

c.  That Defendant cease excluding from the regular pay rates upon which overtime pay is calculated the percentage incentive bonuses which are earned during time periods that do not coincide with the prior pay periods to which the percentage bonus is applied.

d.  That  Defendant cease its practice of paying employees for some overtime pay on a belated basis, after  the regular payments for the same workweeks have been made, without doubling the amount of all such belated payments.

e.  That Defendant maintain accurate time and pay records as required by the FLSA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests that this Court grant the following relief:

A.    Final certification of this action as a collective action on behalf of the Plaintiffs and the Collective they represent of all similarly situated members of the opt-in Collective with equitable tolling of the statute of limitations for all opt-in members of the Collective preserving their claims for the alleged acts and omissions since July 30, 2015.

B.      A declaratory judgment that Defendant's wage practices alleged herein violate the FLSA, 29 U.S.C. § 201 *et seq*, and attendant regulations at 29 C.F.R. § 516 *et seq*.

C.      An order directing Defendant, at its own expense, to investigate and account for the number of hours actually worked by Plaintiffs and all Collective members for each workweek, and the hourly rates for each hour worked, the amount(s) paid for overtime for each workweek, and the rates of overtime pay.

D.      Judgment for damages under the FLSA for unpaid wages for time worked by Plaintiffs and all Collective members during weeks in which they worked less than 40 hours, or alternatively for damages under state common law.

E.      Judgment for damages for all unpaid and/or underpaid and/or late paid overtime compensation under the FLSA 29 U.S.C. § 201 *et seq.* and attendant regulations at 29 C.F.R. § 516 *et seq.*

F.      Judgment for liquidated damages pursuant to FLSA 29 U.S.C. § 201 *eq seq.* and attendant regulations at 29 C.F.R. § 516 *et seq.*  in an amount equal to all compensation owed to Plaintiffs and all Collective members under the FLSA for unpaid, underpaid, or late paid compensation during the applicable statutory period.

G.      Judgment for any and all civil penalties to which Plaintiffs and all Collective members may be entitled.

H.      An order directing Defendant to pay Plaintiffs and all Collective members reasonable attorneys' fees and all costs connected with this action.

I.      Judgment for any and all compensatory damages to which Plaintiffs and all Collective members may be entitled under applicable law along with any recoverable pre-judgment interest.

J.    Certification of the collective.

K.    Such other and further relief as to this Court may deem necessary, just and proper.

L.    Permanent Injunctive Relief as described in paragraphs 50.1(a) – 50.1(e) inclusive

herein.

### **CURRENT PLAINTIFFS**

51.    The current Plaintiffs, including those who are parties to consolidated civil actions

are:

| | | |
|---|---|---|
| Adams, Rosa M. | Braggs, DeMarcus | Dixon, Alleyia |
| Ainsworth, Richard L. | Bramble, Alexandria | Doggett, Eric |
| Alexander, Melinda S. | Branscum, Robert | Donaldson, Sadrick |
| Allen, Christopher L. | Briscoe, Thomas A. | Dunn, Casey |
| Allen, III, Garner E. | Brooks, Jr., Redius Wayne | Dunn, Michael R. |
| Amundson, Joseph R. | Brown, Jerel | Easterbrook, Caleb T. |
| Anderson, Kelly | Brown, Kenneth | Edmonds, Gregory J. |
| Arnold, Jeffrey S. | Bryant, Jr., Donnice | Emrick, Trenton S. |
| Austin, Bishop | Burrell, Patrick | Erwin, Ellen E. |
| Averette, Brandon | Butters, Derek | Evans, James |
| Averette, Chase G. | Byrd, Phillip T. | Everett, James |
| Averette, Cory | Byrd, Jr., Robert D. | Evers, Charles B. |
| Bailey, Dave Shawn | Byrd.Jr., Dennis R. | Evers, Daniel |
| Baker, Jonathan | Cain, James | Fairchild, Larry |
| Banks, Johnnie | Campbell, Adarryl | Faulk, Derek B. |
| Barnes, Timothy | Carnley, Jr., Franklin E. | Fleming, Jr., Bryan S. |
| Barnett, Michael B. | Carpenter, Justin S. | Flowers, John R. |
| Bass, James L. | Carpenter, Quintin J. | Foster, Charlie |
| Bates, Timothy O. | Chapman, Floretta D. | Franklin, Taurus |
| Batson, Raymond | Chapman, Timothy | Fraticelli, Jose |
| Beason, Jeremy | Clark, Vidal A. | Freeman, Brandon P. |
| Beckham, Larosa | Clarke, III, John M. | Freeney, Frank D. |
| Belcher, Emily D. | Clausell, Napoleon A. | Gallatin, Lance G. |
| Bennett, Nathen D. | Coleman, Daniel T. | Ganey, Forrest C. |
| Betts, Clifton | Coleman, Katherine | Gates, William Keith |
| Bishop, Douglas W. | Collins, Blake | Gatlin, Brent M. |
| Blair, Shirley A. | Coston, Renada | Godwin, Andrew L. |
| Bloebaum, Christopher M. | Crane, Clayton A. | Goodman, Charles Stephen |
| Boyd, Amy J. | Curry, Jr., Thomas J. | Graham, Thomas |
| Boyd, Steven | Davis, Robert C. | Green, Corey B. |
| Boyette, Jeremy R. | Deas, III, Ivy | Green, Glenn |
| Boykin, Isiah | Dew, Trawick D. | Grice, Carin L. |

Grice, Robert Jason
Gross, Perry
Gustaf, Steven M.
Hall, Nicholas
Hardy, III, Matthew
Harris, Jerry L.
Harris, Kenneth
Hartery, Colin
Hartley, Jerry B.
Havens, Dustin
Helton, Brett D.
Helveston, Pelly
Henderson, Andrew J.
Hill, David
Hornady, William Austin
Hornady, William Heath
Howze, Daric
Hubbard, John
Hudson, Wilson T.
Hunt, Reginald D.
Hyde, Thomas
Jackson, Lemuel
Jackson, Matthew M.
Jackson, Jr., Major E.
January, Martez
Jenkins, Shirley A.
Jerkins, Ronald P.
Jerkins, William
Johnson, Timothy I.
Johnson, Yolanda
Johnston, Austin
Jones, James H.
Jones, Jerry E.
Jones, Rodney E.
Jones, Steven D.
Jones, William
Jordan, Craig L.
Jordan, Jr., George L.
Joyce, James B.
Keenum, Weston B.
Kelly, Joel Craig
Kemp, George P.
Key, Robert
Knapp, Gaven L.
Knight, Mark E.
Langley, Jeremy W.

Lankford, Phillip
Lapp, Kyle J.
Lee, James T.
Lett, Anthony T.
Long, Robert B.
Lord, John E.
Lott, Aubrey
Love, Andre
Lowe, Domonic
Madoris, Randall E.
Marks, Josephine
Marshall, Cedric
Marshall, Cedric Antonio
Marshall, Fredrick
Marshall, Ronald
Martin, Jimmy L.
McClain, III, Arthur
McGraw, John David
McNeil, Antonio
Meinhardt, II, Lawrence M.
Middleton, Daniel
Miller, Christopher J.
Miller, Seth M.
Miller, Tyris T.
Mitchell, Damon L.
Mitchell, Tyrone
Moak, Josh
Montgomery, Mark
Moore, Anthony
Moore, Brian
Moore, Colundus B.
Moore, Laurice
Moore, Phillip
Murphy, John L.
Nations, Matthew
Neely, Reginald
Newton, Vernon
Norris, Cody D.
Odom, Raymond D.
Olive, Jimmy D.
Oliver, Victor T.
Overton, Johnny L.
Owens, Gregory B.
Patterson, Clarence
Peoples, John

Perez, Jr., Joe D.
Petty, Kenneth F.
Phelps, Vernon R.
Phillips, Ronald C.
Phillips, William Joseph
Pollard, Jerry
Porter, Jacob
Pruett, John P.
Reach, Charles E.
Redding, Jeff
Reed, Jr., Jerry
Reed, Sr., Jerry
Reese, Latorsia
Rivers, Korey S.
Rocker, John
Rodgers, Marcus D.
Rogers, Anissa L.
Rogers, Harold J.
Rone, Wesley A.
Rouss, Stephen G.
Rutledge, Ronnie A.
Sawyer, Bill E.
Scott, Darrell
Seals, Kenneth
Sherrer, III, John F.
Showers, Michael F.
Simmons, Brandon
Sliwinski, Charles T.
Smith, Brian S.
Smith, David O.
Smith, Thomas
Spencer, Sophia
Stadmire, Shonda
Stallworth, Kenneth
Starling, Connie M.
Steve, Carpenter
Stewart, Franklin E.
Stewart, Michael R.
Stewart, Paul M.
Stewart, Takendric
Stinson, Jerry
Stoker, J.J.
Stokes, Martin
Sutton, Sr., William G.
Taylor, Lee M.
Thomas, Richard D.

| | | |
|---|---|---|
| Thompson, Carlie | Welch, Derek | Williams, Jr., Rufus |
| Thornton, Cody J. | Whigham, Stony B. | Williamson, Jr, George B. |
| Todd, Cheryl | Wicker, William J. | Wilson, Harold |
| Tucker, Jason | Wiggins, Jamie T. | Wilson, Lafette |
| Tucker, Jr., Benny L. | Wiley, Ginger | Wilson, Michael C. |
| Turner, James L. | Wilkerson, David | Wilson, Timothy C. |
| Turton, Ashley | Wilkes, Johnny D. | Wingate, Wesley P. |
| Vaughn, Kourtney | Wilkinson, Richard A. | Witherington, Johnnie |
| Voiles, Randy | Williams, Anthony | Witherspoon, Midarius Y. |
| Walker, Sharon D. | Williams, Bradley | Wolfe, Christian W. |
| Wallace, Steven | Williams, David Todd | Womack, Orenthal J. |
| Ware, Kody R. | Williams, Eric F. | Woodard, Andre |
| Washington, Marvin | Williams, Gregory L. | Yancy, Barry |
| Waters, Luke | Williams, Kendall | York, James |
| Watson, Jamlus | Williams, Michael L. | York, Michael R. |
| Weaver, Kendall | Williams, Myron | Zirlott, Jonathon W. |
| Webb, Jerald B. | Williams, Neil W. | |
| Welch, Collin | Williams, Jr., Carl O. | |

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs demand trial by jury on all questions of fact raised in the Amended Complaint.

Respectfully submitted,

**HOLSTON, VAUGHAN & ROSENTHAL, LLC.**

By: /s/ Ian D. Rosenthal
Ian D. Rosenthal – ROSEI6905
Attorney for Plaintiffs
P.O. Box 195
Mobile, AL 36601
(251) 432-8883 (office)
(251) 432-8884 (fax)

Patrick H. Sims – SIMSP8145
Attorney for Plaintiffs
P.O. Box 7112
Mobile, AL 36670
(251) 725-1316 (office)
Email: patrick@simslawfirm.net

## **CERTIFICATE OF SERVICE**

I hereby certify that I have on this the 7th day of July, 2020, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jennifer F. Swain, Esq.
LITTLER MENDELSON, P.C.
420 20th Street North, Suite 2300
Birmingham, Alabama 35203-3204

Gavin S. Appleby, Esq.
Sinead Daly, Esq.
LITTLER MENDELSON, P.C.
3344 Peachtree Road, N.E., Suite 1500
Atlanta, GA 30326


/s/ *Ian D. Rosenthal*
OF COUNSEL