IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **WILLIAM HEATH HORNADY, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | CIVIL ACTION NO. 1:18-00317-JB-N |
| **OUTOKUMPU STAINLESS USA,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**ORDER**

This matter is before the Court on Plaintiffs' Renewed Motion to Equitably Toll the Statute of Limitations. (Doc. 204). The parties have briefed the Motion and it is ripe for review.

**I.   BACKGROUND**

Plaintiffs brought this collective action pursuant to Section 216(b) of the Fair Labor Standards Act, 29 USC § 201 *et. seq.* ("FLSA"). In their initial motion for equitable tolling, Plaintiffs sought to toll the statute of limitations for putative plaintiffs who had not yet opted into this suit and for opt-in plaintiffs who had filed consents to join. (Doc. 22). By order dated May 30, 2019, the Court stayed Plaintiff's initial motion pending the deadline for potential plaintiffs to opt-in. (Doc. 93). Thereafter, the Court would determine whether the merits of equitable tolling are the same for all Plaintiffs or depend on their individualized issues. (*Id.*). The parties were granted leave to supplement their initial motion after the opt-in period ended.

On May 19, 2020, the Plaintiffs filed a Renewed Motion. (Doc. 204). They offer no additional argument, but rather repeat their prior position "that the applicable principles establish that the Plaintiffs who opted in after July 30, 2018, should have their claims equitably

1

tolled so that the claim period begins July 30, 2015" (the date when the collective action was filed for the named Plaintiffs). (*Id.*). Likewise, the Defendant submitted a two-page response, restating their position that the Plaintiffs have failed to establish the "extraordinary circumstances required to justify equitable tolling in the Eleventh Circuit." (Docs. 62 and 213). The Renewed Motion is ripe for review.

## II. ANALYSIS

### a. FLSA Statute of Limitations and Commencement of Suit

Under the FLSA, an action "may be commenced within two years after the cause of action accrued," except that "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 USC § 255. An FLSA collective action is ". . . commenced in the case of any individual claimant—

> (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or
> (b) if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced."

29 USC § 216. Accordingly, a named plaintiff commences his collective action when he gives written consent to become a party plaintiff. Opt-in plaintiffs are deemed to commence their collective action only when they file their written consent to opt into the class action. *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1106 (11th Cir. 1996). An FLSA cause of action for unpaid overtime accrues at the end of each pay period in which the employer improperly fails to pay the employee overtime compensation. *Diggs v. Ovation Credit Servs.,* 2020 U.S. Dist. LEXIS 3560, *4 (M.D. Fla., Jan. 9, 2020) (citing *Knight v. Columbus,* Ga., 19 F.3d 579, 581-82 (11th Cir. 1994) ("Each failure

2

to pay overtime constitutes a *new* violation of the FLSA.") and *Hodgson v. Behrens Drug Co.,* 475 F.2d 1041, 1050 (5th Cir. 1973) ("It is well settled that [a] separate cause of action for overtime compensation accrues at each regular payday immediately following the work period during which the services were rendered and for which the overtime compensation is claimed." (internal quotation marks omitted)).

Sections 216(b) and 255, therefore, provide that the applicable limitations period for a collective action plaintiff is two years (or three years for willful violations) from the date of his specific written consent to opt-in. "For overtime actions under the FLSA, what is determinative is whether the plaintiffs have worked unpaid overtime hours during the statute of limitations period." *See Roots v. Morehouse Sch. of Med., Inc.*, 2008 U.S. Dist. LEXIS 129146, *22-23 (N. D. Ga., Jan. 18, 2008) (citing *Knight*, *id.*) (holding that claims for unpaid overtime hours will be time barred if the plaintiff opts in more than three years from the date of their last paycheck omitting overtime pay). Thus in a collective action, each plaintiff has his own "claim period," which is the two (or three) year period prior to his consent date.

### b. The Complaint, Named Plaintiffs, and Opt-in Plaintiff

The initial Complaint was filed on July 16, 2018, by the three named plaintiffs: William Heath Hornady, Christopher Miller, and Takendric Stewart. (Doc. 1). The Plaintiffs, employees at the Defendant's manufacturing facility in North Mobile County, allege the Defendant's timekeeping practices and procedures resulted in the Defendant's failure to pay the Plaintiffs for all time worked and overtime as required by the FLSA and corresponding federal regulations. (Doc. 223). The Defendant argues that it complied with the FLSA, and nevertheless that it had

reasonable grounds to believe that its actions or omissions were not a violation of the FLSA. (Doc. 228).

On July 30, 2018, the named Plaintiffs amended the initial complaint to initiate a collective action. (Doc. 6). By order dated May 30, 2019, the Court conditionally certified the collective class and ordered a notice to be sent to putative class members ("Collective") who would be given the opportunity to opt-in. The parties agreed that the Collective was accurately described as "All hourly-paid employees of Outokumpu Stainless USA, LLC in manufacturing positions in Calvert, Alabama" which includes all those in manufacturing positions using time clocks. (Doc. 93). The parties submitted a final notice to the Court on July 1, 2019 ("Notice"). (Doc. 104). The Notice was to be sent to all the employees described by the Collective and paid by the Defendant at any time after July 30, 2015. (*Id.*).

The named Plaintiffs filed individual written consents to be a party plaintiff on the same day the collective action was filed. As such, the claim period applicable to the named Plaintiffs, for purposes of determining eligible FLSA violations, runs from July 30, 2018, through either July 30, 2015 (for non-willful violations) or 2016 (for willful violations). A review of the record reveals a vast majority of the opt-in Plaintiffs filed written consents to opt in throughout July – September, 2019, or, on average a year later than the commencement of the action by the named Plaintiffs. By filing this motion to equitably toll the statute of limitations, the opt-in Plaintiffs seek to reset their various dates of commencement to July 30, 2018, to match that of the named Plaintiffs, regardless of the date of their opt-in or whether they worked any unpaid overtime within that time period. This would uniformly extend each opt-in Plaintiff's claim period beyond the applicable statute of limitations.

### c. *American Pipe* Equitable Tolling

Plaintiffs essentially argue the opt-in procedure under Section 216(b) is at odds with the public policy goals of the collective action. They contend the opt-in procedure unfairly deprives certain opt-in Plaintiffs of claims based on timeliness. Plaintiffs ask this Court to exercise its judicial power to promote equity, as discussed in *American Pipe*, to overcome Eleventh Circuit precedent, and reset the commencement date of the opt-in Plaintiffs' actions to cure any inequities arising from the statutory scheme. Plaintiffs argue the Eleventh Circuit standard for "equitable tolling" established in *Sandvik v. United States*[1] is not applicable in collective actions such as this one. Plaintiffs argue "it is the A*merican Pipe* variety" of equitable tolling "which applies **equally to all class and collective actions.**" (Doc. 22 at 9) (emphasis added). *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974). The *American Pipe* doctrine of equitable tolling, as further clarified by *Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.,* allows a Judge to "modify a rule based on traditional equitable powers" in order to overcome a "statutory time bar where its rigid application would create injustice." *ANZ Sec., Inc.*, 137 S. Ct. 2042, 2052 (2017). Plaintiffs contend this doctrine – the "judicial power to toll statutes of limitation in federal courts" (*Am. Pipe*, 414 U.S. at 558) -- is the "simplest, most equitable, fair, and precedent-based reason for equitable tolling of the claims of current and future opt-in Plaintiffs." (Doc. 22 at 13). Further, Plaintiffs argue the application of the *American Pipe* variety of equitable tolling does not require,

---

[1] "Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999).

as does the formal doctrine, "extraordinary circumstances" or an analysis of whether or not a plaintiff has been pursuing her rights diligently.[2]

As support for their argument, and its novelty perhaps, the Plaintiffs points out that the only cases on which Defendant can rely apply the "formal doctrine of equitable tolling" to FLSA collective actions. However, Plaintiffs have not identified any case in the Eleventh Circuit which analyzes the FLSA timelines under *American Pipe* and *ANZ*. Defendant also notes that "*ANZ* does not stand for the proposition that FLSA collective actions should be subject to the same tolling principles that govern Fed. R. Civ. P. 23 class action lawsuits or that equitable tolling is proper in the absence of 'extraordinary circumstances' as required by the Eleventh Circuit." (Doc. 62 at 11).

There are no FLSA collective action opinions embracing the *American Pipe* variety of equitable tolling in the Eleventh Circuit. The confines of *American Pipe* are expressed in the first two sentences of the Supreme Court's decision: "This case involves an aspect of the relationship between a statute of limitations and the provisions of Fed. Rule Civ. Proc. 23 regulating class actions in the federal courts. While the question presented is a limited one, the details of the complex proceedings, originating almost a decade ago, must be briefly recounted." *Am. Pipe*,

---

[2] The Supreme Court in *ANZ* and *Agritech* explains the "formal doctrine of equitable tolling" includes an analysis of whether or not the plaintiff has been diligent in asserting his claim. *See China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1808 (2018) ("Even *American Pipe*, which did not analyze 'criteria of the formal doctrine of equitable tolling in any direct manner,' *ANZ*, 582 U.S., at ___, 137 S. Ct. 2042, observed that tolling was permissible in the circumstances because plaintiffs who later intervened to pursue individual claims had not slept on their rights, *Am. Pipe*, 414 U. S. at 554-555. Those plaintiffs reasonably relied on the class representative, who sued timely, to protect their interests in their individual claims. See *Crown, Cork*, 462 U. S., at 350, 103 S. Ct. 2392, 76 L. Ed. 2d 628."). On the other hand, the *American Pipe* variety of equitable tolling has been described as one arising one arising from "a federal common-law doctrine crafted by the Supreme Court to carry into effect the provisions of Rule 23 and the policies they embody: to preserve efficiency in aggregate litigation and protect the opt-out right that absentees enjoy in a Rule 23(b)(3) class action." Burbank, Stephen B. and Wolff, Tobias Barrington, *Class Actions, Statutes of Limitations and Repose, and Federal Common Law*, 167 U. Pa. L. Rev. 1, 29 (2018).

414 U.S. at 540.[3]  Plaintiffs' argument ignores this limitation, and the Eleventh Circuit's determination that considerations for tolling under Rule 23 are not applicable to a collective action.  Further, the Eleventh Circuit has concluded blanket tolling of opt-in plaintiffs to the date of the original complaint will "virtually eliminate the statute of limitations for opt-in plaintiffs" which is at odds with the plain meaning of the statute. *See Grayson*, 79 F.3d at 1106 (interpreting §§216(b), 255 and 256 of the FLSA).

In *Grayson*, the Eleventh Circuit found the "concomitant tolling" principle found in Rule 23 class actions to be inapplicable to ADEA collective actions.  Discussing the difference between Rule 23 class actions and the FLSA collective action procedure, the Court opined "that by rejecting the Rule 23 class action procedure for ADEA claims, Congress also rejected the concomitant complaint-tolling rule of Rule 23." *Grayson*, 79 F.3d at 1106.  The Court relied on the congressional intent expressed in § 216(b) of the FLSA: "In discussing this amendment, Congress expressed the concern that an opt-in plaintiff should not be able to escape the statute of limitations bearing on his cause of action by claiming that the limitations period was tolled by the filing of the original complaint." *Id*. at 1106-07 (citing 93 Cong. Rec. 2,182 (1947)).  "By incorporating § 216(b), Congress also incorporated the principle that only a written consent to opt-in will toll the statute of limitations on an opt-in plaintiff's cause of action." *Id.*  The Court concluded, a "plaintiff must file his written consent to opt into the class action prior to the

---

[3] *American Pipe* has been further narrowed by subsequent Supreme Court decisions.  In *ANZ*, the Court determined the *American Pipe* rule does not apply to a statute of repose.  "And the object of a statute of repose, to grant complete peace to defendants, supersedes the application of a tolling rule based in equity." *ANZ Sec., Inc.*, 137 S. Ct. 2042, 2052 (2017).  Similarly, in *Agritech*, the Court concluded the *American Pipe* rule "does not permit the maintenance of a follow-on class action past expiration of the statute of limitations." *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018). Plaintiffs argument, to expand the application of *American Pipe* to collective actions, contradicts this prevailing trend.

expiration of the statute of limitations on his [ADEA] claim. A contrary ruling would mean that the piggybacking rule could be applied to virtually eliminate the statute of limitations for opt-in plaintiffs." *Id.* Granting Plaintiffs' Motion would eliminate the statute of limitations for the opt-in Plaintiffs, the very result found by *Grayson* to be inconsistent with the congressional intent of the statute.

In essence, Plaintiffs are asking this Court to set aside *Grayson* and apply the underlying principles in *American Pipe* to this collective action: "Against the backdrop of the fundamental public policy considerations identified in *American Pipe*, as clarified in *ANZ*, the best and fairest practice in FLSA cases is equitable tolling because it furthers the goals of efficiency for litigants and the Courts." (Doc. 22 at 20). The Plaintiffs argue the *American Pipe* variety of equitable tolling will advance the public policy goals of maximizing efficiency and minimizing individual expenditures (*id.* at 10), that it "prevents the erosion of claims" (*id.* at 4), and that "[u]nless there is equitable tolling, the employees Congress protects through a collective action process lose due to circumstances beyond their control" (*id.* at 18). The Defendant argues each Plaintiff has been in control of his or her own particular circumstances: since the outset of their employment, each Plaintiff has been aware of the hours worked and the pay received and therefore has been privy to the information which they now allege as the bases of their claims. (Doc. 213 at 3). The Court agrees with Defendant. The opt-in Plaintiffs could have filed their own lawsuits at some earlier date. *See In re Tyson Foods, Inc.,* 2008 U.S. Dist. LEXIS 81626, at *21 (M.D. Ga., Oct. 15, 2008) (acknowledging all of the opt-in plaintiffs had knowledge of the events underlying the claim).

The Court does recognize that, absent tolling, some opt-in Plaintiffs may have claims barred by the applicable statute of limitations. Plaintiffs go farther, arguing the loss of these

claims runs counter to the protection Congress intended to afford collective action plaintiffs and, therefore, equitable tolling must be applied. However, Plaintiffs' public policy argument disregards Eleventh Circuit precedent and the differences between FLSA collective action opt-in plaintiffs and class action plaintiffs. *Grayson,* 79 F.3d at 1106 (citing *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir. 1975) (*"*There is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § 16(b)."). Recent cases in this circuit and others have refused to disregard the distinction between a Rule 23 class action plaintiff and the FLSA collective action opt-in plaintiff. *See*, *e.g.*, *Mickles v. Country Club Inc.,* 887 F.3d 1270, 1280-1281 (11th Cir. 2018) (distinguishing the collective action process before it from Rule 23 class actions, and determining appellants were parties to the litigation upon filing consents and, absent a dismissal from the case, remained parties in the litigation). In collective actions, opting in is significant, whereas the certification process of a class action both ensures unnamed plaintiffs are adequately represented and bound to the judgment, for better or worse, unless they opt out of the class action. *See also Gutescu v. Carey Int'l, Inc.*, 2004 U.S. Dist. LEXIS 31105, (S.D. Fla., Feb. 24, 2004) (internal citations omitted) ("Comparing a collective action under § 216(b) with a Rule 23 class action is not instructive."). In the First Circuit, several district courts have similarly rejected "compelling policy arguments." The courts, also observing the fundamental differences between a Rule 23 class action plaintiff and an opt-in plaintiff, refused to exercise jurisdiction over non-resident opt-in plaintiffs notwithstanding the argument that the refusal would trespass "on the expressed intent of Congress." *Camp v. Bimbo Bakeries USA, Inc.,* 2020 U.S. Dist. LEXIS 60997, *21 (D.N.H., April 7, 2020) (citing *Swamy v. Title Source, Inc.*, 2017 U.S. Dist. LEXIS 186535, *7 (N. D. Ca., Nov. 10, 2017); *Chavira v. OS Rest. Servs., LLC*, 2019 U.S.

DIst. LEXIS 167935 (D. Mass., Sep. 30, 2019); and *Roy v. FedEx Ground Package Sys.,* 353 F. Supp. 3d 43 (D. Mass., 2018)).

This Court also declines to ignore the distinction between a Rule 23 class action plaintiff and a collective action opt-in plaintiff. "The basic question to be answered in determining whether, under a given set of facts, a statute of limitations is to be tolled, is one 'of legislative intent whether the right shall be enforceable . . . after the prescribed time.'" *See Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 167 (1984) (citing to *Burnett* v. New York Central R. Co., 380 U.S. 424, 426 (1965)). "In order to determine congressional intent, we must examine the purposes and policies underlying the limitation provision, the Act itself, and the remedial scheme developed for the enforcement of the rights given by the Act." *Brown*, 466 U.S. at 427. The Court finds that accepting Plaintiffs' policy argument, and granting equitable tolling, would result in the nullification of the collective action procedure of the FLSA promulgated by Congress. "To hold otherwise would be to opine that equitable tolling should be granted in every 216(b) case as a matter of course during the pendency of a conditional class certification request, thereby transforming this extraordinary remedy into a routine, automatic one." *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1244 (S.D. Ala., 2008). Whether and when a plaintiff opts in would be effectively deemed inconsequential. An opt-in plaintiff could, relying on the judicial grant of equitable tolling, decide not to opt in until well after his claims have expired. And, in this fact scenario, whole other inequities arise, the Defendants argue correctly. The opt-in procedure, designed to place Defendant on notice of the realm of claims against it, disintegrates. As such, this Court will not employ the judge made doctrine of equitable tolling. *See Brown*, 466 U.S. at 152 ("Procedural requirements established by Congress for gaining access to the federal courts

are not to be disregarded by courts out of a vague sympathy for particular litigants."). In addition to the Court's obligation to adhere to statutory construction, this Court "is bound by [the Eleventh Circuit's] decisions." *Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (1991) (citing *DeSisto College, Inc. v. Line*, 888 F.2d 755, 761 (11th Cir. 1989).[4] The Court finds Plaintiffs have not presented any compelling reasons to disregard Eleventh Circuit precedent, apply the underlining rationale in *American Pipe* to this collective action, and effectively rewrite the opt-in procedure of the FLSA collective action so as to preserve, potentially, a number of claims.

Even if the Court were to undertake Plaintiffs' proposed equitable analysis, it would be unhelpful to Plaintiffs because *American Pipe* is distinguishable and Plaintiffs' arguments of injustice are elusive and unsupported. In *American Pipe,* the Supreme Court affirmed the Ninth Circuit Court of Appeals' decision to grant leave to a number of plaintiffs to intervene, individually, in the named plaintiffs' surviving suit following the decertification of a class. *Am. Pipe,* 414 U.S. at 558-559. In order to accomplish the intervention, the Court equitably tolled the statute of limitations during the pendency of the class action, finding plaintiffs moved to intervene with eleven days remaining in statutory period. *Id*. Absent tolling, the plaintiffs who had not filed individual actions (based on the mistaken belief that they were part of the class) would have been denied access to the federal court system. The *Agritech* Court explains: "Those

---

[4] "A district court is not bound by another district court's decision, or even an opinion by another judge of the same district court, *but a district court in this circuit is bound by* [the Eleventh Circuit's] *decisions.* Thus, when the plaintiffs represented to the district court that only other district courts had addressed the question of a private right of action under § 17(a) after this court had provided a clear answer to that question, they misled the district court. *See DeSisto College, Inc. v. Line*, 888 F.2d 755, 761 (11th Cir. 1989) ("[Counsel's] insistence on maintaining a legal stance untenable with our law demonstrates either an ignorance of our law, and thus inadequate research, or some intent to mislead the trial court as to the present state of this Circuit's precedent, and thus bad faith."). *Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (1991).

plaintiffs reasonably relied on the class representative, who sued timely, to protect their interests in their individual claims." *Agritech,* 138 S. Ct. at 1808 (citing *Crown, Cork*, 462 U. S. 345, 350 (1983)). Given the facts, the judicial power employed to equitably toll the statute of limitations was absolutely necessary to reverse an injustice. That is not the case here.

An equitable remedy must directly relate to the injustice it seeks to remedy, as well as the unique characteristics of the situation at hand:

> "Equity thus depending, essentially upon the particular circumstances of each individual cases, there can be no established rules and fixed precepts of equity laid down, without destroying it's very essence, and reducing it to a positive law. And, on the other hand, the liberty of considering all cases in an equitable light must not be indulged too far, lest thereby we destroy all law, and leave the decision of every question entirely in the breast of the judge."

Duane Rudolph, *Workers, Dignity and Equitable Tolling*, 15 Nw. J. Hum. Rts. 126 (2017) (quoting William Blackstone, Commentaries on the Laws of England §48, 49 (1769)). In keeping with these principles, the Eleventh Circuit has opined that the judge-made doctrine of equitable tolling is not dependent on the defendant's conduct, but, rather, is focused "on the plaintiff's particular circumstances and the fairness, given those circumstances, of holding him to a hard-and-fast filing deadline." *Sec'y, United States DOL v. Preston*, 873 F.3d 877, 883-884 (11th Cir. 2017) Here, the Plaintiffs have not identified, beyond the policy reasons described, a single injustice which may be worked to a specific opt-in Plaintiff if tolling is not granted. Instead, Plaintiffs have emphasized the potential inequalities the statutory scheme may produce, in general, while failing to acknowledge, unlike the intervening plaintiffs in *American Pipe*, that Plaintiffs are able to pursue their claims. Not only does the collective action process require an individual plaintiff to

opt-in to the case, and more than 270 employees[5] have opted in herein, the opt-in Plaintiffs are not at risk, as the *American Pipe* plaintiffs were, of being denied access to the courts. Plaintiffs allege the Defendant's violations are ongoing. Accordingly, each and every opt-in Plaintiff should have FLSA violations occurring within his or her specific claim period, assuming the Plaintiffs' allegations are true.

In order to determine whether any injustice will occur, the issue is whether, and to what extent, any of the opt-in Plaintiffs' claims will be barred by the two or three-year statute of limitation tied to their action. Put another way: are there any opt-in Plaintiffs who will be unjustly harmed by the strict application of the FLSA statute of limitations to their claim period? Is there an opt-in Plaintiff who may have filed her action earlier but for some misrepresentation on the part of the Defendant? If so, what is the identity of such opt-in Plaintiff(s)? The Court does not know the answer to these questions because Plaintiffs have provided no such evidence. To be clear, the Plaintiffs have offered no evidence of any opt-in plaintiff who is actually harmed by the failure to toll. In essence, Plaintiffs are asking this Court to toll the statute of limitations without any evidence as to whether there are any cases or controversies within the tolling period. Lacking any fact pertaining to any single opt-in Plaintiff, and for all the other reasons thus stated, this Court declines to apply the doctrine of equitable tolling to this collective action in order to alter the date of the commencement of the action for all opt-in Plaintiffs. To do so would destroy the intent of Section 216(b) with no knowledge of any injustice to be remedied.

---

[5] The actual number of opt-in Plaintiffs are in dispute.

### III.   FORMAL DOCTRINE OF EQUITABLE TOLLING

Plaintiffs argue, even under the formal doctrine of equitable tolling and the traditional analysis of the Eleventh Circuit, the date of commencement of the suit should be reset to July 30, 2018, for all opt-in Plaintiffs.[6]  Defendant replies the facts "here simply do not warrant equitable tolling" and Plaintiffs have not asserted, as the Eleventh Circuit requires, either extraordinary circumstances or fraud has interfered with the Plaintiffs' ability to assert their claims.  (Doc. 62 at 7.)

As for the opt-in Plaintiffs who have already filed consents to join, "equitable tolling is an 'extraordinary remedy' that should be applied 'sparingly.'" *Sellers v. Sage Software, Inc.*, 2018 U.S. Dist. LEXIS 188420, *21-22 (N. D. Ga., Jan. 5, 2018) (citing *Abram v. Fulton* Cty. Gov't, 598 F. App'x 672, 675 (11th Cir. 2015)).  *See also Wallace v. Kato*, 549 U.S. 384, 396 (2007) ("Equitable tolling is a rare remedy to be applied in unusual circumstances not a cure all or an entirely common state of affairs."). "Equitable tolling requires the party invoking it to show both extraordinary circumstances and diligence in pursuing her rights."  *Abram,* 598 F. App'x. at 675 (citing *Wilson v. Standard Ins. Co.*, 613 F. App'x 841, 844 (11th Cir. 2015)).  Under the doctrine of equitable tolling, a court can "pause a statutory time limit 'when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action.'" *Ball v. McCoullough*, 2018 U.S. Dist. LEXIS 9590, *9-10 (N.D. Ala., Jan. 22, 2018) (citing *ANZ Sec., Inc.*, 137 S. Ct. at 2050-51)(citing *Lozano v. Montoya Alvarez*, 134 S. Ct. 1224, 1231-32 (2014)).

---

[6] On reply, this Court notes the Plaintiffs appear to abandon the argument that the Plaintiffs should be granted equitable tolling even under the formal doctrine: "Plaintiffs submit these cases [those applying the formal criteria] do not matter under the instruction of ANZ" and whether the "legal analysis and fact patterns in those cases should be applied in this case by this Court is not necessary."

"Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Abram, 598 F. App'x at 675* (citing *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006) (quoting *Sandvik*, 177 F.3d at 1271)). The Eleventh Circuit has narrowly defined the extraordinary circumstances which warrant equitable tolling to "require[] some affirmative misconduct, such as fraud, misinformation, or deliberate concealment..." *Horsley v. Univ. of Alabama*, 564 F. App'x 1006, 1009 (11th Cir. 2014). The "burden of proving circumstances that justify the application of the equitable tolling doctrine rests squarely on the petitioner." *San Martin v. McNeil*, 633 F.3d 1257, 1268 (11th Cir. 2011).

Plaintiffs have not met their burden. Plaintiffs have failed to submit any facts to support their argument for equitable tolling other than a generalized concern that the FLSA procedural scheme may result in the loss of claims: "Whether notice is early, late, slow, or fast, unless there is equitable tolling, the employees Congress protects through a collective action process lose due to circumstances beyond their control." (Doc. 22 at 18). While the Plaintiffs identify cases from other jurisdictions in which tolling was granted to address delayed notice to potential plaintiffs caused by the collective action procedure, they do not identify any case from this Circuit. (Doc. 22 at 14-19). Defendant correctly argues the cases in this Circuit do not generally find litigation delays to merit an "extraordinary" circumstance that could warrant application of the doctrine of equitable tolling. *See Horsley*, 564 F. App'x at 1009 (citing to *Wakefield v. RRB*, 131 F.3d 967, 970 (11th Cir. 1997) (The Eleventh Circuit has "previously rejected the notion" that "slow administrative proceedings can warrant the application of equitable tolling."). More recent cases from this Circuit bar claims filed outside the FLSA statute of limitations. *See, e.g., Kraft v. Freight*

15

*Handlers, Inc.,* 2020 U.S. Dist. LEXIS 239739, *6 (M.D. Fla., Oct. 26, 2020) (granting summary judgment against 97 opt-in plaintiffs whose last alleged overtime violations were more than three years before the date on which they filed their consents to join); *Carr v. AutoZoner, LLC,* 2020 U.S. Dist. LEXIS 217821, *21-22 (N. D. Ala., Nov. 20, 2020) (granting summary judgment to the defendant on a number of the opt-in plaintiffs whose claims were barred by the three year statute of limitations).

Though Plaintiffs have not specifically argued litigation delays merit tolling of the statute of limitations, nor have they identified any specific facts to meet their burden, a clarification of the procedural history is helpful at this point.  There were exactly seventy days from the date the notice was submitted until the Court's ruling approving the same.  Based on a review of similarly situated collective actions, this delay was not extraordinary. *See, e.g.*, *Reed v. Starbucks Coffee Co.*, 2009 U.S. Dist. LEXIS 136406, *4-7 (S. D. Fla.,  Apr. 24, 2009) (finding that a delay of five months between the Complaint and the notice does not present extraordinary circumstances to warrant toiling where the plaintiff argues "each day that passes means a day of lost damages for opt-in plaintiffs or, even worse, a day closer to the complete bar of claims under the statute of limitations"); *Rojas v. Garda CL Southeast, Inc.*, 297 F.R.D. 669, 680 (S.D. Fla., 2013)(declining to grant equitable tolling where no evidence supported plaintiffs' "conclusory assertion" that some opt-in plaintiffs' claims will be entirely barred but for thirty-one days of equitable tolling and no showing of extraordinary circumstances."). Most recently, the Southern District of Florida, declining to attribute fault, observed "a considerable portion of the delay is attributable to various disputes between counsel for the *Aiyekusibe* and *Figueroa* plaintiffs that prevented the parties from agreeing to a finalized form of relief." *See Aiyekusibe v. Hertz Corp.*, 2020 U.S. Dist.

16

LEXIS 41426, *6-12 (M.D. Fla., Feb. 19, 2020) (holding equitable tolling was not appropriate where the Court's delay in ruling on their joint motion to certify the class was not extraordinary and noting, also, that the Eleventh Circuit has yet to address whether tolling is appropriate when opt-in plaintiffs have not received notice because of a delay in the Court approving the same). Similarly, here, the record reveals that numerous delays in issuing the notice were caused by the parties. There were five joint motions to extend time from the filing of the motion to conditionally certify the class to the issuance of an order approving notice. (Docs. 36, 76, 77, 81, 101). The Court also notes a number of opt-in Plaintiffs joined the action prior to the notice being issued. In sum, Plaintiffs have failed to demonstrate any extraordinary circumstances existed to prevent any Plaintiff from pursuing this cause of action at some earlier date.

### IV. **CONCLUSION**

Plaintiffs' Renewed Motion to Equitably Toll the Statute of Limitations (Doc. 204) is denied.

DONE and ORDERED this 3rd day of February, 2021.

/s/ JEFFREY U. BEAVERSTOCK
UNITED STATES DISTRICT JUDGE