**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| WILLIAM HEATH HORNADY, et al., | * | |
| | * | |
|    Plaintiffs, | * | |
| | * | |
| v. | * | Case No. 1:18-cv-00317 |
| | * | |
| OUTOKUMPU STAINLESS USA, | * | |
| | * | |
|    Defendant. | * | |

**ADP, INC.'S BRIEF ADDRESSING SECOND ORDER TO SHOW CAUSE (DOC. 298)**

ADP, Inc. ("ADP"), a non-party to this litigation, respectfully files this brief to address this Court's Second Order to Show Cause (Doc. 298) in advance of the hearing scheduled for March 12, 2021, at which an ADP representative will appear in person.

ADP is a current client of the law firm representing the Defendant in this litigation ("Defense Counsel"). When ADP received a subpoena from Defense Counsel in July 2020 (the "Subpoena"), ADP immediately began communicating with Defense Counsel about what needed to be provided, worked diligently to provide it, and promptly produced information that Defendant apparently has never produced to the Plaintiffs. After that, ADP believed it had complied with the Subpoena because it had produced what Defense Counsel had said would suffice. And when Defense Counsel requested a spreadsheet many months later, ADP agreed – that very same day – to provide it and then promptly provided it.

Based on communications with Defense Counsel, ADP has always understood its efforts and production were sufficient, and never received any indication that there were any problems concerning ADP's efforts or that there were significant discovery disputes in the case generally. However, now that ADP has discovered the true status of these proceedings based on its recent

independent review of the docket, ADP is shocked to learn what has been represented to the Court and believes that Defense Counsel – as a result of their conflict of interest – minimized the issues and their importance when communicating with ADP, led ADP to believe it was compliant with the Subpoena, and did not disclose the true nature and severity of the discovery problems in order to keep ADP happy as a firm client – all while leading the Court to believe that ADP was being unresponsive. This, of course, was detrimental to both of Defense Counsel's clients because they both now face two show-cause orders.

## I.     Absence of ADP's Corporate Representative from March 5, 2021 Hearing

ADP sincerely apologizes to the Court for failing to have a corporate representative attend the hearing in person that was scheduled for March 5, 2021. This section explains why ADP's corporate representative was unable to attend in person.[1]

On February 19, 2021, this Court entered an Order requiring a corporate representative of ADP to appear and "show cause for its failure to comply with the Subpoena attached [to the Order] as Exhibit A" ("First Show Cause Order"). (Doc. 288). Two days earlier, the Court had held a hearing where it had informed the parties that the First Show Cause Order was forthcoming and instructed Defendant to serve it on ADP. (Doc. 289). However, after the First Show Cause Order was entered, Defendant did not serve it on ADP until ten days later.

On February 17, 2021, which was several months after ADP had produced information in PDF format, ADP received an email from Defense Counsel in which they "inquire[d] about the

---

[1] The factual assertions made in this brief are supported by the Declaration of Alice Quinn (Exhibit 1) and the email correspondence attached thereto (Exhibit 1-A), as well as undersigned counsel's representations herein and emails attached hereto (Exhibit 2). Ms. Quinn has affirmed that all statements made in her declaration are true and correct, but the declaration is presently unsigned because Ms. Quinn is currently en route from New Jersey to Mobile to attend tomorrow's hearing. ADP will file a signed version of the declaration as soon as Ms. Quinn is able to sign it.

availability of payroll records in Excel format."[2]  Before that communication, ADP's paralegal had not heard from Defense Counsel regarding the Subpoena in <u>over four months</u>.  When emailing with ADP on February 17, 2021, Defense Counsel failed to disclose that a hearing was held that very day, during which it was stated that ADP had been unresponsive to the Subpoena and that a show-cause order was going to be entered requiring ADP's attendance at a hearing.  In response to Defense Counsel's inquiry about Excel, ADP promptly responded that same day, stating that it "should be able to create a report in excel format for [Defendant]" as soon as Defense Counsel provide the requested parameters.  After ADP sent that email on February 17th, it did not hear from Defense Counsel again until <u>twelve days later</u>.

On March 1, 2021, Defense Counsel finally emailed ADP and provided parameters so that ADP could run an Excel report.  In that email, Defense Counsel – for the very first time – notified ADP about the First Show Cause Order and provided a copy of it.  This was <u>ten days after the First Show Cause Order was entered</u>, and just four days before the March 5th show-cause hearing was scheduled to take place.[3]  In Defense Counsel's email, she stated:

> … Following receipt of your email, we advised the Court that ADP had confirmed it could run a report in Excel format.  However, the federal court is trying to move this Outokumpu case along and in doing so, the Judge decided to push ADP along as well.  In particular, he has issued an order (see attachment) under which an ADP representative would have to appear in court to discuss information that has been requested in the subpoena in the class action.  Although we explained that obtaining the data in Excel was difficult and not customary in response to subpoenas, we were unable to prevent the court order.  However, <u>we believe obtaining the available pay data for opt-in Plaintiffs in Excel format will suffice this request</u>.  **On a good news basis, it seems likely that if the data is provided before**

---

[2] As shown in the next section, ADP had produced PDF records in response to the Subpoena just five business days after receiving the Subpoena.

[3] This delay is very disappointing because the Court chose to set the show-cause hearing a couple of weeks out in order to give ADP sufficient time to provide information.  Feb. 17, 2021 Hr'g Tr. at 11:15-19 ("But I will issue an order for 14 days and hopefully that will evoke a response.").

**Friday, the Court would call off the need to have the conference and obviate the need for an ADP representative to appear**. …

ADP had no reason to doubt Defense Counsel's comments and, in fact, trusted Defense Counsel because they represent ADP in other legal matters. Thus, these comments – coupled with ADP's previous production, Defense Counsel's previous assurances, and ADP's lack of knowledge about what was truly transpiring in this litigation – led ADP to believe that the hearing likely would be cancelled once ADP provided the recently-requested Excel report.

Consequently, ADP ran the requested Excel report and provided it to Defense Counsel just two days later on Wednesday, March 3, 2021. On March 4th, Defense Counsel noted that the hearing was still scheduled, but that she was contacting Plaintiffs' counsel to determine whether production of the Excel report would alleviate the need for the hearing. In response, ADP asked that Defense Counsel to "[p]lease let me know asap (sic) about tomorrow's hearing." At 5:40 pm on March 4th (the evening before the hearing), Defense Counsel informed ADP that "[t]he hearing is still on for tomorrow." When ADP asked Defense Counsel whether the hearing would be virtual or by phone, Defense Counsel suggested that ADP call the Court's chambers.

Defense Counsel had been communicating about the Subpoena with Alice Quinn, an experienced paralegal and Senior Legal Assistant with ADP who has worked for the company for over 25 years. When Defense Counsel notified Ms. Quinn late on March 4th that the hearing was going forward, Ms. Quinn notified ADP in-house attorneys as soon as possible, who then promptly retained the undersigned counsel around 11 am CST on March 5th. By that time, it was too late for Ms. Quinn, who is located in New Jersey, to attend the hearing in person. Consequently, one of the undersigned counsel (Garrett Zoghby) attended the hearing in person, with Ms. Quinn and others (also located in New Jersey) available by phone to respond to the Court's inquiries.

Understandably, this resulted in the Second Show Cause Order being entered, requiring an ADP representative to attend a hearing in person on March 12, 2021.

ADP had no idea that significant controversy had been brewing in this litigation about Defendant's inability to provide information and ADP's perceived lack of responsiveness to the Subpoena. Rather, ADP believed – based on its prompt production of information and communications with Defense Counsel – that everything was fine. It was not until this week, after ADP retained the undersigned counsel, that ADP examined the docket and learned the true status of these proceedings and the significance of these issues.

ADP was shocked to learn that sanctions motions have been filed on this subject and that, when faced with possible sanctions, Defense Counsel made false and negative statements to the Court aimed to throw ADP, a current client of Defense Counsel, under the bus. *See, e.g.*, (Doc. 220) (claiming that Defendant "is still seeking information from ADP" and "[t]hus far ADP has not been very helpful"); (Doc. 242) (claiming that ADP failed to schedule a phone call and stating that, "like Plaintiffs, [Defendant] has some frustration with ADP's response to the subpoena"). As Defense Counsel expressly stated in a recent phone call with ADP's in-house counsel and the undersigned, these statements were not true and should have never appeared in these filings. When pointedly asked why the statements were made, Defense Counsel stated that an associate wrote the briefs and that he, a partner, did not review them before they were filed, even though his name is signed to the briefs.[4]

ADP was also shocked to discover that Defense Counsel have led the Plaintiffs and this Court to incorrectly believe that ADP has been wholly unresponsive to the Subpoena, even failing to correct that belief when expressed by the Court in hearings. For example, when the Court stated

---

[4] Notably, Judge Nelson expressly quoted some of these false representations by Defense Counsel when recommending sanctions against Defendant. (Doc. 261) at p. 3.

5

at the February 17th hearing that ADP had not "bothered to respond at all" to the Subpoena, Defense Counsel said nothing to correct that misunderstanding. Feb. 17, 2021 Hr. Tr. at 15:12-13; *see also id.* at 11:3-7 (Defense Counsel failing to correct the Court when it stated ADP had neither objected nor responded to the Subpoena); 9:25-10:12 (same). Presumably, Defense Counsel did not correct this misunderstanding because they had not provided ADP's production to Plaintiffs' counsel.

At that same hearing, Defense Counsel also made misleading statements to the Court to make it seem like ADP had been refusing to provide a spreadsheet and had been unresponsive to recent requests to do so. For example, sometime before the February 17th hearing, there had apparently been a conference call in which the Court mentioned a case from another jurisdiction in which ADP had produced an Excel spreadsheet. Presumably, the Court mentioned this because it believed that Defense Counsel had been asking ADP to provide a spreadsheet and that ADP was refusing or claiming it was unable to do so. At the February 17th hearing, the Court asked Defense Counsel whether they had made any progress towards obtaining an Excel spreadsheet from ADP since that conference call, after which Defense Counsel made the following statements:

> Yes, Your Honor. We reached out to the paralegal we had been working with on the subpoena and we did mention that the case Your Honor cited to out of New Mexico had some language that it showed that -- where they provided excel records and so we asked them.[5] … And we asked them to readdress the issue of whether or not that is something that can be done in our case given that there is caselaw out there that suggests it, <u>and we have not gotten a response yet</u>.[6]

These statements, of course, give the impressions that: (1) prior to February 17th, ADP had been refusing to provide a spreadsheet or had been claiming that it was unable to do so; (2) prior to

---

[5] *Id.* at 5:10-14
[6] *Id.* at 7:25-8:4 (emphasis added).

February 17th, Defense Counsel had asked ADP to "revisit" its alleged prior refusals to provide a spreadsheet; and (3) ADP had not responded to those requests. The truth, however, is that the very same Defense Counsel who made these representations had emailed ADP requesting a spreadsheet <u>just a couple of hours before the February 17th hearing</u>, after which ADP promptly responded that very same day agreeing to do so.[7] Prior to Defense Counsel requesting the spreadsheet on February 17th, ADP's paralegal had not heard from Defense Counsel for over four months.

These transgressions result from a clear conflict of interest that greatly concerns and disappoints ADP. *Ala. R. Prof. Cond.* 1.7 (prohibiting representation of a client if: (a) "the representation of that client will be directly adverse to another client," or (b) "the representation of that client may be materially limited by the lawyer's responsibilities to another client or a third person, or by the lawyer's own interests"). Under Rule 1.7, "serving any type of third-party discovery on a current client is adverse and would violate an attorney's duty of loyalty." Calif. Eth. Op. 2011-182 (2011).[8]

> First, … discovery *is* coercion since it entails bringing the force of law upon a person to turn over certain documents. Second, propounding discovery on an existing client may affect the quality of an attorney's services to the client seeking the discovery, resulting in a diminution in the vigor of the attorney's discovery demands or enforcement effort. …

*Id.* (internal quotations omitted). "When a lawyer is called upon to [seek third-party discovery from] her own client, the lawyer may well be torn between a 'soft,' or deferential, [approach at seeking the discovery], which compromises the representation of the litigation client, and a

---

[7] As shown in the next section, after ADP agreed to provide a spreadsheet, Defense Counsel failed to communicate with ADP for almost two weeks, which delayed the production of the spreadsheet.

[8] *See also* Scott B. Garner, *You Just Got Sued for Legal Malpractice*, Litigation, Summer 2015, at 45, 48 ("There are ethical opinions concluding that the mere service of a subpoena is an adverse event that cannot be done to a current client.").

vigorous one, which breaches the duty of loyalty to the [third-party] client …" ABA Formal Op. 92-367. Additionally, "a lawyer's interest in representation of the litigation client in the present circumstances may be limited by the lawyer's own interest in continued business from the [third-party] client …" *Id.* Thus, "[a] lawyer should not be permitted to put himself in a position where, even unconsciously, he will be tempted to 'soft pedal' his zeal in furthering the interests of one client in order to avoid an obvious clash with those of another …" *Estates Theatres v. Columbia Pictures Industries*, 345 F. Supp. 93, 99 (S.D.N.Y 1972).

In the present case, Defense Counsel – while representing Defendant in this litigation – served a subpoena requesting information from ADP, which is also a current client of Defense Counsel. And after ADP promptly produced information as a result of assurances from Defense Counsel, they led ADP to believe that its efforts and production were satisfactory and compliant, but apparently did not provide the information to Plaintiffs' counsel. And although there were discovery disputes about information needing to be produced in Excel format, Defense Counsel "soft pedaled" their pursuit of that information from ADP and did not request it until just recently, and only after leading the Court to believe that ADP had been entirely unresponsive to the Subpoena.[9] And when Defendant was faced with sanctions, Defense Counsel again chose to favor their litigation client over ADP by making statements in court filings that were admittedly false and materially adverse to ADP. *See Ala. R. Prof. Cond.* 1.7, comments ("[A] lawyer ordinarily may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated.").

---

[9] This may have been done in an effort to preserve Defense Counsel's business relationship with ADP, but it was ultimately detrimental to both of Defense Counsel's clients because: (a) sanctions against Defendant have been recommended (Doc. 261); and (b) both Defendant and ADP are now subject to the Court's show-cause orders.

The present predicament is the result of Defense Counsel's conflict of interest. As shown in the section below, ADP handled its response to the Subpoena with diligence and promptness and never knew there were any problems. If ADP would have known that this Court or any party in this litigation took issue with ADP's efforts in responding to the Subpoena, ADP would have taken immediate steps to try to address the concerns.

ADP was absent from the March 5th hearing because it did not know about the hearing until March 1st and then relied upon Defense Counsel's representation that the hearing would likely be cancelled, and after Defense Counsel confirmed that the hearing was going forward, it was then too late for ADP to attend. ADP sincerely apologizes to the Court for not appearing in person.

## II.     ADP's Compliance with the Subpoena

ADP has always believed it was in compliance with Defense Counsel's Subpoena. As soon as ADP received the Subpoena on July 29, 2020, ADP immediately began communicating with Defense Counsel about the information needed to satisfy their requests and what ADP could and could not provide based on how certain records were kept in the ordinary course of business, and this resulted in ADP promptly producing information just five business days after receiving the subpoena. Below is a summary of ADP's communications with Defense Counsel about the Subpoena:

| July 29, 2020 | ADP received the Subpoena and an email from Defense Counsel's paralegal about the Subpoena. |
|---|---|
| July 30, 2020 | ADP employee, Alice Quinn, and Defense Counsel's paralegal exchanged emails to schedule a phone call about the Subpoena. |
| July 31, 2020 | Ms. Quinn and Defense Counsel's paralegal had a phone call about the Subpoena. |
| August 3, 2020 | Ms. Quinn and Defense Counsel had a phone call to discuss the Subpoena. During the call, Ms. Quinn stated that, in response to |

9

|  | subpoenas, ADP's practice is to produce records as they are kept in the ordinary course of business, and that ADP ordinarily does not create reports in response to non-party subpoenas. Ms. Quinn further stated that the payroll contact for Outokumpu should be able to create the requested report in Excel format, as its payroll software has a tool that allows them to create reports. Ms. Quinn also mentioned that ADP is not a "records custodian" for its payroll clients and that ADP stores its clients' data for a limited period of time. Ms. Quinn further advised that the best report that ADP maintains is a Payroll Register report that is generated after each payroll and kept in PDF format. Defense Counsel did not complain and asked for a sample Payroll Register report to review. That day, Ms. Quinn made an internal request for the Payroll Register reports that were generated in June 2020. |
|---|---|
| August 5, 2020 | As requested, Ms. Quinn provided the Payroll Register reports from June 2020 to Defense Counsel. |
| August 10, 2020 | Defense Counsel emailed Ms. Quinn asking if ADP can provide a report similar to a Payroll Register, but by individual named employees (instead of all employees). Ms. Quinn confirmed that was not possible and suggested that, if only certain employees should be seen, the Payroll Register reports could be redacted. Additionally, Ms. Quinn once again advised that, alternatively, the payroll contact for Outokumpu can create a report in Excel format. |
| August 14, 2020 | Defense Counsel emailed Ms. Quinn and asked how the Outokumpu payroll contact can select individual employees and whether ADP could obtain timekeeping records for 11 Outokumpu employees. |
| August 17, 2020 | Ms. Quinn emailed Defense Counsel and provided them with contact information for an ADP associate (Sid Johnson) to assist Outokumpu in creating reports in Excel format. Ms. Quinn further informed Defense Counsel that ADP cannot produce timekeeping records for a selected number of employees, and that any such file would contain all employee records. Ms. Quinn also provided Defense Counsel with a price quote for the restoration of historical Payroll Register reports since that is what Defense Counsel had requested. |
| October 8, 2020 | Defense Counsel emailed Ms. Quinn and stated that Outokumpu had not been able to create individualized Excel reports, and asked that ADP restore Payroll Register reports back as far as ADP can.[10] |
| October 13, 2020 | Ms. Quinn emailed Defense Counsel, advised that ADP could restore the Payroll Register reports back to 2018, and provided the cost of the reports. Defense Counsel asked Ms. Quinn to send them the |

---

[10] Before this communication, ADP believes that Defendant and/or Defense Counsel communicated with ADP associate, Sid Johnson.

10

| | |
|---|---|
| | reports when they are ready along with an invoice for same. Later that day, Ms. Quinn sent Defense Counsel the reports and invoice as requested. |
| February 17, 2021 | Defense Counsel emailed Ms. Quinn stating that Outokumpu was able to speak with someone at ADP to gain a better understanding of how the Regular Rate of Pay process is done, but that they still needed reports in Excel format. Ms. Quinn reminded Defense Counsel that ADP ordinarily does not create reports in response to subpoenas, but stated that ADP would create an Excel report (treating it as a direct request from the client, Outokumpu) if Defense Counsel would provide Ms. Quinn with the desired time period and fields they are seeking since there are hundreds of fields that can be captured. |
| March 1, 2021 | Defense Counsel emailed Ms. Quinn and provided the desired time period and fields, and – for the first time – attached a copy of the First Show Cause Order. Defense Counsel further stated that the March 5th hearing would likely be cancelled if Ms. Quinn provided the spreadsheet before then. |
| March 3, 2021 | Ms. Quinn sent Defense Counsel the hours and earnings report in Excel format. ADP was only able to capture data back to 1/1/2018. |
| March 4, 2021 | Defense Counsel emailed Ms. Quinn asking questions about the report. At 5:40 pm, Defense Counsel informed Ms. Quinn that the hearing was going forward. |
| March 5, 2021 | Ms. Quinn and another ADP employee, Robin Raines, had a phone call with Defense Counsel and answered additional questions about the report. When Ms. Quinn asked Defense Counsel whether the hearing would be by phone or video, Defense Counsel stated that ADP should call the court and ask. |

As this timeline shows, when ADP received the Subpoena, it immediately began conferring with Defense Counsel to determine what specific information was needed to satisfy ADP's response to the Subpoena. At that time, ADP informed Defense Counsel that ADP does not ordinarily create reports in response to subpoenas, but that ADP kept Payroll Register reports in PDF format and believed they would contain responsive information. In response, Defense Counsel did not complain and asked for the Payroll Register reports in PDF format, and ADP then

11

provided them – all within just five business days after receiving the Subpoena. Having produced what Defense Counsel asked for, ADP believed it had complied with the Subpoena.

Thereafter, ADP promptly complied with every request that Defense Counsel made. And on February 17th (<u>over six months after ADP produced the PDFs</u>), when Defense Counsel asked for a spreadsheet, ADP promptly responded that same day agreeing to do so. Defense Counsel then delayed for twelve days and, on March 1st, provided the fields to allow ADP to prepare the spreadsheet. ADP then provided the requested spreadsheet on March 3rd.

When the undersigned counsel was retained on March 5th, he spoke with Defense Counsel, who confirmed that the spreadsheet was sufficient, but that they also needed certain Regular Rate of Pay ("RROP") information to be included. After working tirelessly for several days, ADP produced a revised version of the spreadsheet that included RROP to Defense Counsel before 9 am CST on March 10th. Defense Counsel did not provide the spreadsheet to Plaintiffs' counsel until after 10 pm CST, a good 13 hours later.

During a call at 2:30 pm CST on March 10th, since ADP had provided the only thing that Defense Counsel had requested by 9 am that morning, ADP's counsel requested that Defense Counsel confirm in writing that ADP has provided everything that Defense Counsel required pursuant to the Subpoena. In response, Defense Counsel readily confirmed that they would provide that confirmation. However, when ADP's counsel requested that confirmation yesterday after the call, Defense Counsel did not provide it. This morning, Defense Counsel finally responded reversing their position, apparently trying to posture themselves to avoid sanctions at tomorrow's show-cause hearing.[11] Needless to say, ADP is extremely upset with Defense Counsel's behavior.

---

[11] The email correspondence relating to this issue is attached hereto as "Exhibit 2."

After receiving several new questions and requests from Defense Counsel this morning, ADP has worked diligently throughout the day and has located potentially responsive information that will address all of Defense Counsel's new questions and requests, but ADP needs a reasonable time to review the information for responsiveness, confidentially, and privilege before producing it. ADP has committed to produce the information to Defense Counsel by Friday, March 19th, so long as there is a protective order entered by then to protect the confidential nature of the information.

ADP has always believed it complied with the Subpoena by producing the PDFs that were accepted by Defense Counsel, by complying with all of Defense Counsel's subsequent requests, and by producing the spreadsheet that was requested many months later. ADP was never informed that there were any problems with its efforts and what it had provided. Rather, ADP was led to believe that everything was fine and had no idea that there were concerns about its efforts or production. Under these circumstances, this Court should find that ADP complied with the Subpoena, at least to a degree so as not to warrant any contempt sanctions against ADP. Alternatively, if this Court believes that ADP has technically failed to comply, then ADP respectfully requests that this Court find that ADP's good faith efforts and belief that it was in substantial compliance constitutes an adequate excuse for any perceived technical noncompliance, so as not to warrant any contempt sanctions against ADP.[12]

## Conclusion

Again, ADP sincerely apologizes to the Court and looks forward to answering the Court's questions at the hearing scheduled for March 12, 2021.

---

[12] *See Fed. R. Civ. P.* 45 (allowing the court to hold nonparty in contempt for failing to obey a subpoena unless the nonparty has an "adequate excuse" for the failure).

        Respectfully submitted,

        */s/ Matthew R. Jackson*
        MATTHEW R. JACKSON (JACKM7882)
        GARRETT ZOGHBY (ZOGHG7748)
        *Attorneys for ADP, Inc.*

**OF COUNSEL:**
ADAMS AND REESE LLP
11 N. Water Street, Suite 23200
Mobile, Alabama 36602
(251) 433-3234 Main
(251) 438-7733 Fax
matt.jackson@arlaw.com
garrett.zoghby@arlaw.com

## CERTIFICATE OF SERVICE

     I hereby certify that, on **March 11th, 2021**, I served a copy of the foregoing pleading upon all counsel of record by electronically filing same with the Clerk of Court using the CM/ECF System.

        */s/ Matthew R. Jackson*
        OF COUNSEL