IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM HEATH HORNADY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION NO. 1:18-00317-JB-N |
| OUTOKUMPU STAINLESS USA, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

## I.   INTRODUCTION

On November 18, 2021, the Court entered an Order issuing a default against Defendant Outokumpu Stainless USA, LLC ("Defendant") as a sanction for Defendant's bad faith misconduct throughout the discovery process and misrepresentations to the Court.  (Doc. 344).  In its Order, the Court found Plaintiffs' Third Amended Complaint ("TAC") (Doc. 223) states a claim for relief and presents sufficient bases to support the entry of a default judgment.  (Doc. 344).

The parties appeared before the Court on December 15, 2021, to discuss preliminary matters relating to damage calculations.  At that hearing, the Defendant raised questions concerning which claims of the TAC are to be taken as true.  The Court provides additional guidance here.

### A.   BACKGROUND

The initial complaint was filed on July 16, 2018, by four Plaintiffs asserting claims against Defendant for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*  ("FLSA").

(Doc.1).  Almost immediately, the named Plaintiffs amended the complaint to assert a collective action under Section 216(b) of the FLSA.  (Doc. 5).  On August 31, 2018, Plaintiffs filed a Motion for Conditional Collective Certification and related evidentiary submission.  (Docs. 23 and 23-1). The evidentiary submission contained declarations of 20 employees.

Defendant did not object to the Motion for Conditional Collective Certification.  (Doc. 63). Accordingly, the Court conditionally certified the Collective Action on May 2, 2019.  (*See* Doc. 93, "Order for Conditional Class Certification").  The collective action includes named Plaintiffs and "all other similarly situated employees, former and present, who worked for Defendant at [the Mill], who were paid on an hourly basis and who were/are affected by Defendant's acts, omissions, timekeeping and wage payment practices described in this Amended Complaint ('The Collective')." (Doc. 223).

The operative Complaint, the TAC, was filed on July 7, 2020.  The facts asserted in the TAC reflect the following: (1) all Plaintiffs are hourly, nonexempt employees who are or were employed by Defendant in various capacities at its steel manufacturing facility in Calvert, Alabama ("Mill");  (2) Defendant employed a variety of timekeeping policies and pay practices; and (3) these timekeeping policies and pay practices resulted in the failure to properly and timely pay Plaintiffs overtime and for all time worked.  As with the first and second complaint, the TAC includes three counts against Defendant.  In Count One, Plaintiffs assert individual claims under the FLSA; Count Three asserts similar claims for the Collective.  (Doc. 223).  In Count Two, Plaintiffs plead alternative common law claims for quantum merit and/or unjust enrichment "to recover wages for all uncompensated work performed up to 40 hours per week, as opposed to

overtime work," which might be due as a result of Defendant's rounding practices.[1]  (Doc. 223 at ¶¶42-43).

In general, Plaintiffs allege Defendant (i) failed to pay wages for all time they were clocked in, working, or available to work, (ii) failed to pay overtime at 1.5 times an hourly rate that included monthly bonuses and for all hours worked in excess of 40 hours in a workweek, and (iii) incorrectly paid overtime as "trued up" wages calculated after regular payment dates.  (Doc. 223).   More specifically, the TAC includes additional allegations concerning Defendant's determination of the workweek, calculations of pay over a workweek, late payments of overtime pay (*i.e.,* "trued up payments"), and failure to maintain accurate records (record keeping violation).  (Docs. 217 and 223).  These allegations were added based on the testimony of Defendant's Corporate Representative Melissa Pledger.[2]  In their Motion for Leave to File Third Amended Complaint, which Defendant did not oppose, Plaintiffs explained:

> D.    The additional and/or amended allegations concerning Defendant's calculations of pay over a workweek, and about bonuses, reflect information obtained from Defendant during discovery, and particularly testimony of Defendant's representative taken during March, 2020.

> E.    The additional allegations concerning Defendant's practice of paying, sometimes, adjusted overtime pay on a belated basis after "trued-up" calculation are performed reflects information first obtained from Defendant during depositions taken in March, 2020 and not disclosed, or apparent, from Defendant's earlier discovery responses. That subject remains one of ongoing discovery, but Defendant has, as yet been unable to provide additional information by way of deposition or otherwise. See paragraph 3 or Stipulated Order dated June 2, 2020 (Doc 212, PageID.2439).

---

[1]  This claim is often called a "gap time claim" discussed more fully in Section II(C).

[2] As more fully set out in the Court's November 18, 2021 Order, Defendant is bound by its Corporate Representative's testimony.  Defendant did not make any changes to the deposition once it was produced and, later, when the testimony was incorporated into the Third Amended Complaint, by motion, the Defendant made no objections.

      F.      The allegations concerning record keeping also reflect information confirmed by, or obtained from, Defendant during depositions taken in March, 2020 which, also, remains a subject of ongoing discovery. See Stipulated Order dated June 2, 2020 (Doc 212, PageID.2438).

(Doc. 217).

Though Defendant did not object to Plaintiffs' Motion to Amend, Defendant twice represented it would produce evidence that the testimony of its own Corporate Representative was incorrect. (*See* Docs. 208, 242 and 267). Defendant never did so. As detailed in the Court's *November 18 Order* (Doc. 344), Defendant flouted its discovery obligations and failed to provide any additional, out of time, evidence.

At the hearing on December 15, Defendant questioned the sufficiency of the TAC, and more specifically certain allegations which were added as a result of the testimony of its Corporate Representative. That testimony was never fully investigated as a result of Defendant's refusal to participate in discovery, and more importantly was never amended by Defendant. The Court will not allow Defendant to benefit from its own misconduct. "Defendants rolled the dice on the district court's tolerance for deliberate obstruction, and they lost. We have no intention of letting them return to the table." *See Bambu Sales, Inc. v. Ozak Trading Inc*., 58 F.3d 849, 853-854) (2d Cir. 1995) (observing "Although entry of a default judgment is an extreme measure, discovery orders are meant to be followed. 'A party who flouts such orders does so at his peril.' . . . [t]here is no question that a default judgment establishes liability.") (quoting *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988)).

For the following reasons, the Court finds Plaintiffs' well-pleaded allegations sufficiently establish Defendant's liability.

### B.   LEGAL STANDARDS

The Court's *November 18 Order* states in relevant part:

> A plaintiff is entitled to a default judgment only if the complaint states a claim for relief.  *Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1316 (M.D. Fla. 2005) (citing *Nishimatsu Construction Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975)). Allegations in a complaint "must present a sufficient basis to support the default judgment on the issue of liability." *Nishimatsu Constr.*, 515 F.2d at 1206. "A default defendant may, on appeal, challenge the sufficiency of the complaint, even if he may not challenge the sufficiency of the proof." *Eagle Hosp.*, 561 F.3d 1298 at 1307 (reviewing whether the well-pleaded facts stated a claim where the district court ordered a default judgment pursuant to its inherent powers to sanction litigants), (citing *Nishimatsu Constr.*, 515 F.2d at 1206). "Regardless of the willfulness of a party's discovery violation, a default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1371 n.41 (11th Cir. 1997). "A default judgment is unassailable on the merits, but only so far as it is supported by well-pleaded allegations." *Nishimatsu*, 515 F.2d at 1206.

(Doc. 344).

A default by a defendant is "merely 'an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability.'"  *Pieta v. CDE Sec. & Automation, LLC*, 2021 U.S. Dist. LEXIS 131841 at *5 (S.D. Ala. July 15, 2021) (evaluating the sufficiency of plaintiffs' FLSA claim in order to conclude entry of default was appropriate where defendant was properly served but failed to appear) (quoting *Pitts ex rel. Pitts v. Seneca Sports, Inc.,* 321 F. Supp. 2d 1353, 1357 (S.D. Ga. 2004)).  The facts plead by Plaintiffs "must establish a 'prima facie liability case' against the Defendant."  *Exp. Dev. Canada v. Shore Acres Plant Farm, Inc.*, 526 F. Supp. 3d 1139, 1144–45 (S.D. Ala. 2021), *as supplemented*, 2021 WL 1151530 (S.D. Ala. Mar. 25, 2021) (quoting *Pitts*, 321 F. Supp. 2d at 1357 (citations omitted)). "Stated differently, 'a default judgment cannot stand on a complaint that fails to state a claim.'" *Pieta,* 2021 U.S. Dist. LEXIS 131841 at *6 (citing *Chudasama*, 123 F.3d at 1370 n.41).

The Court has "'an obligation to assure that there is a legitimate basis for any damage award it enters.'"  *Id.* at *7 (quoting *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003)).  A court fulfills this obligation by "independently determin[ing] if the admitted facts are enough to establish liability before it ascertain[s] the appropriate amount of damages and enter[s] final judgment in that amount."  *Diamond v. Diamond (In re Diamond Trust)*, 2021 U.S. Dist. LEXIS 88898 at *8-9 (S.D. Fla. May 7, 2021) (citing *Nishimatsu*, 515 F.2d at 1206).  Put another way, "the court must assess whether, under the facts pleaded in the complaint, the plaintiff has stated claims for payment of overtime . . . It is the sufficiency of the factual allegations that the court must focus on."  *Henley v. Coosa Pines Golf Club LLC*, 2011 U.S. Dist. LEXIS 163297 at *11 (N.D. Ala. Feb. 15, 2011).

## II.   DISCUSSION

### A.   FLSA ELEMENTS AND PLEADING STANDARDS

In pertinent part, the FLSA provides that a covered employer shall not:

> employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).  In the Eleventh Circuit, "[T]he requirements to state a claim of a FLSA violation are quite straightforward."  *Sec'y of Labor v. Labbe*, 319 F. App'x 761, 763 (11th Cir. 2008).  A plaintiff must demonstrate that (1) he is employed by the defendant, (2) the defendant engaged in interstate commerce, and (3) the defendant failed to pay him minimum or overtime wages."  *Freeman v. Key Largo Volunteer Fire & Rescue Dep't., Inc.*, 494 F. App'x. 940, 942 (11th Cir. 2012) (citing *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1285 n.68 (11th Cir. 1998) ("To

establish its prima facie case, plaintiffs demonstrated that: (1) Family Dollar 68 employed them; (2) Family Dollar is an enterprise engaged in interstate commerce covered by the FLSA; (3) each Plaintiff actually worked in excess of a 40-hour workweek; and (4) Family Dollar did not pay any overtime wages to them.  *See* 29 U.S.C. § 207(a).").  Notice is also an element when a plaintiff alleges "they were suffered or permitted to work without compensation."  29 U.S.C. § 201 *et seq.* The Eleventh Circuit, relying on 29 C.F.R. § 785.11, has "interpreted this to mean that a FLSA plaintiff must demonstrate that (1) he or she worked overtime without compensation and (2) the [employer] knew or should have known of the overtime work."  *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1314-1315 (11th Cir. 2007).  "An employer is said to have constructive knowledge of its employee's overtime work when it has reason to believe that its employee is working beyond his shift."  *Id*. (citing 29 C.F.R. § 785.11);  *see also Murray v. Birmingham Bd. of Educ.*, 172 F. Supp. 3d 1225, 1230 (explaining "[p]laintiffs can establish the element of notice by creating a genuine issue of fact that the employer should have known of the uncompensated overtime work.").

In *Labbe*, the Eleventh Circuit considered whether the lower court properly dismissed the Secretary's complaint for failure to state a claim under the FLSA.  *See generally* 319 F. App'x. 761. The district court determined the complaint needed "further detail to satisfy the threshold pleading requirements as articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)."  *Id*. at 762-763.

The Eleventh Circuit disagreed, finding the allegations were sufficient:

In *Twombly*, the Supreme Court explained that to survive a motion to dismiss under Rule 12(b)(6), a complaint "does not need detailed factual allegations," but those allegations "must be enough to raise a right to relief above the speculative level." 127 S. Ct. at 1964-65.

We have explained that the Rule 8(a)(2) pleading standard articulated by the Supreme Court in *Twombly* is "one of 'plausible grounds to infer.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1965). To state a claim with sufficient specificity "'requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Id*. The rule "'does not impose a probability requirement at the pleading stage,' but **instead 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Id*. at 1296**.

In applying these standards to the FLSA claims in this case, we review the Secretary's complaint to determine whether its allegations plausibly indicate that Labbe failed to pay minimum wage and overtime compensation and failed to keep employment records as required by FLSA. Unlike the complex antitrust scheme at issue in *Twombly* that required allegations of an agreement suggesting conspiracy, **the requirements to state a claim of a FLSA violation are quite straightforward. The elements that must be shown are simply a failure to pay overtime compensation and/or minimum wages to covered employees and/or failure to keep payroll records in accordance with the Act.** *See* 29 U.S.C. §§ 206, 207, and 215(a)(2) and (5).

319 F. App'x. at 763 (emphasis added).

Other district courts in this Circuit have revisited this same question at the motion to dismiss stage in an FLSA action. In *White v. NIF Corp,* the court denied the defendant's motion to dismiss where the defendant asserted that the FLSA complaint failed to state a claim under *Twombly* because it did not allege the hours the plaintiff worked per week, the amount of unpaid wages owed, and rate of pay. *White v. NIF Corp.*, 2015 U.S. Dist. LEXIS 104894 at *1 (S.D. Ala. August 11, 2015). The court, acknowledging the defendant's argument relied on several lower court decisions from other circuits, found it "need not review those opinions, because the Eleventh Circuit has spoken." *NIF Corp.*, 2015 U.S. Dist. LEXIS 104894 at*1 (citing *Labbe*, 319 F. App'x. 761); *see also Johnson v. TitleMax of Alabama, Inc.*, 2013 U.S. Dist. LEXIS 160379 at *8-9 (M.D. Ala. November 7, 2013) (citing *Labbe*, 319 F. App'x at 763) (finding plaintiff's allegations sufficient under *Iqbal* and *Twombly* when they satisfy the straightforward elements of §

207(a)(1)).  Likewise, in 2016, a district court denied a defendant-employer's motion to dismiss where it argued plaintiff had not properly pled her FLSA case by alleging only that she had worked a substantial number of uncompensated overtime hours.  *Knight v. Beall's Outlet Stores, Inc.*, 2016 U.S. Dist. LEXIS 111532 at *7-5 (S.D. Ga. August 22, 2016).  The court observed "sister courts in the Eleventh Circuit have not required plaintiffs, in pleading FLSA claims, 'to plead which weeks [s]he worked overtime, the number of overtime hours worked each week, or the amount of FLSA damages [s]he seeks.'"  *Id*. at *7 n.1. (quoting *Topol v. Artech Info. Sys., LLC*, 2016 U.S. Dist. LEXIS 90868 at *2 n.2 (M.D. Fla. June 24, 2016) (gathering cases holding the same within the Eleventh Circuit)).  More recently, a district court denied a motion for judgment on the pleadings where the defendants argued plaintiff's complaint did not specify which obligations under the FLSA they were alleged to have violated.  *Adili v. Mason Dixon Intermodal, Inc.*, 2020 U.S. Dist. LEXIS 114688 at *3 (N.D. Ga. May 11, 2020).  The plaintiff pointed out the defendants' motion was based on irrelevant authority and ignored the relaxed pleading standards applicable to FLSA claims within the Eleventh Circuit.  *Id.* at *3.  The district court agreed, relying on *Labbe*, as long as the complaint alleges enough facts to be plausible, it is sufficiently plead.  *Id.* at *5 (quoting *Labbe*, 319 F. App. at 764).[3]

---

[3] However, the FLSA pleading standards, as set forth in *Labbe*, have been questioned because it is an unpublished, pre-*Iqbal* decision.  *See Beck v. Fin. Tech. Corp.*, 2017 U.S. Dist. LEXIS 194226 at *16 (N.D. Ala. November 27, 2017) (observing "[h]owever, *Labbe* was decided before the Supreme Court's ruling in *Iqbal*, and as an unpublished opinion is not binding on this Court.) (citing U.S. Ct. of App. 11th Cir. Rule 36-2).  The district court in *Beck* then referenced the pleading standards of the Fourth and Ninth Circuit (discussed further below), which require a plaintiff to "provide sufficient factual allegations to support a reasonable inference that he or she worked more than forty hours in at least one workweek."  *Beck*, 2017 U.S. Dist. LEXIS 194226 at *17 (quoting *Hall v. DirectTV, LLC*, 846 F.3d at 757, 777 (4th Cir. 2017)).  Even though the plaintiff met this standard, the court granted the defendants' motion to dismiss, because plaintiff "failed to allege that defendants did not compensate her for the overtime hours she worked, an element of an FLSA claim under any pleading standards."  *Id.* at *18.

       The Fourth Circuit standard, requiring a plaintiff to allege a specific week during which he or she was not paid overtime correctly, as opposed to a general allegation that he or she "regularly worked in excess of forty hours per week without receiving overtime pay," is derived from the Second Circuit's standard in *Lundy v. Catholic Health Sys. of Long Island*, 711 F.3d 106, 114 (2d Cir. 2013).  *See Hall, 846 F.3d* at 767 (noting the First, Third and Ninth Circuits have also adopted the *Lundy* standard.).  In

## B.   FACTS SUPPORTING LIABILITY UNDER THE FLSA

In light of these principles, the Court has reviewed the TAC and confirms it is satisfied that

it sets forth viable, and plausible, causes of action under the FLSA against Defendant.   Regarding

---

*Lundy*, the Second Circuit articulated this FLSA pleading standard as follows:  "[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  711 F.3d at 114.  Several months after issuing the *Lundy* opinion, the Second Circuit explained further:

> [*Lundy's* standard] was designed to require plaintiffs to provide some factual context that will 'nudge' their claim 'from conceivable to plausible.' *Twombly*, 550 U.S. at 570. While this Court has not required plaintiffs to keep careful records and plead their hours with mathematical precision, we have recognized that it is employees' memory and experience that lead them to claim in federal court that they have been denied overtime in violation of the FLSA in the first place. Our standard requires that plaintiffs draw on those resources in providing complaints with sufficiently developed factual allegations.

*DeJesus v. HF Mgmt. Servs.*, 726 F.3d 85, 88-90 (2nd Cir. 2013).

> In the process of adopting the *Lundy* standard, the Ninth Circuit disagreed with the Eleventh Circuit's standard in *Labbe*:

> Although we agree with the Eleventh Circuit that detailed factual allegations regarding the number of overtime hours worked are not required to state a plausible claim, we do not agree that conclusory allegations that merely recite the statutory language are adequate. *But see Labbe*, 319 F. App'x at 763. Indeed, such an approach runs afoul of the Supreme Court's pronouncement in *Iqbal* that a Plaintiff's pleading burden cannot be discharged by "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action . . ." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).

*Landers v. Quality Communs., Inc.*, 771 F.3d 638, 643-44 (9th Cir. 2015).

At first glance, the difference between the *Lundy* and *Labbe* standards is that the Second, Third, Fourth and Ninth Circuits appear to require a plaintiff to allege a specific week within which he was not paid overtime correctly.  On one hand, the Ninth Circuit found "in order to survive a motion to dismiss, a plaintiff asserting a claim to overtime payments must allege that she worked more than forty hours *in a given workweek* without being compensated for the overtime hours worked during *that workweek*." *Landers*, 771 F.3d at 644-645 (citing *Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir. 2012); *see also Lundy*, 711 F.3d at 114; *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 242-43 (3d Cir. 2014)) (emphasis added).  On the other hand, the Ninth Circuit also "agree[d] that the plausibility of a claim is 'context-specific.'" *Landers*, 771 F.3d at 645 (quoting *Lundy*, 711 F.3d at 114).  The Ninth Circuit explained, further, a "plaintiff may establish a plausible claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, *or any other facts* that will permit the court to find plausibility." *Landers*, 771. F.3d 638 at 645 (citing *Pruell*, 678 F.3d at 14) (emphasis added).

A district court in the Sixth Circuit recently considered the *Lundy* FLSA pleading standards, both as articulated by *Lundy* and as "broadly" adopted in the Third, Fourth, and Ninth Circuits. See *Anderson v. GCA Servs. Grp. of N.C.*, 2015 U.S. Dist. LEXIS 119742 at *8 (W.D. Ky. September 9, 2015).  The court evaluated the sufficiency of 22 plaintiffs' claims, brought on behalf of all employees, who alleged they "worked in excess of forty hours in unspecified weeks while being underpaid straight and/or overtime wages." *Id.* at *2.  In *Anderson*, the defendant argued, relying on *Lundy*, plaintiffs' failure to "specify at least one work week in their complaint in which overtime wages went unpaid" supported dismissal of the plaintiffs' FLSA claims. *Id.* at *7-8 (citing Def.'s Mem. in Supp. of Mot. to Dismiss 6, DN 8-1; citing *Lundy*, 711 F.3d 106).  In response, the plaintiffs argued no such specificity is required in the Sixth Circuit. *Id.*  The court reviewed each of the cases relied on by plaintiffs, as well as the leading cases in the Second, Fourth and Ninth Circuits, and succinctly summarized: "The emphasis in all these cases is plausibility per *Twombly* and *Iqbal*, not the creation of a novel pleading requirement." *Id.* at *10-11; *see also Tapia v. DIRECTV, Inc.*, 2016 U.S. Dist. LEXIS 193889 at*14 (D. N.M. June 22, 2016) ("The Court concludes that not even the Ninth Circuit requires a plaintiff to identify by date a specific workweek, as Defendants argue; in addition, the Court finds that Plaintiffs allege 'other facts that will permit the court to find plausibility.'") (quoting *Landers*, 771 F.3d at 645.").

the first two elements required to establish a prima facie FLSA case, Plaintiffs alleged all of the members within the collective are, or were, employees of the Defendant and the Defendant is an enterprise engaged in the production of goods for commerce as defined by § 203(s)(1) of the FLSA. (Doc. 223 at ¶¶3,6,7 and 9). Defendant does not contest these allegations. The Court accepts them as true.

Having established Plaintiffs' allegations satisfy the first two elements, the Court now turns to the third element, *i.e.* failure to pay overtime correctly. As discussed, generally, Plaintiffs allege "Defendant failed to pay Plaintiffs and all other similarly situated employees in the Collective proper overtime compensation for hours worked in excess of 40 in a workweek, and . . . for all hours worked . . .." (Doc. 223 at ¶48). More specifically, Plaintiffs allege Defendant failed to pay overtime correctly, at the correct rate or amount, timely and for all time worked as the result of the violation of four separate regulations as follows: (a) a claim that Defendant willfully violated the FLSA by adopting a rounding policy pursuant to which Plaintiffs' and similarly situated employees' time worked was always rounded down in favor of the employer, in violation of 29 C.F.R. § 785.48; (b) a claim that Defendant willfully violated the FLSA by failing to calculate wages according to a fixed, recurring 168-hour period/workweek, in violation of 29 C.F.R. §§ 778.104-105; (c) a claim that Defendant willfully violated the FLSA by failing to recalculate Plaintiffs' regular hourly rate of pay for the purposes of calculating the overtime rate, in violation of 29 U.S.C. § 207(e); and, (d) a claim that Defendant willfully violated the FLSA by failing to pay overtime on the regular payment date or to timely pay overtime, in violation of 29 U.S.C. § 206(b). Finally, Plaintiffs allege Defendant violated the FLSA by failing to keep accurate wage records pursuant to 29 C.F.R. § 516.2. Plaintiffs aver Defendant accomplished these alleged violations

through the employment of timekeeping policies and pay practices common to all Plaintiffs. (Doc. 223). *See Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1236 (S.D. Ala. 2008) (granting conditional certification where plaintiffs have adequately demonstrated that they are similarly situated in the sense that they are subject to common policies, practice or plans of defendant that allegedly violated the FLSA).

### 1.    Plaintiffs' Rounding Claims

First, Plaintiffs allege Defendant's rounding policies violate the FLSA regulations, resulting in overtime pay, and pay in general, not being paid accurately and for all time worked. (Doc. 223 at ¶¶11,12 12.1, 14, 16.1, 16.2, 16.3, 19).  According to Plaintiffs, Defendant employed two rounding policies during the time period encompassed by this suit.  The first rounding policy automatically rounded employees' clock-ins and -outs, up and down, by thirty minutes. (Doc. 223 at ¶11).  During the pendency of this lawsuit, Defendant amended its policy to round by seven minutes rather than thirty. (Doc. 223 at ¶12).  Under both policies, Plaintiffs allege Defendant's policy stated that the employee would be disciplined for clocking in or out more than one minute after the scheduled end of the shift. (Doc. 223 at ¶¶11, 12).

Further, Plaintiffs allege they were working at all times they were clocked in and Defendant knew it.  Confirming Plaintiffs' allegations, Defendant's Corporate Representative testified employees were assumed to be working from the time they clocked in until the time they clocked out. (Doc. 223 at ¶¶16.1-16.3).  Plaintiffs allege Defendant's practices required them to coordinate work progress with the employee whose shift was about to end before their scheduled start time and "while having clocked in," *i.e.*, during the rounded off time. (Doc. 223 at ¶19).  Plaintiffs included time clock records of four Plaintiffs over a two-week period,

illustrating the impact the rounding policy had on the calculations of these Plaintiffs' hours.  (Doc.

223 at ¶¶20-23).  Plaintiffs alleged they were paid for less time than the time clock records

illustrate.  *Id*.

The Court's *November 18 Order* discussed the general rules concerning rounding

practices:

> The Code of Federal Regulations accompanying the FLSA generally permit
> rounding practices. 29 C.F.R. § 785.48. The regulation provides, where time clocks
> are used, employees do not have to be paid for arriving before their regular
> starting time or remaining after their closing time if the employees do not engage
> in any work. (Id. at § 785.48(a) ("Their early or late clock punching may be
> disregarded.")). Likewise, an employer may round time "to the nearest 5 minutes,
> or to the nearest one-tenth or quarter of an hour." 29 C.F.R. § 785.48(b)
> ("Presumably, this arrangement averages out so that the employees are fully
> compensated for all the time they actually work."). Rounding is an acceptable
> method to compute time "provided that it is used in such a manner that it will not
> result, over a period of time, in failure to compensate the employees properly for
> all the time they have actually worked." *Id*.

(Doc. 344).

As discussed in the *November 18 Order* "there is no Eleventh Circuit precedent

establishing how FLSA 'rounding' rules should be interpreted . . .."  *(Id.)*.

> Federal regulation permits rounding as long as "it will not result, over a period of
> time, in failure to compensate the employees properly for all the time they have
> actually worked." *Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821
> F.3d 1069, 1075 (9th Cir. 2016)*; see also Corbin v. Time Warner Entm't-
> Advance/Newhouse P'ship*, 821 F.3d 1069, 1075 (9th Cir. 2016) (noting that federal
> regulation has endorsed use of rounding for over 50 years). Stated differently, a
> valid rounding policy must be "neutral, both facially and as applied." *Corbin*, 821
> F.3d at 1076 (internal citations omitted).

*(Id.)* (quoting *Aguilar v. Mgmt. & Training Corp.*, 948 F.3d 1270, 1287 - 88 (10th Cir. 2020)).

In order to prevail on a rounding claim, then, a plaintiff must allege sufficient facts which

would plausibly suggest the rounding policy, whether on its own, or in combination with other

policies, lead to a systematic underpayment of wages. *Hardy v. Lewis Gale Med. Ctr., LLC*, 377 F. Supp. 3d 596, 614-615 (W.D. Va. 2019) (relying on *Austin v. Amazon.com, Inc.*, 2010 U.S. Dist. LEXIS 45623 at *3 (W.D. Wash. May 10, 2010) (noting 29 C.F.R. § 785.48(b) "does not contemplate the situation where an employer allows rounding when it benefits the employer without disciplining the employee; but disciplines the employee when the rounding does not work to the employer's advantage."). In *Hardy*, the court determined the defendant-employer was not entitled to judgment on the pleadings where the facts alleged by plaintiff demonstrated defendant encouraged employees to clock in seven minutes before shift, disciplined employees for clocking in after shift, and only permitted employees to clock out seven minutes before end of shift if a replacement had arrived.

This case presents a similar situation. Plaintiffs allege the following facts: (a) Defendant's rounding policy, together with its disciplinary policy, results in rounding that occurs almost completely in favor of Defendant; or (b) Defendant's rounding policy, together with its requirement that Plaintiffs coordinate with the employee whose shift is ending, results in time Defendant knew Plaintiffs were working being rounded off, *i.e.* before the shift start time but after they had clocked in. For the purposes of determining liability, these well-pleaded allegations are accepted as true. Accordingly, the Court finds Plaintiffs have alleged sufficient facts supporting a claim for violation of 29 C.F.R. § 785.48, resulting in underpayment or incorrect payment of overtime.

## 2. Workweek Related Violations

Next, Plaintiffs allege two separate violations based on Defendant's incorrect workweek determination and the allocation of time between workweeks. First, prior to January 27, 2019,

the workweek began on Monday and ended on Sunday according to Defendant's own records. (Doc. 223 at ¶¶18.2-18.) ("The business payroll data records Defendant maintained in its ordinary course of business for every two week pay period from 2015 until January 27, 2019 identified work weeks beginning Mondays and ending Sundays.").  Plaintiffs allege, in response to this action, Defendant changed the payroll data records so that the workweek began on Sunday and ended on Saturday.  (*Id.* at ¶18.3).  However, Plaintiffs allege, prior to that change, "Defendant did not pay employees for overtime in excess of 40 hours a week based on time worked for the fixed, recurring 168-hour period of Mondays – Sundays from June, 2015 – January 27, 2019."  (*Id.* at ¶18.6).

Next, Plaintiffs allege Defendant does not calculate overtime according to a fixed and recurring 168-hour weekly period.  (*Id.* at ¶18.7).  Instead, Plaintiffs assert Defendant "calculates the approved time to be paid so that the time any employee is paid for any single shift is not allocated between different pay periods no matter what time the employee started working or stopped working."  (*Id.* at ¶18.8).  In other words, Plaintiffs allege the Defendant allocates all the time associated with an employee's shift to a single workweek regardless of whether the shift spans two different workweeks.  (*Id.* at ¶18.9).  Plaintiffs' allegations are based on the testimony of Defendant's corporate representative who, Plaintiffs allege, testified "[Defendant] does not track time for purposes of calculating pay based on any 168 hour period . . .."  (*Id.*; Doc. 217).

As discussed, the FLSA provides an employee shall receive overtime at one and one-half times the regular rate of pay for any hours worked in excess of forty per workweek.  *See* 29 U.S.C. § 207(a)(1).  The "work week" is the unit of time on which overtime is calculated.  *See Jenkins v. Anton*, 922 F.3d 1257, 1269 (11th Cir. 2019) (citing 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.103)

("Under the Fair Labor Standards Act, overtime is calculated on a workweek basis."); *see also Abshire v. Redland Energy Servs., LLC*, 695 F.3d 792, 794 (11th Cir. 2019) ("the unit of time . . . within which to distinguish regular from overtime [work] is the week.") (quoting *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 579 (1942)).  Indeed, "the FLSA as a whole and the DOL's implementing regulations of the Act highlight the primacy of the workweek concept."  *Solano v. A Navas Party Prod.*, 2011 U.S. Dist. LEXIS 4871 at *20 (S.D. Fla. January 12, 2011) (quoting *Herman v. Fabri-Centers of Am., Inc.*, 308 F.3d 580, 589 (6th Cir. 2002) (citing 29 U.S.C. §§ 207(a)(1), (l), (m)).  A workweek may be any "fixed and regularly recurring period of 168 hours - seven consecutive 24-hour periods. It need not coincide with the calendar week but may begin on any day and at any hour of the day."  29 C.F.R. § 778.105.  Each workweek stands alone.  *See* 29 C.F.R. §§ 778.103, 778.104.  Once the beginning time of an employee's workweek is established, it remains fixed regardless of the schedule of hours worked.  *See* 29 C.F.R. § 778.105.

A plaintiff may maintain a claim, under the FLSA, that overtime has been figured incorrectly where there is a dispute over the parameters of the workweek.  In *Smith v. Werner Enterprises*, the Southern District of Alabama considered just that when "[t]he plaintiffs claimed a Monday-Sunday workweek (resulting in 44 hours of overtime every other workweek on their normal work schedule), while the defendant asserted a Friday-Thursday workweek (resulting in eight hours of overtime every other workweek)."  *Smith v. Werner Enters.*, 2015 U.S. Dist. LEXIS 94566 at *2 (S.D. Ala. July 21, 2015).  The parties filed competing summary judgment motions, which the court denied.  *Id*.  The court recognized "'generally, an employer's set pay period is *prima facie* evidence of the employer's established workweek.'"  *Id*. at *10 (quoting *Johnson v. Phoenix Group, LLC*, 2013 U.S. Dist. LEXIS 47665 at *8 (S.D. Ohio April 2, 2013)).  However, in

denying defendant's motion for summary judgment, the court determined evidence that defendant's pay periods were every other Friday for work in the preceding 14 days "could [not] neutralize the plaintiffs' evidence that it established a Monday-Sunday workweek for [some] of its drivers." *Id*. at *10-11.

More recently, the Fifth Circuit overturned summary judgment in the employer-defendant's favor where the plaintiff alleged the start of the workweek aligned with the bi-weekly pay period, despite the defendant's assertions otherwise. *See Bruno v. Ford*, 2021 U.S. App. LEXIS 30314 (5th Cir. October 11, 2021). In *Bruno*, the plaintiff presented evidence, including paychecks, with the pay period ending date, that the workweek was from Thursday to Wednesday. *Id*. at *3. Though the defendant "changed," during the pendency of the lawsuit, the end of its pay period to coincide with plaintiff's allegation of the workweek, the district court granted defendant's summary judgment without further explanation. *Id.* at *3-4. The Fifth Circuit remanded the case for an explanation, observing the district court did not "even mention the time reporting records, paychecks, and declaration submitted by [the plaintiff]. That evidence cannot simply be ignored without explanation." *Id*. at *7, on remand at *Bruno v. Ford*, 2021 U.S. Dist. LEXIS 217154 (S.D. Tex. November 9, 2021).

As with the plaintiff in *Bruno*, the "principal dispute" is at what point during the pay period the total hours worked by plaintiffs should be split between overtime and straight time. *See Bruno*, 2021 U.S. App. LEXIS 30314 at *6. As with the plaintiff in *Bruno*, Plaintiffs allege they were not paid overtime based on a Monday – Sunday workweek in alignment with the bi-weekly pay period ending date on their earning statements, through January 27, 2019. (Doc. 223 at ¶¶18.2-18.6). The Court is satisfied Plaintiffs allege sufficient facts to state a claim that Defendant's

inconsistencies between its pay period, as demonstrated by the earning statements, and identification of the parameters of the workweek may result in the incorrect calculation of overtime pay.

Next, Plaintiffs allege Defendant routinely tallies hours worked during a workweek in accordance with the Plaintiffs' work schedule, and not based on a fixed, recurring 168-hour period. (Doc. 223 at ¶¶18.8-18.10). Plaintiffs' allegations in this regard constitute a *prima facie* violation of 29 C.F.R. § 778.105. Accordingly, the Court finds that Plaintiffs have alleged sufficient facts which would support a claim that overtime was calculated incorrectly under the FLSA as a result of Defendant's workweek violations.

### 3.    Overtime Rate Claim

Third, Plaintiffs allege Defendant improperly calculated their overtime rate by failing to include their nondiscretionary bonuses in the calculation of their regular rate, which ultimately impacts overtime compensation. (Doc. 223 at ¶¶38 and 49). Plaintiffs allege Defendant pays each employee a monthly percentage bonus (*i.e.* incentive) of up to 25%. (*Id.* at ¶¶21-21.1). Defendant determines the percentage based on Mill performance and other factors over a calendar month. A percentage amount is determined by the 15th of the subsequent month. (*Id.* at ¶¶21.1-21.2). However, "[t]he percentage is not applied to the gross amount of pay the employee earned during the calendar month" in which the bonus was calculated. (*Id.* at ¶21.4). To be clear, Plaintiffs allege the "calendar month that a bonus is earned is never the same time period as the 4 weeks (or sometimes 6 weeks) of previously received pay that the bonus percentage is applied to. The bonus paid at the end of a month (based on criteria for the prior

month) is always applied to earnings from part of the month for which the criteria were considered, and also part of the month before that." (*Id*. at ¶21.5).

Defendant's bonus payments constitute "renumeration" under FLSA, and, therefore, must be included in calculating an employee's regular rate of pay. (Doc. 344, citing 29 C.F.R. 778.209(a)). Once the regular rate of pay has been revised to include the bonus amount, any overtime pay must be recalculated at the revised regular rate. (Doc. 344, citing 29 C.F.R. § 778.209(a)). An employer is not required to retrospectively recalculate the regular rate if the employer pays a fixed percentage bonus that simultaneously pays overtime compensation due on the bonus. (Doc. 344) (citing *Brock v. Two R Drilling Co.*, 789 F.2d 1177, 1179-81 (5th Cir. 1986) and 29 C.F.R. § 778.210).

> From a mathematical perspective, a percentage bonus under Section 778.210 achieves the same result as recomputation. Thus, percentage bonuses are permissible not because they have some independent legal justification, but because they achieve the same ultimate result for the employee.

(Doc. 344, citing *Weninger v. Gen. Mills Operations LLC*, 344 F. Supp. 3d 1005, 1009 (E.D. Wis. 2018)).

A recent case in the Southern District of California explained the rules as follows:

> In other words, an employer is not liable for additional overtime pay when they offer 'percentage-based bonuses.' A 'percentage-based bonus' is one in which the employer will award a bonus calculated as a percentage of an employee's total wages (regular pay plus overtime pay). If an employer grants a bonus to an employee as a percentage of total pay, the employer increased both the regular rate of pay and the bonus pay by the same percentage. Under a 'percentage-based bonus,' there is no need for an employer to recalculate the regular rate on which overtime pay must be based, because the employer has already accounted for an increase in overtime pay.

*Barragan v. Home Depot U.S.A., Inc.,* 2021 WL 3634851 at *6–8 (S.D. Cal. Aug. 17, 2021). In *Barragan*, the district court considered whether a bonus of a $100 was actually a percentage

bonus or a lump sum bonus (which would require the employee's regular rate of pay to be recalculated). *Id*. at *20. Home Depot awards percentage-based bonuses ("Success Sharing") twice a year. *Id*. As the name implies, Home Depot requires a store to achieve at least 95% of its financial targets before it allocates a Success Sharing (percentage bonus) to employees. *Id.* at *21. If the store achieves these metrics during the bonus calculation period, Home Depot applies a small percentage to an employee's earnings (regular and overtime) during the bonus calculation period to determine the bonus for each eligible employee. *Id*. If the bonus for an individual employee, after applying the relevant percentage to an individual's total earnings, was less than $100, Home Depot rounds up to $100. *Id.* The plaintiffs challenged the "rounded up," and now $100 bonus, arguing since the bonus was no longer a direct percentage of overtime and regular time earned during the bonus calculation period, overtime should be recalculated. *Id*. at *22. The court agreed and granted plaintiffs judgment as a matter of law, finding that after using a percentage-based calculation, and after determining that this calculation yielded a total less than $100, Home Depot converted the bonus to a lump sum bonus. *Id*. at *25.

*Russell v. Gov't Emps. Ins. Co.* provides additional authority for the relevancy of the bonus calculation period. 2018 U.S. Dist. LEXIS 38425 (S.D. Cal. March 8, 2018) (aff'd by 787 F. App'x. 953 (9th Cir. 2019)). In *Russell*, the employees were paid a percentage bonus in February; the percentage bonus was calculated against the employees' total wages earned during the prior calendar year. *Id*. at *9. The plaintiff relied on a Department of Labor opinion to argue the bonus was not a proper percentage bonus because the "period in question" was not the calendar year. *Id*. at *10. Rather, the plaintiff argued, because the bonus was paid in February, shortly after the close of the calendar year, "the period in question" was fourteen months. *Id*. The court

considered plaintiff's interpretation of the Department of Labor opinion letter, and determined the plaintiff overlooked the fact than an employee working in January and February is earning a bonus for that calendar year, payable the following February. *Id.* Ultimately, the court determined the bonus need not factor in the wages earned during January and February because the "period in question" is the prior calendar year. *Id*. at *12 (quoting DOL WH. Op. Ltr., 1997 WL 998000 at *1 (Jan. 23, 1997) ("[t]he period in question here is the twelve months of year one").

Here, Plaintiffs allege: 1) Defendant pays a nondiscretionary bonus; 2) the nondiscretionary bonus is based on a percentage, calculated from certain metrics collected during a calendar month (*i.e.* the "period in question" or "bonus calculation period"); and, 3) the percentage is then applied to the most recent wages earned by Plaintiffs, which are not wages earned wholly within the calendar month during which the metrics are gathered, in order to arrive at the "percentage bonus" amount. Accordingly, Plaintiffs allege Defendant's "percentage bonus" does not achieve the same result as a recalculation of overtime earned during the calendar month. Since the bonus is not applied to wages wholly earned during the calendar month, Plaintiffs allege overtime is not paid correctly either during the calendar month within which the metrics are gathered or on the more recent wages to which the percentage is applied. In sum, Plaintiffs allege the math never works out and the overtime wages earned during the bonus period should be recalculated. Plaintiffs have sufficiently alleged Defendant's calculation of its percentage bonus does not achieve the same mathematical result as a recalculation of the regular rate, inclusive of the bonus amount, and subsequent overtime rate, on wages earned during the bonus period.

### 4. Timeliness of Overtime Payments and Record Keeping Violation Claims

#### a. Prompt Payment Claim

Finally, Plaintiff allege Defendant did not timely pay overtime in violation of 29 U.S.C. § 206(b) and 29 CFR § 778.106. (Doc. 223 at ¶39.1). As a result of these later-made payments, the earning statements the Plaintiffs received are incorrect. (*Id.* at ¶18.18). Specifically, Plaintiffs allege "[t]he "trued up" payments made to Plaintiffs and all other similarly situated employees in the Collective [constitute] overtime payments that were not timely paid in violation of 29 U.S.C. § 206(b) and 29 CFR § 778.106." (*Id.* at ¶49.1). Plaintiffs allege Defendant recalculates overtime pay due on a monthly basis and this calculation process is referred to as "truing up" or, once completed, the "true up." (*Id.* at ¶18.14). The "true up" is a onetime payment, included in the first paycheck of the month, comprised of any additional amounts of overtime pay that might be due from previous pay periods where Plaintiffs worked a "step up rate." (*Id.* at ¶18.14). The TAC provides examples. (*Id.* at ¶18.15) ("[A]n employee who worked July 29, 2018 – August 25, 2018 who was determined by Defendant to be entitled to additional pay for overtime from the 'truing up' process would receive that additional amount September 14, 2018 . . .").

In addition, Plaintiffs' allegations include Defendant's corporate representative's testimony that the earning statements (pay stubs) Plaintiffs receive contain no information about how much the "true up" payment may be, for how many hours, or at what rate or pay. (*Id.* at ¶18.16). As such, Plaintiffs allege "on a regular and recurring basis, the Earnings Statements employees receive and the Pay Summary data records Defendant maintains inaccurately document overtime rates of pay, inaccurately state the hours employees work for which employees are paid, and inaccurately state hourly rates of pay." (*Id.* at ¶¶18.17-18.18).

The Code of Federal Regulations pertaining to the timeliness of overtime payments reads as follows:

> There is no requirement in the Act that overtime compensation be paid weekly. The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends. When the correct amount of overtime compensation cannot be determined until some time after the regular pay period, however, the requirements of the Act will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable. Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made.

29 CFR § 778.106.

The Eleventh Circuit has determined that wages paid ten days after the end of the pay period is not an unreasonable delay. *Arroyave v. Rossi*, 296 F. App'x. 835, 837 (11th Cir. 2008) (declining to adopt a similar standard as the Second, Third, Fifth, Seventh, Ninth and Tenth Circuits where overtime wages must be paid on the regular payment date). *See also Benavides v. Miami Atlanta Airfreight*, 322 F. App'x. 746 (11th Cir. 2009) (payments made 7 or 8 days in arrears not unreasonable or untimely); *Chappel v. Boss Rain Forest Pet Resort, Inc.,* 2018 U.S. Dist. LEXIS 44517, *18-19 (S.D. Fla. March 15, 2018) (finding plaintiff cannot prevail on a claim of late pay where he cited no cases holding that checks routinely received 6 to 8 days, and even 17 days, from the last day of the workweek actionable under the FLSA).  However, at least one court has found overtime "adjustment payments" made 30 days late, pursuant to a company policy, may violate both the FLSA's prompt payment requirement and the "'general rule' that 'overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends.'" *See Powers v. Centennial Communs. Corp.*, 679 F. Supp. 2d 918,

923 (N.D. Ind. December 14, 2019) (authorizing notice to the putative collective for the FLSA claim based upon untimely overtime adjustment payments) (citing 29 C.F.R. § 778.106).

Here, Plaintiffs allege the "true up" process caused a delay of 30 days or more from the date the overtime is earned until its paid.  (Doc. 223 ¶18.15).  The Court finds Plaintiffs sufficiently allege the time Defendant takes to compute the "correct amount of overtime compensation" is "longer than is reasonably necessary," in violation of 29 CFR § 778.106.

### b.  Record Keeping Violation

Plaintiffs allege the "true up" process results in a record keeping violation.  "The FLSA requires covered employers to maintain certain employee records, including records of their employees' wages paid and hours worked. 29 U.S.C. § 211(c); *see also* 29 C.F.R. § 516.2 (listing records and information employers must keep)."  *Taylor v. C&L Towing & Transp., L.L.C.*, 2019 U.S. Dist. LEXIS 77793 at *18 (M.D. Fla. April 23, 2019).  "Indeed, '[i]t is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment.'"  *Medrano v. Inv. Emporium LLC*, 672 F. App'x. 944, 947 (11th Cir. 2016) (citing *Allen*, 495 F.3d at 1315).  The Code of Federal Regulations requires an FLSA employer to keep records identifying, among other things, the hours worked each work day and total for each week, total straight time and per day and week and total overtime, wages and date of payment and pay period.  29 CFR § 516.2; *see also Anton*, 922 F.3d at 1271 (finding the FSLSA requires an employer to keep records that show how many hours an employee worked in a workweek) (referencing 29 C.F.R. § 516.2(a)(7)).  In *Scalia v. World Marble & Granite Corp.*, the Massachusetts District Court granted summary judgment for plaintiff on the record keeping claims where defendant did not dispute that they failed to keep records and conceded the

methods used "might not have fully complied technically" with the FLSA record keeping requirements.  2021 U.S. Dist. LEXIS 113797 at *21-22 (D. Mass. June 17, 2021).

First, Plaintiffs allege that Defendant is the type of employer, which is required, pursuant to 29 C.F.R. 516.2 to maintain records.   Next, Plaintiffs allege Defendant's corporate representative testified that the "earning statements provided to the employees do not identify the amount of 'step up rates' of pay."  (Doc. 223 at ¶¶18.16-17).  Likewise, Plaintiffs allege "[n]either the Earnings Statements nor the Pay Summary records identify amounts paid pursuant to 'true up' calculations or the basis for such amounts." (Doc. 223 at ¶18.18).  As a result, Plaintiffs allege Defendant's records inaccurately document overtime rates of pay. (*Id*. at ¶18.17).  Put more succinctly, Plaintiffs allege Defendant's records are inaccurate and Defendant admits it.  Plaintiffs have alleged sufficient facts to state a violation of an FLSA employer's record keeping obligation under 29 CFR § 516.2.

### C.    FACTS SUPPORTING LIABILITY UNDER ALABAMA COMMON LAW

In addition to the FLSA claims, Plaintiffs assert a common law claim, arising under Alabama law.  Relying on the theories of quantum merit and/or unjust enrichment, Plaintiffs seek to recover wages for when they were clocked in and available to work, but were not compensated, for work performed up to 40 hours per week.  (Doc. 223 at ¶42).  Within FLSA jurisprudence a claim for work not compensated less than forty hours per workweek, is often called a "gap time" claim or a "pure gap time claim."  *See Cooley v. HMR of Ala., Inc.,* 259 F. Supp. 3d 1312, 1317 (N.D. Ala. 2017) ("They refer to this as a 'gap time' claim.").  "'In the wage and hour world, ["gap time" is] time between scheduled hours and overtime hours.'"  *Cooley*, 259 F.

Supp. 3d at 1317 (citing *Thrower v. Peach Cty., Georgia, Bd. of Educ.*, 2010 U.S. Dist. LEXIS 116401 at *4 (M.D. Ga. Nov. 2, 2010)).

The Eleventh Circuit has not had the opportunity to consider whether the FLSA covers either a "pure gap time" or an "overtime gap" claim.  In *Cooley*, the court determined the FLSA does not provide a cause of action for a gap time claim and allowed the plaintiffs' common law claim to proceed, declining to agree with defendant's argument that it was preempted by the FLSA.  *Id*. at 1317-1318. (outlining and relying on cases from the Second, Third and Fourth Circuits to reach this conclusion, as well as district court cases in the Eleventh Circuit.).  Like the Eleventh Circuit, the Ninth Circuit has not yet "considered whether gap-time claims are cognizable under the FLSA, but the majority position is that gap-time claims are not cognizable."  *See Woodburn v. City of Henderson*, 2021 U.S. Dist. LEXIS 228827 at *13 (D.C. Nev. November 29, 2021); *but see Lamon v. Shawnee*, 754 F. Supp. 1518, 1526 (D.C. Kan. 1991), aff'd by *Lamon v. Shawnee*, 972 F.2d 1145, 1155 (10th Cir. 1992) (finding, while there is no "express requirement" under the FLSA plaintiffs be paid their regular rate for gap time, it is "implicit in the framework of the FLSA").

This Court joins other district courts in this Circuit in following the majority position that gap-time claims are not cognizable under the FLSA.   For Plaintiffs to recover wages for uncompensated time worked in weeks where the hours worked was less than forty hours, their claims must proceed under Alabama common law.  *See Jernigan v. 1st Stop Recovery, Inc.*, 2017 U.S. Dist. LEXIS 136499 at *5 (M.D. Fla. August 25, 2017) ("Because there is otherwise no adequate remedy at law under the FLSA for a ['gap time'] claim, equitable relief may be pursued.") (citing *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1518 (11th Cir. 1994); *see also Carter v. Jackson-Madison County Hosp. Dist.,* 2011 U.S. Dist. LEXIS 35163 at *25

(W.D. Tenn. March 31, 2011) (allowing plaintiff's unjust enrichment claim to move forward at the pleading stage where she seeks to recover compensation for meal periods during weeks where she worked less than forty hours).

"'The doctrine of unjust enrichment is an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another.'" *Pentagon Fed. Credit Union v. McMahan*, 2021 Ala. LEXIS 60 at *8-9 (Ala. June 25, 2021) (quoting *Avis Rent A Car Sys., Inc. v. Heilman,* 876 So. 2d 1111, 1123 (Ala. 2003) (internal citations omitted). "Whether it applies in any given case 'depends on the particular facts and circumstances' of that case." *Id*. (quoting *Mantiply v. Mantiply*, 951 So. 2d 638, 655 (Ala. 2006)).  In order to prevail on a claim of unjust enrichment under Alabama common law, "'a plaintiff must show that (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation.'"  *Jones v. Scott Davis Chip Mill*, 2017 U.S. Dist. LEXIS 183106 at *58-59 (N.D. Ala. November 6, 2017) (quoting *Portofino Seaport Vill., LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008)).

Next, plaintiff must show retention of the benefit would be unjust.  "'One is unjustly enriched if his retention of a benefit would be unjust.'"  *Matador Holdings, Inc. v. HoPo Realty Invs., L.L.C.*, 77 So. 3d 139, 145 (Ala. 2011) (quoting *Jordan v. Mitchell*, 705 So. 2d 453, 458 (Ala. Civ. App. 1997) (citing Restatement of Restitution: Quasi Contracts and Constructive Trusts, § 1, Comment (1937)).  "Retention of a benefit is unjust if (1) the donor of the benefit . . . acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit . . . engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship."  *Jones*, 2017 U.S. Dist. LEXIS 183106 at *58-59 (finding "In the absence of mistake or misreliance

by the donor, or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been unjustly enriched.") (citing *Jordan*, 705 So. 2d at 458 (internal citations omitted)).

Plaintiffs have alleged sufficient facts to state a claim of unjust enrichment.  The basis of Plaintiffs' unjust enrichment claim arises from allegations that Defendant rounded down clocked in time during which Plaintiffs were working, as directed by the Defendant.  (Doc. 223 at ¶43). As a result of Defendant's rounding practices, Plaintiffs allege they were not paid for their work "which enabled Defendant to produce goods which Defendant sold to generate revenue . . .." (Doc. 223 at ¶44).  Next, Plaintiffs allege "Defendant knew that all Plaintiffs performed work between clocking in and clocking out, for which they were not compensated" and "elected to accept the benefits" of this work.  *Id.* at ¶44.  These factual allegations indicate: 1) a benefit was conferred on Defendant by Plaintiffs; 2) Defendant knowingly accepted and retained the benefit; and 3) the benefit was unjust because it was derived from Plaintiffs' uncompensated work as a result of Defendant's violative timekeeping practices.  *See Carter,* 2011 U.S. Dist. LEXIS 35163 at *22. (allowing plaintiffs' unjust enrichment claim to proceed where the "factual allegations evidence a benefit—the work of [p]laintiff and other employees during meal breaks—conferred on the defendant."). Given these assertions, Plaintiffs have sufficiently alleged a claim for unjust enrichment.

## III.   CONCLUSION

For the foregoing reasons, and those set out in the Court's November 18, 2021 Order, the Court finds Plaintiffs' well-pleaded allegations in the TAC state claims under the FLSA and Alabama common law.

The Court ordered the parties on December 15 to compile preliminary damage calculations for the first thirty Plaintiffs.  The Court sets a hearing at 1:00 p.m. on February 25, 2022, to discuss the parties' preliminary calculation of damages and any objections and responses thereto as ordered on December 15.  At the hearing, the parties will be expected to discuss their position on damages consistent with this Order and the November 18, 2021, Order.

**DONE and ORDERED** this 17th day of February, 2022.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE