IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM HEATH HORNADY, CHRISTOPHER MILLER, and TAKENDRIC STEWART, etc.,<br><br>Plaintiffs,<br><br>-vs-<br><br>OUTOKUMPU STAINLESS USA, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>) CASE NO.: 18-cv- 317-JB-N<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Plaintiffs' Overview of Damages Methodology

On February 23, 2022, the Court ordered Plaintiffs to file the Damages Calculations it had prepared for 30 Plaintiffs and an overview explaining how the damages were calculated. (Doc. 355) This overview, and that methodology, are similar to the damages discussion Plaintiffs presented in their partial summary judgment motion filed September 23, 2020. (Doc. 245, PageID.3050-3051, Doc. 246, PageId. 3076-3077, 3081-3084) For purposes of discussion and illustration Plaintiffs will use the report for Rosa Adams. (Doc. 356-1) Plaintiffs will separately file a comprehensive response to Defendant's filed objections, but this submission will necessarily touch on some of those items.

First, the Court can disregard the "Wks. Under 40 hrs. Min Wage Total" numbers on the first page of the report. Those calculations are mooted by the Court's recent order that Plaintiffs can proceed with a common law unjust enrichment claim rather than a "gap time" FLSA claim. (Doc. 351) The "Wks Under 40hrs Regular Rate Total" shows the common law claim total.

Second, the Court should understand that the reason these calculations end in September, 2021 is because when they were prepared the Plaintiffs did not have data from ADP for the last quarter of 2021.  Plaintiffs have that data now, and when the Court assigns an end date for their damages the Plaintiffs can update calculations.  Potential end dates that may make sense ate Saturday November 13, 2021 or Saturday November 27, 2021.  Both are the end of the second Sunday - Saturday workweek encompassed by the paychecks on November 19, 2021 and December 3, 2021 which align with the Court's November 17, 2021 Order.  Alternatively, the similar date that correlates with any future ruling on motions to reconsider (due March 10, 2022) might also be appropriate. (See Doc. 346, PageID.4726 for cited deadline).

The following discussion tracks the order in which information is presented in the reports.

<u>Bonuses Apportioned Section</u>.

After the summary page(s) each report begins with a Bonuses Apportioned section.  Using Ms. Adams as an example, from 12:00:01 A.M.[1] on October 1, 2015 - 11:59:59 P.M on October 31, 2015 she was clocked in for 10,112 minutes (or approximately 168.53 hours).  (See Doc. 359-1, PageID.5572 for excerpts from daily minute totals with Daylight Savings Time adjustments).  The bonus she was paid on or about November 30, 2015 (which was earned during October, 2015) was $1,140.86.  The "Hourly Rate" of $6.77 reflects the bonus she earned divided by the hours she worked during the month she earned it.  The variations in the monthly bonus amounts (and to a lesser extent variations in minutes worked each month) lead to variations in the apportioned hourly rate.  That hourly rate amount will be incorporated later into the overtime pay calculations.

---

[1] Plaintiffs' calculations are actually infinitesimally more precise because they typically start / stop at midnight rather than one second before or after.  But, because a presentation that uses 12:00:00 A.M. / P.M. designations is sometimes confusing, Plaintiffs are shaving (or adding) a second in this discussion for clarity.

Weeks Under 40 Hours.

The next section is captioned "Weeks Under 40 Hours." For employees employed both before and after January 27, 2019 there are separate sections for each time period.[2] Until January 27, 2019 the "Pay Week" column reflects Monday - Sunday dates. Starting January 27, 2019 that column reflects Sunday - Saturday dates. For a Monday - Sunday workweek, the "Clocked Min" column is the total number of minutes Ms. Adams was clocked in starting at 12:00:01 A.M. Monday and ending at 11:59:59 P.M. Sunday. For the Sunday - Saturday workweeks after January 27, 2019 that column shows the total minutes clocked in from 12:00:01 A.M. Sunday to 11:59:59 P.M. Saturday.[3]

The "Shift Min" column reflects the actual length of time the employee was paid for shifts during the week. It is almost always a round number (typically a multiple of 60 minutes). Results like 1800 minutes correspond to 2.5 12 hour shifts and are common because a 12 hour shift will cross over the midnight start / end of a week leaving 360 minutes in each of two weeks. Very occasionally, a ghost in the machine leads to a minute or two variation. To some extent, however, that column reflects an assumption that OTK's automated rounding process was not manually over-ridden. The Court may recall that for the period after August 13, 2017 OTK has green / red colorized documents which are supposed to show the amount of time OTK both authorized and

---

[2] Employees who were only employed before January 27, 2019 or were only employed after January 27, 2019 only have one section within the Weeks Under 40 Hours calculations.

[3] A weekly minutes / hours quantification is run at an early stage in the calculations to identify which weeks an employee was clocked in for less than 40 hours and which weeks an employee was clocked in for more than 40 hours. The weeks in which that time exceeds 40 hours are covered in the later "Weeks Over 40 Hours" section of the reports which are also split into sub-sections before / after January 27, 2019.

paid for when its standard automated rounding was manually over-ridden. No such documents were ever produced for the period before August 13, 2017. For the period after August 13, 2017 OTK only provided those documents for ten employees. None of those employees are in the first 30 alphabetically. When those employees' unjust enrichment damages are calculated the "Shift Min" column will include any additional time that OTK documented it approved and paid for.

For the vast majority of Plaintiffs after August 13, 2017 and for all the Plaintiffs before August 13, 2017 the "Shift Min." column assumes that the automatic rounding was not manually over-ridden and that the clocked in time that exceeds a round number of hours (like 12) was not paid for. In the absence of contrary red / green records showing what was both authorized and paid for the Plaintiffs assume that if an employee was clocked in for 12 hours and 6 minutes (which is common) or 12 hours and 32 minutes (also common), or even 12 hours and 58 minutes (very uncommon) that the employee was paid for 12 hours. And, similarly, if the employee's clocked time fell between 10:01 and 10:59 hours (which is uncommon) it was assumed absent other information that the employee was paid for 10 hours.[4]

There is an exception that runs in the other direction. Usually, when employees were called in and worked less than 4 hours they were paid for 4 hours. Plaintiffs' calculations assume that unless OTK documented a lesser amount, any shifts with less than 240 minutes clocked in were paid for 4 hours. If hypothetically an employee was clocked in for 25 hours and 40 minutes in a week because she worked 2 full 12 hour shifts with 5 minutes rounded each shift, and also got called in for another shift but only stayed 90 minutes (paid for 4 hours) there will be no time

---

[4] This matters for the common law damages which begin with a quantification of unpaid **time**. Because the overtime pay calculations compare the amount of overtime pay **in dollars** that each Plaintiff should have been paid each week to the amount of overtime pay **in dollars** OTK has shown it paid for the same week, this assumption about how much **time** was rounded is not part of the overtime pay damages calculations.

reflected in the unjust enrichment analysis for that week. The 10 minutes that were rounded are less than the 2.5 hours that were paid in addition to the 90 minutes. Plaintiffs have not gotten bogged down about whether they should also get paid for the rounded minutes in those isolated weeks.

Subtracting "Shift Min" from "Clocked Min" results in "Unpaid Min." The "Blended Pay Rate" column reflects the employee's pay rate for each shift (including night shift premiums and step up rates where available or when estimated based on the formulas OTK previously suggested). As the Court will see, in the absence of any step up rates, the Blended Pay Rates tend to go back and forth in $.50 increments as Ms. Adams went from day shift to night shift. The column also shows occasional raises (such as at the beginning of January, 2018).

The Court can disregard the "Min. Wage ($7.25)" column which would have applied to an FLSA gap time claim.

The weekly unjust enrichment damages are in the column captioned "Regular Rate w/o Bonus" because they reflect damages at regular rates, and do not (and should not) include any consideration of the bonuses that were paid. Unpaid Minutes are multiplied by the Blended Pay Rate to reach that weekly result. For the first entry for Ms. Adams 76 minutes = 1.26 hours. 1.2667 X $22.12 = $28.02.[5]

Very technically, each week's calculations of this common law claim are a little bit off, but those variations cancel each other out. The calculation assumes, for example, that the time Ms. Adams had rounded for the week of July 27, 2015 - August 2, 2015 (when she worked night shift)

---

[5] The results vary by a penny or two depending on how many decimal points are used converting Unpaid Minutes to Unpaid Hours. Embedded in the formulaic calculations is a conversion of the Unpaid Minutes to hours. So, 76 minutes =1.2667 hours. At that level of precision the total is $28.02. If, hypothetically, 76 minutes were rounded to 1.26 or 1.27 the total changes by a penny or two.

should be compensated at night shift rates ($22.12). That rounded time would actually have been worked during "day shift" hours because it was time she was clocked in before 6:00 p.m. or after 6:00 a.m. An argument could be made that such time should be compensated at a rate that is $.50 lower. But the reverse is true for weeks like August 17, 2015 - August 23, 2015 when she worked day shifts (at $21.62 an hour) but the rounded time would have fallen during night shift hours ($22.12 an hour) and Plaintiffs arguably should use the higher rate. Because night shift / day shifts tend to be evenly split the effects cancel each other out.[6]

Weeks Over 40 Hours

Like the weeks under 40 hours, this section is also split into different sections for before / after January 27, 2019. The formatting is a little different. The column headers are admittedly clunky. The "Adjusted for Trued Up Checks" column is discussed below. It reflects the adjustment that has been made to address OTK's inability to quantify how much of the overtime pay designated on the first paycheck of each month was properly attributed to the two weeks covered by that paycheck rather than to "trued up" amounts that should have been paid in an earlier pay period.

The first two columns show the start and end date of each week. The "Pay Day" column corresponds to the Friday paycheck for which overtime pay was considered.[7]

---

[6] An alternative would be to use a "Blended Pay Rate" that subtracted $.25 from the weeks in which night shift work was primarily performed but added $.25 to the weeks in which day shift rates were primarily performed. The results might be minimally different, but it is hard to see how that would ultimately be more or less accurate.

[7] Sometimes (typically around holidays) ADP and OTK's records show pay dates that are a day off the usual schedule. As a result, some of these "Pay Days" have been adjusted by a day so that the computer program "reads" them correctly instead of "assuming" they are atypical bi-weekly checks or monthly bonus payments.

The 4th column "Adjusted Pay Rate w/ Bonus" column reflects the same sort of weekly calculation of daily / nightly shift rates (including actual and formulaically assumed step-up rates) that is in the Blended Pay Rate column for the Weeks Under 40 Hours analysis. In this calculation the apportioned bonus amount from the "Bonuses Apportioned" section has been added. As an example, for Ms. Adams the apportioned bonus for September, 2015 is $4.37 an hour. (Doc. 356-1, PageId.4807) As shown most clearly in the Under 40 Hours calculations, her day rate was $21.62 and her night rate was $22.12. (Doc. 356-1, PageID.4813) In the Weeks Over 40 Hours section the "Adjusted Pay Rate w/ Bonus" for September 7 - September 13, 2015 is $25.99. (Doc. 356-1 PageID.4826) She worked day shift that week and $21.62 + $4.37 = $25.99.

Of course, some weeks cross over the end of a month. A good example from the Over 40 Hours calculations for Ms. Adams is June 27, 2016 - July 3, 2016. (Doc. 356-1, PageID.4826) The "Adjusted Rate w/ Bonus" for the week is $26.98 because the Apportioned Bonus for June, 2016 is $5.83 an hour, and the Apportioned Bonus for July, 2016 is $4.22 an hour. During that week she worked five night shifts of 12 hours (plus rounding) on June 27-28 and July 1-3.

June 27 - 28: ($22.12 + $5.83) = $27.95. 24 hours X $27.95 = $670.80.

July 1-3: ($22.12 + $4.22) = $26.34. 36 hours X 26.34 = $948.24.

$670.80 + $948.24 = $1,619.04.

**$1,619.04 / 60 hours = $26.98**.

As shown, the methodology Plaintiffs use apportions the bonus that was (in part) earned June 27-28, and the different bonus earned (in part) July 1-3 into those parts of a single workweek that starts in June and ends in July. The Adjusted Pay Rate w/ Bonus amount Plaintiffs use as a Regular Rate for that week reflects a weighted average consistent with the time (within that week) she worked in each month.

Because of how OTK identified what was (and was not) relevant during the first couple years of this litigation, items like "Holiday Pay" or "Vacation Pay" are completely disregarded. However, this cancels out without any detriment to OTK or Plaintiffs. If, for example, OTK recorded 12 hours of "Holiday Pay" in addition to 12 hours of actual work, Plaintiffs have not double-counted the time worked. They have also not counted into the "regular rates" any holiday pay premium. Nor have they counted (because OTK did not separately identify it) whatever amounts OTK may have designated as "Holiday" overtime pay. All of that is equally true for "Vacation pay." The net result (consistent with 29 U.S.C. § 207(e),(h) is that the amounts of money Plaintiffs calculate they were entitled to each week for overtime are not increased by any such payments. The amounts of time Plaintiffs calculate they were entitled to be paid each week are also not increased by counting any time that was not actually worked. Correspondingly the "premium" amounts of overtime pay or vacation pay are also not counted.

After the Adjusted Pay Rate w/ Bonus Column is a "Weekly OT Hours Worked (Clocked In)" column. (The 5th column) It is exactly like the "Clocked Minutes" calculation for weeks under 40 hours, except it is shown in overtime hours rather than total minutes. To illustrate, adding up all the time Ms. Adams was clocked in from 12:00:01 A.M. September 7, 2015 - 11:59:59 P.M. September 13, 2015 comes to 50:06 hours (or 10:06 overtime hours). (Doc. 356-1, PageID.4825)

Using the same week, 10:06 hours = 10.1 hours. 10.1 X $25.99 X 1.5 = $393.75. The "OT Due Plaintiff" column shows $393.80 because the $25.99 rate reflects a fraction of a penny rounded up or down.

Next, Plaintiffs import from OTK's records an amount in the "OT Paid - OTK Claims" column. (The 6th column) OTK / ADP produced records of overtime payments in two categories (reflecting day shift and night shift) which OTK called "Overtime" and "SHO-Shift OT Hr." This

can be seen on Doc. 356-4, PageID.4846)  The "OT Paid - OTK Claims" column reflects both categories of overtime payments.  Often, however, in any two week paycheck only one category of overtime was paid.

To illustrate, consider the Weeks Over 40 Hours entry for September 7 - 13, 2015 which aligns with the September 18, 2015 Pay Day.  (Doc. 356-1, PageId.4825)  The paycheck Ms. Adams received September 18, 2015 identified $293.14 in overtime pay.  (Doc. 356-4, PageID. 4846)  She only worked overtime in one of the two weeks that aligns with the September 18, 2015 paycheck.  That week was September 7 - 13, 2015.  Plaintiffs calculate she should have been paid $393.80 for that week.  Even though they cannot tell exactly what weekly time frame is supposed to coincide with the $293.14 overtime pay that OTK documented the Plaintiffs have applied the full amount of that $2293.14 payment against $393.80 leaving $101.66 as an OT Underpayment.

The last column "OT Damages" simply adds equal liquidated damages.

Of course, sometimes some Plaintiffs work overtime in both weeks aligned with a pay period.  Again, Plaintiffs approach probably under-estimates damages.  An example for Ms. Adams can be found for the weeks March 10, 2019 - March 16, 2019 and then March 17, 2019 - March 23, 2019. (Doc. 356-1, PageID.4831)   In the first week she was clocked in for 41:21 hours (1:21 OT hours) and in the second week she was clocked in for 48:24 hours (8:24 OT hours). Plaintiffs calculate she should have been paid $65.21 for overtime in the first week and $399.42 in the second week. OTK documented a total of $299.54 in overtime pay on the paycheck of March 29, 2019. (Doc. 356-4, PageId.4848)  Plaintiffs have no way to know how to allocate that amount among separate weeks, but they have given OTK the advantage of that uncertainty.  In the first week $299.54 exceeds $65.21 by $234.33 and she is not owed any overtime pay.  In the next week she was entitled to be paid $399.42 and there is $234.33 "left over" in overtime pay that was not

credited for the first week. $399.42 - $234.33 = $165.09 and $165.09 is the resulting underpayment.

If over an entire two week period, the amount of overtime pay OTK identified exceeds the amount of overtime pay Plaintiffs calculate was due over the two weeks, there is no underpayment - even though the information ADP produced after Plaintiffs last amended the Complaint suggests that the formulas OTK / ADP used combined time and / or pay over two week periods to calculate overtime pay for each week. If so, the inevitable result is that there are as-yet-unidentified weekly underpayments embedded in the bi-weekly numbers which are not reflected in the damages calculations. (That practice is also not reflected in the Third Amended Complaint. See April 13, 2021 transcript at Doc. 318, page 26).

What is included in these calculations is an effort by Plaintiffs to account for the unlawful pay practice Ms. Pledger described about trued-up payments. She testified that every month OTK calculated amounts of overtime pay it should have paid in earlier paychecks but did not. She testified that OTK added those amounts (calculated by unknown formula) into the first paycheck of every calendar month. As Plaintiffs previously briefed, and will also address in response to OTK's objections, the result is that OTK cannot show how much of what it designated as overtime pay on the first paychecks of each month was actually for time worked in that two week period.

Because of that, Plaintiffs have no basis to identify the amount of overtime that OTK actually paid for work performed in the two weeks that are associated with the first paycheck of each month. Therefore, for the entries associated with Pay Days (as examples November 13, 2015, December 11, 2015, January 8, 2016, February 5, 2016) the Court will see that $0.00 is in the

column for "OT Paid - OTK Claims"  rather than whatever inaccurate amounts of overtime pay may have been designated on the actual Earnings Statements.[8]

## Conclusion

Plaintiffs understand that these calculations can be tedious to study, and the appreciate the Court's continued consideration of the issues in this case.

Respectfully submitted,

**HOLSTON, VAUGHAN & ROSENTHAL, LLC.**

By: /s/ Ian D. Rosenthal
Ian D. Rosenthal – ROSEI6905
Attorney for Plaintiffs
P.O. Box 195
Mobile, AL 36601
(251) 432-8883 (office)
(251) 432-8884 (fax)
Email:  idr@holstonvaughan.com

**SIMS LAW FIRM, LLC.**

Patrick H. Sims – SIMSP8145
Attorney for Plaintiffs
P.O. Box 7112
Mobile, AL 36670
(251) 490-9424
Email: patrick@simslawfirm.net

**CERTIFICATE OF SERVICE**

---

[8] Plaintiffs actually made a mistake in OTK's favor on Ms. Adams' report by leaving the $668.60 amount OTK designated as overtime pay on the paycheck dated October 2, 2015 instead of replacing it with $0.00.  The resulting underpayment is therefore stated to be $484.26 rather than $1.152.86.

      I hereby certify that I have on this the 24th day of February, 2022, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

**William H. Wasden, Esq**.
Burr & Forman, LLP
11 North Water Street – Suite 22200
Mobile, Alabama 36602
E-Mail: bwasden@burr.com

**Devin C. Dolive, Esq.**
Burr & Forman, LLP
420 North 20th Street – Suite 3400
Birmingham, Alabama 32503
E-Mail:  ddolive@burr.com

**Ronald W. Flowers, Jr., Esq.**
Burr & Forman, LLP
420 North 20th Street – Suite 3400
Birmingham, Alabama 32503
E-Mail:  rflowers@burr.com

      /s/ Ian Rosenthal
      OF COUNSEL