IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM HEATH HORNADY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:18-00317-JB-N |
| | ) | |
| OUTOKUMPU STAINLESS USA, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

On November 18, 2021, this Court entered a default judgment on liability (hereinafter, the "November 18 Order") as a sanction against Defendant Outokumpu Stainless USA, LLC ("Defendant"). (*See* Doc. 344). Defendant now moves this Court, before entry of the final judgment awarding damages, to reconsider the default judgment on liability, as well as the Court's determination in a supplemental order (Doc. 351 (hereinafter, the "February 17 Order")) Defendant admitted the well-pleaded allegations of Plaintiffs' Third Amended Complaint. (*See* Doc. 369). The motion has been fully briefed and is now ready for this Court's consideration. (*See* Plaintiffs' Response in Opposition (Doc. 393), Defendant's Additional Evidentiary Submission (Doc. 396), Defendant's Reply (Doc. 397), Plaintiffs' Limited Sur-Reply (Doc. 401), and Defendant's Sur-Sur Reply (Doc. 405)). For the reasons set out more thoroughly below, the Court **DENIES** the Defendant's Motion to Reconsider and Set Aside the Default Judgment rendered against it on November 18, 2021.

I.    **PROCEDURAL HISTORY**

Plaintiffs filed this FLSA action on July 16, 2018 (Doc. 1) and almost immediately thereafter amended the complaint to allege a collective action (Doc. 5).  Plaintiffs seek relief under the Fair Labor Standards Act of 1938 ("FLSA") 29 U.S.C. § 201, et seq. and the common law of Alabama for 1) the failure to pay overtime correctly and timely; and, 2) failing to pay for all time clocked in.  (Doc. 223 (the "Third Amended Complaint" or "TAC")).  More specifically, Plaintiffs allege Defendant failed to pay overtime correctly, at the correct rate or amount, timely and for all time worked.  Plaintiffs' claims arise from alleged violations of four separate regulations as follows: (a) a claim that Defendant willfully violated the FLSA by adopting a rounding policy pursuant to which Plaintiffs' and similarly situated employees' time worked was always rounded down in favor of the employer, in violation of 29 C.F.R. § 785.48; (b) a claim that Defendant willfully violated the FLSA by failing to calculate wages according to a fixed, recurring 168-hour period/workweek, in violation of 29 C.F.R. §§ 778.104-105; (c) a claim that Defendant willfully violated the FLSA by failing to recalculate Plaintiffs' regular hourly rate of pay for the purposes of calculating the overtime rate, in violation of 29 U.S.C. § 207(e); and, (d) a claim that Defendant willfully violated the FLSA by failing to pay overtime on the regular payment date or to timely pay overtime, in violation of 29 U.S.C. § 206(b).  (Doc. 344).  Finally, Plaintiffs allege Defendant violated the FLSA by failing to keep accurate wage records pursuant to 29 C.F.R. § 516.2.  (Doc. 223).  Plaintiffs aver Defendant accomplished these alleged violations through the employment of timekeeping policies and pay practices common to all Plaintiffs.  (*Id*.).

This action is one of three pending before this Court concerning Defendant's timekeeping and pay practices.  The parties are well-versed in the facts and the Court need not repeat them

here.  Similarly, the procedural history is set out extensively in the Court's ninety-four page November 18 Order.  (Doc. 344).  *See Hornady v. Outokumpu Stainless United States*, 2021 U.S. Dist. LEXIS 222816, __ F. Supp. 3d __ (S.D. Ala. Nov. 18, 2021).  Given the detail therein, the Court will only recap portions of this extensive history, as well as outline the relevant, and more recent, procedural history, here.

In the November 18 Order, the Court determined case-ending sanctions were appropriate because "there is clear and convincing evidence Defendant acted in pervasive bad faith throughout the discovery process of this entire case, pending since July 2018."  (Doc. 344).

> First, the Court finds clear and convincing evidence Defendant acted in bad faith when it violated numerous discovery orders and failed its obligations in every respect to produce accurate and complete time and pay records.  Second, the Court finds clear and convincing evidence Defendant acted in bad faith when it attempted to foist responsibility for its failures on ADP [Inc. ("ADP")], an attempt based on misrepresentations Defendant continued for ten months.

(*Id.*).  As a result, Defendant "forfeited its opportunity to dispute its liability."  (*Id.*).

Since the entry of the November 18 Order, this Court, heeding the Eleventh Circuit's instruction, has been steering the parties toward the "mathematical calculations" necessary to establish damages.[1]  The November 18 Order informed the parties a hearing would be set to discuss damages.  At that hearing, Defendant raised questions concerning which claims of t

---

[1] These damages will inform the Court's final judgment.  By entering a default judgment on liability, and a final judgment later awarding damages, the Court is following the methodology recognized by the Eleventh Circuit in *Adolph Coors Co. v. Movement Against Racism and The Klan*, 777 F. 2d 1538 (11th Cir. 1985).  In *Adolph Coors*, the Eleventh Circuit upheld a default judgment issued as a sanction for the defendant's response to discovery request was a "flat pretermission of the trial court's orders." *Id.* at 1543.  However, the Eleventh Circuit remanded the trial court's award of $10,001 of damages because the award was entered without any reasonable basis.  The Eleventh Circuit, adopting Fifth Circuit precedent, held "it must be clear from the record that either a hearing was held that meaningfully informed the judgment of the court or that the trial court utilized 'mathematical calculations' and 'detailed affidavits' to determine the amount of damages."  *Id.* at 1544 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854 (5th Cir. 1979) (*per curiam*)).

he TAC are deemed to be accepted as true as a result of the entry of the default judgment on liability.   In response, the Court entered the February 17 Order clarifying the allegations of Plaintiffs' Complaint to be taken as true.  (*See* Doc. 351).  In the meantime, the Court also ordered Plaintiffs to file damage calculations pertaining to the first 30 Plaintiffs by January 15, 2022, which they did.  (Doc. 346).  Defendant responded, objecting to these calculations on February 22, 2022.  (Doc. 354).  At the Court's request, Plaintiffs submitted a "Court Ordered Damages Overview," further explaining the methodology employed to calculate damages on February 24, 2022.  (Doc. 360).  Plaintiffs also replied to Defendant's objections.  (Doc. 362).  Defendant then filed a "Corrected Response and Objections" on March 2, 2022.  (Doc. 363).  The Court took Defendant's objections up in a hearing on March 4, 2022, and issued an order overruling most of Defendant's objections on March 8, 2022.  (Doc. 366).  During the hearing, counsel for Defendant requested leave of Court to submit a Motion to Reconsider the Court's November 18 Order and February 17 Order.   Defendant's request was granted (Doc. 366) and Defendant filed its Motion to Reconsider on March 10, 2022.  (Doc. 369).

Thereafter, this action was set for several unsuccessful settlement conferences.  On June 17, 2022, Plaintiffs filed a "Miscellaneous Submission about Defendant's Pending Motion to Reconsider (Doc. 369)" to question certain factual assertions in Defendant's Motion to Reconsider.  (Doc. 385).  Plaintiffs asked this Court for specific relief, including the withdrawal of the declarations of Defendant's employees, and Defendant to make available all communication with its prior counsel (Littler Mendelson).  (Doc. 385).  In response, this Court entered a briefing schedule on Defendant's Motion to Reconsider.  (Doc. 386).  On July 8, 2022, Defendant filed a "supplemental" declaration of its senior payroll specialist, in response it appears to Plaintiffs

"Miscellaneous Submission."  (Doc. 389).  Plaintiffs filed a Response to the Motion to Reconsider

(Doc. 393) and both parties filed replies and sur-replies.[2]  (*See* Docs. 397, 401, and 405).

**A.    Standard of Review**

Defendant invokes Rules 54 (b) and 55(c) of the Federal Rules of Civil Procedure asking

this Court to reconsider its November 18 and February 17 Orders.  (Doc. 369).  Each rule carries

its own standard of review.

**1.    Rule 55(c)**

Under the first part of Rule 55(c), "the court may set aside an entry of default for good

cause." Fed. R. Civ. 55(c).   In determining what constitutes "good cause," "courts have

considered, but are not limited to, factors such as whether the default was willful, whether the

defaulting party would have a meritorious defense, and whether setting aside the default would

result in prejudice to the non-defaulting party."   *See Annon Consulting, Inc. v. Bionitrogen*

*Holdings Corp.*, 650 F. App'x. 729, 732 (11th Cir. May 27, 2016) (citing *Compania Interamericana*

*Export-Import, S.A. v. Compania Dominicana de Aviacon*, 88 F.3d 948, 951 (11th Cir. 1996)).

"Whatever factors are employed, the imperative is that they be regarded simply as a means of

identifying circumstances which warrant the finding of 'good cause' to set aside a default."

*Compania Interamericana*, 88 F.3d at 951; *see also Hinson v. Webster Indus.*, 240 F.R.D. 687, 690

(M.D. Ala. 2007) ("In short, the essence of Rule 55(c) is that an entry of default may be set aside

if the party in default demonstrates 'good cause,' Fed. R. Civ. 55(c), and, as established in this

---

[2] Throughout this same time frame, the parties submitted, at the request of the Court, a "Joint Submission Regarding Damages," which provides final, if not still disputed, damage calculations for each Plaintiff in the Collective according to the formula established as result of the Court's February 17 Order.  (*See* Doc. 306).

circuit, the foregoing factors provide a means to assist the court in ascertaining whether such cause exists.").

### 2.   Rule 54(b)

Under Rule 54(b), a district court retains discretion to revisit any of its interlocutory decisions that "adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties." *See* Fed. R. Civ. P. 54(b).  Generally, reconsideration of an order is available only when the movant presents "evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice*." Scott v. City of Mobile*, 2018 U.S. Dist. LEXIS 36262, * 5 (S.D. Ala. March 6, 2018) (quoting *Summit Medical Center of Alabama, Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003)).  At minimum, a district court may do so for the same reasons it could grant relief under Rule 60(b).  *See QBE Ins. Corp. v. Whispering Pines Cemetery, LLC*, 2014 U.S. Dist. LEXIS 87482, at *6 (S.D. Ala. June 27, 2014).  "A motion to alter or amend a judgment must demonstrate why the court should reconsider its prior decision and 'set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.'"  *Sonnier v. Computer Programs & Sys.*, 168 F. Supp. 2d 1322, 1336 (S.D. Ala. 2001) (quoting *Cover v. Wal-Mart Stores, Inc.,* 148 F.R.D. 294 (M.D. Fla. 1993)).

### 3.   Analysis

The Court entered neither a default nor a final judgment as a sanction for Defendant's discovery misconduct and related misrepresentations.  The Court entered a default judgment as to Defendant's liability, with damages to be assessed at a later date pursuant to Fed. R. Civ. Proc.

55(b)(2)[3], or a nonfinal default judgment.  *See Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 2021 U.S. Dist. LEXIS 16317, *10-11 (N.D. Ala. Jan. 28, 2021) ("The court has imposed default judgment as to liability but not a *final* default judgment awarding damages.").  "The Eleventh Circuit appears to have made a distinction between entering default judgment as to liability and entering final default judgment awarding damages." *Id.* at *11 (comparing *Lowe v. McGraw-Hill Cos.*, 361 F.3d 335, 339-40 (7th Cir. 2004) with *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1265 (11th Cir. 2003); citing *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 935 (11th Cir. 2007) (stating that the "district court entered default judgment against [Defendants] on liability, and set a trial on damages before a jury"); *Adolph Coors,* 777 F. 2d at 1543 ("The only effective remedy was the entry of a default judgment and assessment of damages.")).

Though the Eleventh Circuit has provided some guidance on the procedural use of a nonfinal default judgment, it has not spoken directly as to which standard to apply when reconsidering this type of order.  District courts are divided on the standard of review to apply.  In *Roche*, the district court found the good cause standard under Rule 55(c) did not apply to the "defaulted defendants" motion to reconsider since the court did not enter a "mere default," but a "default judgment." *Roche Diagnostics Corp.,* 2021 U.S. Dist. LEXIS 16317, *9.  ("Here, the court entered default judgment as a sanction; an entry of default was never entered because default is typically used when a party fails to answer or otherwise defend. . . The Defaulted Defendants have failed to do many things, but they have not failed to defend, making a default irrelevant and

---

[3] Federal Rule of Civil Procedure 55(b)(2) provides that "[t]he court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; [or] (B) determine the amount of damages . . .".

improper."). Furthermore, Rule 54(b) was the "more proper standard of review" since the default judgment was interlocutory and did not yet assess damages. *Id. at \*7.*

However, in *Hinson*, another district court determined Rule 55(c)'s "good cause" standard governs the determination of whether to set aside a default judgment which was not final because the court had not yet determined damages. *See Hinson v. Webster Indus.,* 240 F.R.D. at 691-692. In *Hinson*, default was entered pursuant to Rule 55(a) after the defendant was served with plaintiff's complaint but failed to otherwise respond or defend. *Id*. at 689. Thereafter default judgment was entered on liability. *Id*. Prior to the hearing on damages, defendant filed a motion to set aside and vacate entry of the default. *Id*. The defendant argued the good cause standard under Rule 55(c) applied, but plaintiff "urged the court to review under the more stringent excusable neglect standard" found in Rule 60(b) applied. *Id.* at 691-92.

The court observed, as is the case here, "'[t]he importance of distinguishing between an entry of default and a default judgment lies in the standard to be applied in determining whether or not to set aside the default.'" *Hinson,* 240 F.R.D. at 690 (quoting *EEOC v. Mike Smith Pontiac GMC, Inc.,* 896 F.2d 524, 528 (11th Cir. 1990)). The district court relied on *Anheuser Busch* to determine 'good cause' was the appropriate standard. *Id*. at 692. In *Anheuser Busch*, the Eleventh Circuit "opined that the district court could *sua sponte* set aside the default judgment on the issue of liability 'for good cause.'" *Id*. at 691 (quoting *Anheuser-Busch,* 317 F.3d at 1267 (citing Fed. R. Civ. P. 55(c)). "The Eleventh Circuit explained that the default judgment 'entered by the court against [the defendant] was not a final default judgment, as it provided neither relief nor damages.'" *Id.* at 691 (quoting *Anheuser Busch,* 317 F.3d at 1265 (referencing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2692 (3rd ed.

1998) ("a final default judgment is not possible against a party in default until the measure of recovery has been ascertained")).

It is not entirely clear which standard Defendant believes applies.  In its initial Motion, Defendant discusses both the Rule 54(b) and Rule 55(c) standards.  Plaintiffs argue the standards under Rule 54(b) apply, rather than the "liberal" "good cause" standard of Rule 55(c).  (Doc. 393) (*see Compania Interamericana Export-Import, S.A.*, 88 F.3d at 951).   In its Reply, Defendant accuses Plaintiffs of misconstruing the applicable standards, but then attempts to support its own position under the Rule 54(b) standard.  (Doc. 397).

This Court finds itself in precisely the situation the district court contemplated in *Roche*, *supra*.  In *Roche*, the district court found the Rule 55(c) "good cause standard" is not applicable to defendants who have appeared and been sanctioned, as opposed to those who have failed to appear or defend.  *Roche Diagnostics Corp.,* 2021 U.S. Dist. LEXIS 16317, *8-9.  This Court agrees with the *Roche* opinion.  Accordingly, the Court will apply the standards applicable to Rule 54(b) to analyze Defendant's Motion to Reconsider the November 18 and February 17 Orders.  Under this analysis, in order to convince the Court to alter its decision, Defendant must set forth facts, or newly-available evidence, indicating the need to correct clear error or manifest injustice.  In this instance, where the Court specifically found Defendant was acting in bad faith, Defendant would need to set forth newly-available evidence its misconduct was not willful or the Court's determination it acted in bad faith was clear error.[4]  Defendant has not made this showing.

---

[4] Defendant does not argue, nor has there been, any change in controlling law.  Accordingly this factor will be disregarded.

## II.   **DISCUSSION**

### A.   **Defendant's Arguments Pertaining to the November 18 Order**

In both its initial motion, and reply, Defendant contends the Court abused its discretion by imposing "death penalty" sanctions.  (Docs. 369, 397).  Defendant sets forth a number of theories as to why the default judgment should be set aside and how this Court exceeded its discretion both under Rule 37 and the Court's inherent authority.  (Doc. 369).  Defendant contends "such harsh sanctions" were unwarranted because it was not in violation of a discovery order, and if it were, any failure to comply with the Court's Orders can be attributed to its former counsel.  (*Id.*).  Likewise, Defendant posits that any bad faith conduct was solely the fault of its former counsel; and, the Court erred by not finding lesser sanctions would have been sufficient to remedy the effect of the misconduct here.  (*Id.*).  Defendant's argument crystallizes, in its Reply to Plaintiff's Response in Opposition where it applies the Rule 54(b) factors to assert "[b]oth 'the availability of new evidence' and 'the need to correct clear error or manifest injustice' are in play."  (Doc. 397).  Defendant essentially argues: 1) "newly available evidence" demonstrates the Defendant did not have or could not procure the pay records Plaintiffs sought, nor were the records necessary; 2) the November 18 Order is unjust because its former counsel's actions left Defendant without a "meaningful defense" and subject to "astronomical damages;" 3) the Court erred by not assessing lesser sanctions; and 4)  the late production of incomplete time and pay records cures any sanctionable conduct.  (Doc. 397).

The Court finds that the arguments set forth in Defendant's initial Motion, and echoed in its Reply, do not accurately reflect the procedural posture of this action and are based on a

significant misunderstanding of its discovery obligations and failures within this collective action. Defendant's misunderstanding underlies the Court's decision today.

### 1.     The Court Did Not Abuse its Discretion because Lesser Sanctions were Considered (and Employed to No Avail)

Defendant argues the Court abused its discretion by not entering lesser sanctions.  This argument conveniently ignores the fact the November 18 Order modifies and adopts a Report and Recommendation ("R&R"), recommending sanctions against Defendant.  (Doc. 261).  The R&R was entered almost a month after discovery closed and four months before the pretrial conference.  The sanction recommended in the R&R relied in part on the remedial procedure found in *Anderson v. Mt. Clemens Pottery* and instructed Plaintiffs to estimate their unpaid or underpaid work.  (Doc. 261, citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).  Once Plaintiffs establish the amount and extent of their alleged improperly compensated work, the Magistrate Judge recommended, as a sanction under Rule 37(b)(2)(A)(ii), Defendant be prohibited from utilizing any evidence not already produced to challenge Plaintiffs estimations. (Docs.  261, 344).

Accordingly, a lesser sanction was recommended by the Magistrate Judge and considered by this Court:  a mandatory, and unrebuttable, adverse inference instruction to be levied against Defendant.[5]  However, while the R&R was pending adoption, Defendant engaged in additional sanction-worthy behavior.  (*See* Doc. 344).

---

[5] This result seems to be a close cousin to a default on liability.  An argument could be made that the sanctions recommended by the Magistrate Judge ultimately left Defendant "defenseless" and "subject to catastrophic damages," as well.  (Doc. 369). *See, e.g., Morrison v. Veale*, 2017 U.S. Dist. LEXIS 42099, *25-28 (M.D. Ala. 2017) (observing the sanction of an adverse inference instruction effectively terminated plaintiff's FLSA overtime claim and no further analysis is necessary); *see also Thompson v. US Deport of House and Urb. Dev.*, 219 F.R.D. 92, 100 (D. Md. 2003) ("This sanction, however, is not to be given lightly. 'In practice, an adverse inference instruction often ends

The Court's November 18 Order set all this out in considerable detail. (*See* Doc. 344). The Court noted, in the first paragraph of its ninety-four page order, lesser sanctions had been employed previously, to no avail. (*Id.*). Later, the Court dedicated an entire section of its order to a discussion of whether lesser sanctions would suffice at that point. (*See id.*). Thus, contrary to Defendant's assertion, the November 18 Order considered, and rejected, the lesser sanction recommended by the Magistrate Judge, as well as other lesser sanctions, prior to entering the nonfinal default judgment against Defendant. (*Id.*). Defendant has failed to demonstrate where there is any manifest error. The Court need not reconsider this aspect of its decision; however, now that it has, the Court remains convinced of the propriety of its decision.

### 2.   Defendant Violated Numerous Discovery Orders; therefore, the Court correctly Imposed a Default Judgment under Rule 37 and did not Abuse Its Discretion

Defendant's failure to recognize, and accept, the procedural posture of this action brings the Court to the next mistaken theory underpinning the Motion to Reconsider. Incredibly, Defendant appears to believe the Court's November 18 Order was in error because Defendant was not in violation of a discovery order. (Doc. 369 at 38 ("Although OTK has admittedly been the subject of this Court's Orders to produce documents, including pay records, the record now reflects its reasonable belief it had complied with those Orders or else was unable to comply.")).

More specifically, Defendant contends:

The Court entered "death penalty" sanctions against OTK largely because Littler Represented to the Court that (1) OTK had never produced time and pay records to Plaintiffs in discovery and (2) ADP had wholly failed to respond to the OTK subpoena. A review of the communications in this matter show that neither of Littler's representations was accurate. Instead, those communications show that

---

the litigation. . .'") (quoting *Zubulake IV*, 2003 WL 22410619 at *6)). Under this Court's ruling, damages are subject to "mathematical calculations."

> OTK produced pay records (albeit in a less desirable format) to Littler back in 2019. (Ex. G, Pledger Decl. ¶¶ 6-11.)

(Doc. 369 at 34).  Defendant continues:

> Thus, until March 8, 2021, OTK was completely unaware that its production was unsatisfactory to the Plaintiffs or the Court. . .
>
> With no order specifying conduct of OTK, this Court was without the authority to sanction OTK under Rule 37. . . .
>
> Most of the discovery disputes leading to the Court's imposition of sanctions arise from OTK's failure to produce documents showing how it calculated 'true up' payments from 'step up' rates. . . .

(*Id.* at 37, 40 and 43).

All of these statements are incorrect.

As set out in the November 18 Order, Defendant was sanctioned, in part, because it failed to produce complete and accurate sets of three categories of data: pay records, time records and incentive plan data.  (*See* Doc. 344).  The Court identified the time and pay records as "linchpin evidence" Defendant agreed to produce, and was ordered to produce repeatedly.  (*Id*.  ("A detailed review of the record reveals the pay and time records, along with the incentive plan production, were ordered to be produced on twelve (12) separate occasions spanning almost three years.  (*See* Appendix I).  These orders were entered on various motions to compel, motions for sanctions and even stipulated agreements between the parties.  On numerous occasions, Defendant represented, on the record, that it would produce its records.  Despite these orders and Defendant's representations, Defendant never provided complete and accurate pay records, time records or the documents related to the incentive plan.")).  Defendant participated in numerous discovery conferences and hearings leading up to the R & R.  (Doc. 344).  The

suggestion that Defendant was unaware its "production was unsatisfactory to the Court" is simply not credible.

Defendant's misguided argument appears related to its mistaken assertion it did in fact produce pay records with pay rates. (Doc. 369). As discussed, this central failing is identified in the Court's November 18 Order. To promote this erroneous argument, Defendant's initial motion is supported by a declaration from its senior payroll specialist, Melissa Pledger. (Doc. 368-7). In the declaration, Pledger asserts she provided complete pay records, with pay rates throughout spring, 2020: "I compiled three (3) different spreadsheets from ADP's Records for every team member which was requested of me [225]. Each batch of spreadsheets included the following. . . (a) 'baseline rate of pay (without RROP[6] calculations). . ." (*Id*. at 9).

Defendant's Motion to Reconsider pivots around this false, after-the-fact assertion:

[Defendant] provides herewith declarations from Melissa Pledger and Dave Scheid, together with supporting documents, that establish that OTK diligently attempted to comply with Plaintiffs' counsel's endless requests for discovery in this case, producing pay records beyond those normally required in collective actions with representative discovery. These declarations and the supporting documentation establish that *pay and time records were, in fact, produced* during discovery . . .

[Defendant] provided Littler with the requested information and pay records in the format OTK was capable of providing *before* Plaintiffs filed any motions to compel for sanctions. . .

The Court should not have issued "death penalty" sanctions under the discovery rules. . .

---

[6] "RROP" is an acronym for the "regular rate of pay." (*See* Doc. 344 ("In order to determine whether overtime has been paid correctly, the analysis commences with the identification of the employee-plaintiff's "regular rate of pay." An employee-plaintiff's "regular rate" of pay is the "keystone" of Section 7(a) claims.")). ADP also runs a RROP calculation according to its "proprietary RROP formula." Throughout its motion, Defendant's references to "RROP" relate to ADP's proprietary RROP formula. In this Order, when discussing the "regular rate of pay" under the FLSA, the Court will not abbreviate.

It produced pay records in 2019, long before the close of discovery or the March 21, 2021 hearing. (Ex. G, Pledger Decl. ¶¶ 6-11.) The ADP issue resulted from pay records and information not being in the format the Plaintiffs wanted, not from an outright failure to produce the information. . ..

(Doc. 369 at pp. 6, 35, 37, 38 (citing Doc. 368-7, ¶¶ 6-11) (emphasis added)).

The parties later engage in a back and forth on the critical question of whether and why Defendant's declarations are accurate and based on personal knowledge. (Docs. 385 and 389). Plaintiffs asked the Court to require Defendant to withdraw Pledger's declaration. (Doc. 385). Just before Plaintiffs deadline to respond to its Motion, Defendant filed a second declaration acknowledging the first declaration, submitted with its initial Motion was mistaken. (Doc. 389-2 ("having gone back and looked at other emails" . . . "it appears" [that the spreadsheets created in 2020] "most likely would not have included the same 'Pay Rate' column" . . ."I mistakenly assumed". . . "that all of the ADP generated payroll histories also included baseline rates of pay.")).

Notwithstanding Defendant's "corrected" declaration, in their Response, Plaintiffs, again, demonstrate Defendant knew it agreed (and was ordered) to produce pay records, in Excel spreadsheets, with pay rates throughout the pendency of the action. (*Id*. ("These emails show beyond any doubt the Pledger knew the Excel spreadsheet she was preparing had to have pay rates. They show she knew that involving adding them. Instead, in 2020 she added hundreds of columns of extraneous material and included no pay rates as all.")). Plaintiffs point out, again, Defendant's failure to produce complete and accurate pay records led to the Motion for Sanctions. (Doc. 393). Plaintiffs also contend, Defendant's exhibits, along with both the first declaration and the "corrected" declaration, intended to clear up Pledger's "mistaken [assumption]," only serves to reinforce the Court's prior finding of bad faith. (Doc. 393 at 40, 47

("None of the communications OTK chose to produce from Littler instructed Pledger to prepare spreadsheets without pay rates.  They show the opposite.  Littler kept sending her samples she had prepared with pay rates, and Pledger apparently kept creating new spreadsheets without them.")).

It is, indeed, incredulous Defendant advanced the argument it was in compliance with the Court's discovery orders to produce pay records with pay rates, given the procedural history to date and the November 18 Order.  The Court is not mistaken.  Defendant did not produce spreadsheets with pay rates as ordered on numerous occasions throughout this litigation.  (Doc. 344).  Defendant's suggestion that the Court exceeded its discretion by issuing case-ending sanctions under Rule 37 because there had been no violation of a discovery order is without merit.

### 3.   The Court did not Sanction Defendant for its Failure to Provide "ADP's Proprietary RROP" Formula

As discussed, in her second declaration, Pledger acknowledged the pay records produced in Spring 2020 did not contain pay rates.  (Doc. 389-2).  This revelation brings the Court to Defendant's third flawed argument.  In an apparent effort to salvage its Motion to Reconsider, Defendant doubles down on its theory it was sanctioned for the "RROP" information ADP possessed and which was not accessible to Defendant.  (*See* Doc. 369 at 6 ("At the end of the day, the primary 'failing' was [Defendant's] inability to meet the Plaintiffs unrebutted demands for documentation of *adjustment* to what ADP calls the 'RROP' in Excel format, a commodity that [Defendant] had no ability to provide." (citing Doc. 368-7)).  Defendant argues sanctions should be set aside because it *now* has evidence it could never have produced this "RROP in Excel format" without "improved cooperation" from its own payroll provider (which it now has).

Further, Defendant asserts this new evidence indicates this data could not have been gotten without "subpoenas and/or other legal process.".  (*see also* Doc. 397) ("The document that Plaintiffs said they needed—and which underpinned the Court's sanctions—turns out to be data that no employer who uses ADP as a payroll vendor could provide without invoking the legal process against ADP.")).  In response, Plaintiffs point out "there are several things [Defendant] gets wrong in that one sentence."  (Doc. 393).

Defendant relies on the deposition testimony of ADP's Rule 30(b)(6) designee in *Gibson* to assert this theory.  *Bradly Gibson v. Outokumpu Stainless USA, LLC*, No. 1:21-cv-00103-JB-N. Defendant argues this deposition testimony qualifies as newly-available evidence, meriting reconsideration of the Court's sanction order in this action.[7]  Defendant writes:

> ADP's Rule 30(b)(6) designee also testified that ADP's "back end" is proprietary and is not viewable or accessible to ADP clients like OTK. (Ex. J, Raines Dep. (Vol. I) 38:18-39:8.) This "back end" system contains the FLSA guidelines. (Ex. K, Raines Dep. (Vol. II) 97:3-6.)  *ADP does not usually provide proprietary information in response to subpoenas.* (Ex. J, Raines Dep. (Vol. I) 177:20-178:6.).  Further when an ADP client specifies to ADP how the client wants overtime rates calculated, ADP will not tell the client the formulas that ADP is actually using to perform the calculations. Rather, the client would have to "reverse engineer" or "back into" the formulas in order to see how ADP is actually running the calculations. (Id., Raines Dep. (Vol. I) 188:12-190:1.)

(Doc. 397).

The "newly-available evidence" Defendant provides does focus on Defendant's efforts to procure an explanation of the "RROP formula" from ADP; however, Defendant's reliance on the *Gibson* testimony is misplaced.  In June, 2020, Defendant agreed to produce, among other things,

---

[7] Defendant's success in obtaining this information as part of the *Gibson* case undermines its argument here that the evidence is "newly discovered."  Evidence will always be "newly discovered" when it has not been previously sought.

1) separate "native and excel formats data files reflecting pay rates, start date and time, for each shift worked" by each Plaintiff[8] and 2) all documents and data reflecting the amounts, and underlying calculations of any "trued up payments."  (Doc. 212, "June 2020 Stipulated Order"). When it became clear there were questions over the implementation of "true ups," Defendant was ordered to subpoena information from ADP ("whatever documentation") that "explains how the program formulates and calculates pay, including regular rates of pay for varying rates . . .." (Doc. 238-1).  In addition, Defendant requested from ADP the excel data files reflecting pay rates for each shift worked for the same Plaintiffs identified in the June, 2020 Stipulated Order, having never produced this information itself.  (*Id.*).  Defendant produced neither within the discovery period; nor did Defendant produce other required documents.  (Doc. 344).  As set out in the November 18 Order, the explanation of how ADP "formulates and calculates pay, including regular rates of pay for varying rates," what Defendant may now identify as ADP's "proprietary RROP formula," was only part of the discovery Defendant was ordered to produce.  It was not the "primary failing."

Defendant further posits the pay records (and pay rates) Plaintiffs sought, and Defendant agreed to produce, were "ignored." (Doc. 397; *see also* Doc. 405 ("Plaintiffs now explain: 'Plaintiffs did not use the two-week 'paid rate' or 'RROP' calculations because neither of those two numbers is a weekly or a shift-by-shift number that can be used to calculate a weekly regular rate of pay.' . . .  The two-week 'pay rate' information Plaintiffs have accused Ms. Pledger of

---

[8] The June 2020 ordered pertained to 11 Plaintiffs with the understanding the discovery would be extended to all Plaintiffs.  *See* Doc. 344.

'cho[osing] to omit' was information that Plaintiffs apparently never wanted."  (quoting Doc. 401)).

The Court notes Defendant repeatedly conflates the "regular rate of pay" it was required to produce[9] with the "RROP" calculated as a result of what ADP identifies as its "proprietary RROP formula."  (Doc. 397).  The Court, however, is not confused.  Defendant failed to produce the "regular rate of pay" of each Plaintiff, including multiple hourly rates, when the regular rate varied by shift.  These "regular rates of pay" are not always the same number as the "RROP" calculated by ADP's proprietary formula.  It is interesting to now learn that ADP employs a "proprietary RROP formula" to calculate the overtime of Defendant's employees.  It would have been extremely useful years ago to know such a formula was employed; however, Defendant did not share this knowledge.  Of course, the Court recognizes it remains to be seen whether ADP's "proprietary RROP formula" complies with the applicable FLSA regulations for calculating the "regular rate of pay" when an employee is paid multiple pay rates within the work week.  *See* 29 CFR 778.115 (providing for the "regular rate of pay" where an employee works differing regular rates of pay in a single work week).  For all of the above reasons, the deposition testimony from *Gibson* does not support Defendant's position that the November 18 Order should be set aside.

---

[9] *See* Doc. 344 ("Among other things, the Court directed Defendant to produce the pay records, **including multiple regular shift hourly rates if applicable**, pay date, pay period ending date, gross pay and overtime pay, daily clock-in and clock-out records, and the amount of the monthly bonus by pay date.") (emphasis added).

B.    **Defendant's Other Arguments**

1.    **The Court did not Sanction Defendant for Actions of its Former Counsel Only**

Defendant also argues it would be unjust to hold it accountable for the action, or inaction, of its former counsel, Littler.  (Doc. 397).  Defendant argues "no one ever meaningfully defended" it and it was "kept in the dark" by Littler as to what was actually occurring in this Court.  (Doc. 369 at 7).  Defendant argues the bad faith the Court attributes to it was conduct of Littler.  (*Id*.).

In support of this argument, Defendant submits a declaration of its Vice President, David Scheid, together with several emails between Scheid and former counsel:

> I am attaching a range of emails between OTK and Littler that this Court has not had the benefit of reviewing [in] previous hearings. . . I believe they are relevant to this Court's prior determinations of OTK's conduct.  This correspondence is in the two weeks surrounding the Court's multiple show cause hearings.  I am providing these select emails with our counsel for the limited purpose of showing this Court that OTK was, prior to the first two hearings, unaware that it faced serious issues with the Court.  I believe these emails will confirm to the Court (1) that OTK was informed of certain issues by its prior counsel, (2) that OTK reasonably believed that the discovery matters, including the ADP subpoena, were being addresses by its counsel to the satisfaction of the Court, and (3) that OTK reasonably believed that any failure in discovery was the failure of ADP.

(Doc. 368-8 at 8).

First, in order to be properly before this Court on a motion to reconsider, these emails must be newly-available evidence.  "Where a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion."  *Mays v. United States Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997).  "On a motion for reconsideration a party is 'obliged to show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not have discovered and produced such evidence.'"

*Id.* at n.6.  *See also Walker v. North Am. Specialty Ins. Co.*, 2017 U.S. Dist. LEXIS 9764, *7-8 (M.D. Ga. Jan. 24, 2017) (declining to consider evidence that should have been produced during the pendency of the motion for summary judgment).

To be sure, the Scheid declaration references heretofore unproduced emails, relevant to the time frame leading up to and surrounding the Show Cause hearing with ADP.  However, these self-selected emails, as Plaintiffs correctly argue, only provide insight into a fraction of the circumstances leading to the Court's November 18 Order.  (Doc. 393).  Scheid's declaration, for example, says "nothing about and does not produce [] communications to and from Littler (or internal within OTK) about OTK's discovery obligations during the first 26 or so months the case was pending about OTK's discovery obligations." (*Id*.).  Scheid's emails may be relevant to some other claims, however they are not "newly-available" evidence demonstrating that the Court should reconsider its November 18 Order. [10]

More generally, these declarations, and their attachments, are declarations of its employees who now attempt to better explain the situation.  These employees have worked for Defendant throughout the pendency of this action.  These declarations could have been produced before now, in response to any of Plaintiffs' various motions for sanctions or the R&R. More importantly, these declarations do not provide any crucially important evidence, newly-available or otherwise, to undermine the Court's conclusion that Defendant's failure to produce its time and pay records was the result of its bad faith participation in discovery.  Under Eleventh

[10] *See, e.g., Fetterhoff v. Liberty Life Assur. Co.*, 2007 U.S. Dist. LEXIS 42708, *3-4 (S.D. Ala. June 11, 2007) (denying motion to reconsider and finding the dismissal did not result in manifest injustice where plaintiff argued the dismissal of her case was the fault of her attorney).

Circuit precedent, the absence of any new evidence on this point would merit denial of Defendant's Motion outright.  "However, 'if a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief' when considering a motion to set aside an entry of default." *See Roche Diagnostics,* 2021 U.S. Dist. LEXIS 16317, *7 (quoting *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion,* 88 F.3d 948, 951-52 (11th Cir. 1996)).

The Court has previously rejected the notion Defendant was an innocent victim of its former counsel.  Defendant failed to produce accurate and complete time and pay records; records it agreed to produce and was required to produce and maintain under the FLSA, not its attorney.  Defendant's Motion has added nothing to convince the Court otherwise.

### 2.   Incomplete and Untimely Production does not Cure Defendant's Many Discovery Failures

Defendant also argues its default is cured because a significant portion of the pay records were ultimately produced by ADP in excel format throughout Spring 2021.  (Doc. 397).  Defendant also suggests Plaintiffs do not dispute that they now have all the information they need to prove up any damages.  (Doc 397 at 13-14).

The Court is not impressed.  First, Defendant's argument is circular.  Second, Defendant's position collides both with the recordkeeping obligations under the FLSA, placing the burden of maintaining pay records on the employer, and the Federal Rules of Civil Procedure.  The ADP production occurred seven months after discovery closed, and six months following the issuance of the R&R, recommending sanctions.  To be clear, by the time Defendant's own payroll provider eventually produced the time and pay records, discovery was long closed and sanctions had been recommended as a result of Defendant's failure to produce discovery.

Defendant cannot point to any authority suggesting this long overdue production cures its default.  No such authority exists.  Sanctions were ordered due to the significant prejudice to Plaintiffs as a result of Defendant's repeated failure to produce the very pay records it agreed to produce, and was compelled to produce, on multiple occasions, over the course of almost three years.  The Court cannot and will not agree.  Defendant's argument it cured its sanctionable conduct through the late production is denied.

### C.   Defendant's Arguments Pertaining to the February 17 2022 Order

Defendant also argues the Court's determination of Plaintiffs' well plead allegations was ill-considered and in error, resulting in the assessment of potentially "catastrophic" damages. (Docs. 369 and 397).

It is well settled that a motion to reconsider under Rule 54(b) is committed to the sound discretion of the trial court.  *Scott,* 2018 U.S. Dist. LEXIS 36262 at *5 (citing *Chapman v. AI Transport*, 229 F.3d 1012, 1023 - 24 (11th Cir. 2000) (en banc)); *Fetterhoff v. Liberty Life Assur. Co.*, 2007 U.S. Dist. LEXIS 42708, *2 (S.D. Ala. June 11, 2007).  In addition, "[i]n the interest of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly."  *Escapes!, Inc. v. Bunia*k, 2012 WL 5308078, at *1 (S.D. Ala. Oct. 29, 2012) (quoting *Gougler v. Sirius Prod., Inc.,* 370 F.Supp.2d 1185, 1189 (S.D.Ala.2005) (citation omitted).  "[M]otions for reconsideration should not be used to raise legal arguments which could and should have been made before the judgement was issued[ ]."  *Id*. (quoting *Sanderlin v. Seminole Tribe of Fla.,* 243 F.3d 1282, 1292 (11th Cir. 2001) (citations omitted)).  A motion to reconsider "cannot be brought solely to relitigate issues already raised." *Id*. (quoting *Harris v. Corrections Corp. of America,* 2011 WL 2672553, *1 (11th Cir. Jul. 22, 2011)).

Here, Defendant rehashes arguments it made in opposition to Plaintiffs preliminary damage calculations.  (*See* Docs. 354 and 363 ).  The Court heard these objections on March 4, 2022 and entered its findings. (Doc. 366).  Additionally, the Court reviewed, and re-reviewed, the TAC in order to draft the November 18 and February 17 Orders; and in preparation for the March 4, 2022, and August 9, 2022 hearings on damages.  Defendant has presented nothing new to sway this Court's earlier findings.  The Court will not reconsider its February 17, 2022, Order.

## III.   <u>CONCLUSION</u>

For the reasons stated above Defendant's Motion to Reconsider is **DENIED.**

**DONE and ORDERED** this 4th day of October, 2022.


/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE