IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ALABAMA

SOUTHERN DIVISION

```
* * * * * * * * * * * * *
WILLIAM HEATH HORNADY,          *
CHRISTOPHER MILLER and          *
TAKENDRIC STEWART,              *
Individually and on behalf      *
of all others similarly         *
situated,                      *
                               *
        Plaintiffs,            *
                               *
vs.                            *    CV NO: 18-cv-317-JB-N
                               *
OUTOKUMPU STAINLESS USA,       *
LLC,                           *
                               *
        Defendant.             *
* * * * * * * * * * * * *
```

DEPONENT:                MELISSA PLEDGER

DATE:                    March 11, 2020

TIME:                    8:50 a.m. - 4:45 p. m.

LOCATION:                Outokumpu Stainless USA
                         1 Steel Drive
                         Calvert, Alabama

REPORTED BY:             Dennise S. Wolstenholme, CCR



EXHIBIT 4

```
 1                          APPEARANCES

 2


 3
      ON BEHALF OF THE PLAINTIFFS:
 4

 5

 6                             IAN D. ROSENTHAL, ESQ.
                               Holston, Vaughan &
 7                             Rosenthal, LLC
                               211 South Cedar Street
 8                             Mobile, Alabama

 9

10                             PATRICK H. SIMS, ESQ.
                               Sims Law Firm, LLC
11                             P. O. Box 7112
                               Mobile, Alabama
12

13

14

15    ON BEHALF OF THE DEFENDANT:

16

17                             GAVIN S. APPLEBY, ESQ.
18                             SINEAD E. DALY, ESQ.
                               Littler Mendelson, PC
19                             3344 Peachtree Road, NE
                               Suite 1500
20                             Atlanda, Georgia

21

22

23    ALSO PRESENT:           DAVID SCHEID
```

```
 1                    INDEX TO EXAMINATION

 2

 3   WITNESS:                                    PAGE

 4   MELISSA PLEDGER

 5        Direct Examination by Mr. Rosenthal       6

 6        Cross-Examination by Mr Appleby          239

 7        Certificate of Reporter                  246

 8

 9             * * * * * * * * * * * * * * * *

10

11                    INDEX TO EXHIBITS

12

13   Plaintiff's Exhibit Nos. 1A and 1B          10

14   Plaintiff's Exhibit No. 2A                  32

15   Plaintiff's Exhibit No. 2B                  55

16   Plaintiff's Exhibit No. 2C                  66

17   Plaintiff's Exhibit No. 2D                  67

18   Plaintiff's Exhibit No. 2E                  72

19   Plaintiff's Exhibit No. 2F                  87

20   Plaintiff's Exhibit No. 3                  105

21   Plaintiff's Exhibit No. 4                  140

22   Plaintiff's Exhibit No. 5                  149

23   Plaintiff's Exhibit No. 6                  160
```

1    Plaintiff's Exhibit Nos. 7A and 7B                188

2    Plaintiff's Exhibit No. 8                         193

3    Plaintiff's Exhibit No. 9                         202

4    Plaintiff's Exhibit No. 10                        208

5    Plaintiff's Exhibit No. 11                        209

6

7

8

9

10

11

12

13                  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

14

15

16

17

18

19

20

21

22

23

S T I P U L A T I O N

It is stipulated by and between the parties hereto and their respective attorneys at law that the deposition on oral examination of the witness, MELISSA PLEDGER, may be taken before DENNISE S. WOLSTENHOLME, Certified Shorthand Reporter, and Notary Public, and that the said deposition shall be taken in accordance with, and when so taken, may be used in accordance with the provisions of the applicable sections of the Federal Rules of Civil Procedure.

It is further stipulated that all notices provided for by said applicable sections of the Federal Rules of Civil Procedure are waived, except the reading over of said deposition to or by the witness, the signing thereof by him, as is the signing and certification of said DENNISE S. WOLSTENHOLME, and all other requirements and technicalities of every sort which should be a prerequisite to the use of said deposition; including the filing of said deposition, it being the intent of the parties hereto that said deposition may be used in evidence as though all requirements of said applicable sections of the Federal Rules of Civil Procedure had been complied with.

1          All objections, save as to the form of the

2    question asked, are reserved until the time of trial in

3    accordance with the applicable provision of the said

4    Federal Rules of Civil Procedure.

5              * * * * * * * * * * * * * *

6                    MELISSA PLEDGER

7    having been first duly sworn to tell the truth, the

8    whole truth, and nothing but the truth, was examined and

9    testified as follows:

10

11                  DIRECT EXAMINATION

12   BY MR. ROSENTHAL:

13        Q.    Would you please state your full name?

14        A.    Melissa Pledger.

15        Q.    Ms. Pledger, what we're doing here today is

16   called taking a deposition.  Have you ever done this

17   before?

18        A.    No, I haven't.

19        Q.    So let me run through a couple of ground

20   rules so that you know what to expect and give you a

21   couple of tips on how to make this go more smoothly.

22   Here's the deal.  I will be asking you questions.

23   Dennise will be typing up my questions.  You will be

1        A.    Yes, it is.

2        Q.    Did you prepare documents entitled

3    Non-Exempt Bonus Pay Schedules during that time

4    frame?

5        A.    I have, yes.

6        Q.    Is that a subject that you had to obtain

7    information, or that you did obtain information from

8    anybody else about or review any other documents in

9    preparation for this deposition?

10       A.    No.

11       Q.    And you've been designated to provide

12   testimony on subject N which is, The methodology by

13   which the list of employees required to be provided

14   by District Court Judge Beaverstock was prepared and

15   the -- let's say I spelled identity right -- and the

16   identity of the persons who can verify its accuracy.

17   Is that correct?

18       A.    That's correct.

19       Q.    Were you responsible for preparing the list

20   of hourly employees for whom notice was being sent

21   about this lawsuit?

22       A.    Yes, I was.

23       Q.    And so that is a subject you have personal

1    knowledge of?

2        A.    Yes.

3            MS. DALY:  And I'll just note for the record

4    that anything outside of subjects A, I, M and N any

5    testimony provided by Melissa Pledger outside of those

6    four topics, would be in her individual capacity.

7            MR. ROSENTHAL:  Agreed and understood.

8        Q.    In preparation for this deposition, did you

9    review any documents?

10       A.    I've reviewed the list that we just went

11   through.

12       Q.    The list of subjects of deposition

13   testimony?

14       A.    Right.

15       Q.    Anything else?

16       A.    That's all.

17       Q.    During the course of this litigation, is it

18   accurate that you have reviewed at least some

19   interrogatory responses which are written answers to

20   written questions on behalf of the company and then

21   verify them?

22       A.    I have.

23       Q.    Melissa, let me go through some background

1    A.    I am not 100 percent positive.  I know they

2  review them quarterly.

3    Q.    Do you personally have any information

4  whatsoever about how any of the numbers in the

5  results columns on these Monthly Production

6  Incentives are actually calculated?

7    A.    No, I don't.

8    Q.    Let me switch gears with you, Ms. Pledger.

9  The list of employees that OTK gave me to whom

10  notices were sent of this lawsuit, was that a list

11  you prepared?

12    A.    Yes, it is.

13    Q.    And did you understand that it was to be a

14  list of everybody who was an hourly non-exempt

15  employee employed out here in Calvert since July of

16  2015?

17    A.    Yes, it is.

18    Q.    And I think there were some office worker

19  types that may have been excepted -- excluded from

20  that list; fair enough?

21    A.    Yes.

22        MS. DALY:  Object to the form.

23    Q.    · In other words, my first question where I

1   said, all the hourly non-exempt employees probably

2   overstated it.  How did you go about identifying who

3   all those employees were?

4       A.    I created a report out of SAP with the

5   criteria of the date range and their -- I believe I

6   had to include their address and whether they were

7   active or withdrawn from the company.

8       Q.    And did that SAP database that you were

9   searching through cover the entirety of July 2015

10  through whenever it was you prepared the list, or did

11  you also have to look at the ADP database?

12      A.    No.  I did it all in SAP.

13      Q.    When you were preparing that list and

14  running those searches, what did you do so that you

15  weren't picking up employees who were only salaried,

16  and therefore, not hourly and non-exempt?

17      A.    That was one of the criteria, the dates and

18  the employment status which was active or withdrawn

19  and the employee type, and that would have been

20  exempt or non-exempt.

21      Q.    So the employee status of active or

22  withdrawn covers everybody whether they're current

23  employees or former employees; correct?

1       A.      Correct.

2       Q.      Because all withdrawn means is they don't

3   work for you anymore?

4       A.      Withdrawn means terminated, yes.

5       Q.      And what did you do to pick up the employees

6   who were salaried during part of that period but

7   hourly during part of that period?

8       A.      That's -- the criteria was exempt and

9   non-exempt.  So if they were exempt at any time in

10  that time period, it would have picked them up.

11      Q.      Do you know a person who used to work here

12  named Andy Godwin?

13      A.      Yes, I do.

14      Q.      Do you know that Andy Godwin was an hourly

15  employee between July 2015 and when your list was

16  prepared?

17      A.      Yes, he was.

18      Q.      Do you know that Mr. Andy Godwin was not

19  included on the list you prepared?

20      A.      No, I didn't.

21      Q.      Can you explain to me, given the criteria

22  you used how Mr. Andy Godwin could have been excluded

23  from the list you prepared?

1              MS. DALY:  Object to the form.

2       A.    I don't know.  The criteria is what I put

3    in.

4       Q.    Did you know that Mr. Andy Godwin was an

5    employee who's a Plaintiff in this case?

6              MS. DALY:  Object to the form.

7       A.    There's so many on the list that I don't

8    know everyone.

9       Q.    Did you know he was one of them?

10      A.    I don't know.

11      Q.    Did you know he was a -- well, he was a

12   salaried manager during 2019; correct?

13      A.    Yes, he was.

14      Q.    Okay.  Do you have any explanation for why

15   Mr. Andy Godwin was not included in the list of

16   hourly employees that you prepared and verified?

17      A.    I do not know why.

18              MS. DALY:  Object to the form.

19      Q.    Okay.  Did you ever do anything to

20   doublecheck or single check or look into whether or

21   not the search you prepared picked up the employees

22   who were hourly non-exempt employees and also

23   salaried employees during the time frame you were

1    running the search?

2    A.    Well, when I ran it, some -- the ones that

3    were non-exempt and exempt that came out twice, so I

4    eliminated one of the lines.  So that was kind of an

5    audit to make sure that the exempt team members that

6    were non-exempt were on there.

7    Q.    Let me say it back to you and see if I

8    understand what you're telling me.  The search you

9    ran initially generated a list of both the non-exempt

10   and exempt employees who worked from July of 2015

11   through whenever you prepared the list; correct?

12   A.    Correct.

13   Q.    And then you went back and took out the

14   exempt employees?

15   A.    Unless they had a non-exempt status as well.

16   Q.    And the people who are exempt and non-exempt

17   showed up twice on the list; correct?

18   A.    They did.

19   Q.    And did they show up essentially on

20   consecutive lines of your list?

21   A.    The list ran alphabetically.

22   Q.    So for Mr. Andy Godwin not to be included in

23   the final list, either your search did not pick him

1  up at all as an hourly employee, or you deleted him

2  twice; correct?

3         MS. DALY:  Object to the form.

4     A.   I don't know what could have happened with

5  Andy Godwin's record.

6     Q.   So I guess I'm looking to you for advice.

7  If Mr. Andy Godwin was left off that list, what can

8  we do to determine whether or not your list excluded

9  other people who are hourly employees?

10        MS. DALY:  Object to the form.

11    A.   I'm not sure.

12    Q.   Does Mr. Godwin still work for OTK?

13    A.   He does not.

14        MR. APPLEBY:  Let's go off the record for a

15  minute; is that all right?

16        MS. DALY:  Yes.

17             (WHEREUPON, THERE WAS A BRIEF RECESS.)

18  BY MR. ROSENTHAL:

19    Q.   Ms. Pledger, the down side of taking breaks

20  is I figure out which follow-up questions I should

21  have asked, so I have to jump around and go back.  So

22  it is what it is.

23             First of all, would you agree with me that

245

SIGNATURE OF WITNESS

1

2          I, MELISSA PLEDGER, do hereby certify that

3    on this the 17th day of April ____, 2020 I have read the

4    foregoing transcript and to the best of my knowledge it

5    constitutes a true and accurate transcript of my

6    testimony taken on oral deposition on March 11, 2020.

7

8

9          _Melissa Pledger_

10                 MELISSA PLEDGER

11

12          Subscribed and sworn to before me on this

13    the 17th day of April _____, 2020.

14

15          My Commission Expires on:

16          May 13, 2021

17

18          _Janet M Norman_

19          Notary Public

20

21

22

23

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

WILLIAM HEATH HORNADY,                          )
CHRISTOPHER MILLER and                          )
TAKENDRIC STEWART, Individually and             )
on behalf of all others similarly situated,     )
                                                )
                                                )   CASE NO.: 18-cv- 317-JB-N
                 Plaintiffs,                     )
                                                )
        v.                                      )
                                                )
                                                )
OUTOKUMPU STAINLESS USA, LLC,                   )
                                                )
                 Defendant.                      )
                                                )
_____

**FIRST AMENDED NOTICE OF 30(B)(6) DEPOSITION**

TO:                 COUNSEL

DEPONENT:           Outokumpu Stainless USA, LLC by its Rule 30(b)(6)
                    representatives

TIME:               9:00 a.m. Central Time

DATE:               March 11, 2020 to continue March 13, 2020, March 16, 2020 and
                    day to day thereafter to the extent David Scheid, Melissa Pledger
                    and Karrie Walker are not designated (collectively) as
                    representatives on all topics.

LOCATION:           HOLSTON, VAUGHAN & ROSENTHAL, LLC.
                    211 South Cedar Street
                    Mobile, Alabama 36602

COURT REPORTER:     Dennise S. Wolstenholme

        Please take notice that at the above dates and time, the Plaintiffs' attorney will take the

deposition of deponent, **OUTOKUMPU STAINLESS USA, LLC,** for the purpose of discovery,

or for use as evidence, or both, at the time, dates and location indicated above, pursuant to <u>Federal</u>



Rules of Civil Procedure.  Said deposition to be taken upon oral examination before an office

authorized by the Federal Rules of Civil Procedure to administer oaths and to continue from day

to day until completed.  You are invited to attend and cross-examine the deponent.

The Subjects of Examination are attached hereto as Exhibit 1.

Respectfully submitted,

**HOLSTON, VAUGHAN & ROSENTHAL, LLC.**

By: /s/ Ian D. Rosenthal
Ian D. Rosenthal – ROSEI6905
Attorney for Plaintiffs
P.O. Box 195
Mobile, AL 36601
(251) 432-8883 (office)
(251) 432-8884 (fax)
Email: idr@holstonvaughan.com

**SIMS LAW FIRM, LLC.**

Patrick H. Sims – SIMSP8145
Attorney for Plaintiffs
P.O. Box 7112
Mobile, AL 36670
(251) 725-1316 (office)
Email: patrick@simslawfirm.net

2

## CERTIFICATE OF SERVICE

I hereby certify that I have on this the 3rd day of March, 2020, served the foregoing on counsel of record by Electronic Mail as follows:

Jennifer F. Swain, Esq.
LITTLER MENDELSON, P.C.
420 20th Street North, Suite 2300
Birmingham, Alabama 35203-3204

Gavin S. Appleby, Esq.
Sinead Daly, Esq.
LITTLER MENDELSON, P.C.
3344 Peachtree Road, N.E., Suite 1500
Atlanta, GA 30326


/s/ Ian Rosenthal
OF COUNSEL

3

## Exhibit 1 – Subjects of Examination

(A).    Time and pay methodology for hourly, non-exempt, employees from July, 2015 - present.

(B).    The entire factual basis for the assertion in the FOURTH DEFENSE asserted by Defendant that:

> Plaintiffs' claims are barred, in part, by the provisions of Section 10 of the Portal-to-Portal Act, 29 U.S.C. § 259, because actions taken in connection with Plaintiffs' compensation were done in good faith in conformity with and reliance upon written administrative regulations, orders, rulings, approvals, interpretations, and written and unwritten administrative practices or enforcement policies of the Administrator of the Wage and Hour Division of the United States Department of Labor.

(C).    The exact "written administrative regulations, orders, rulings, approvals, interpretations, and written and unwritten administrative practices or enforcement policies of the Administrator of the Wage and Hour Division of the United States Department of Labor" Defendant contends it relied upon, when those documents were considered, by whom, and what actions were taken in reliance on those document.

(D).    The entire factual basis for the assertion in the FIFTEENTH DEFENSE asserted by Defendant that

> Plaintiffs' claims are barred in whole or in part by the provisions of Section 11 of the Portal-to-Portal Act, 29 U.S.C. § 260, because any acts or omissions giving rise to this action were done in good faith and with reasonable grounds for believing that the actions or omissions were not a violation of the FLSA.

(E).    The entire substance, and asserted relevance to Defendant's claims or defenses, of each of the "certain, relevant non-privileged documents from Plaintiffs and Opt-in Plaintiffs' personnel files" referred to in Defendant's Rule 26(a)(1) Initial Disclosures and produced by Defendant to date in the course of discovery.

(F).    The entire substance, and asserted relevance to Defendant's claims or defenses, of each of the "relevant, non-privileged documents concerning Defendant's pay and other policies and procedures" referred to in Defendant's Rule 26(a)(1) Initial Disclosures and produced by Defendant to date in the course of discovery.

(G).    For each month since July, 2015 the exact content of the data provided that was actually reviewed and tabulated in "Monthly Incentive" documents like the example attached for January, 2018. Using that document as an example, Defendant is requested to provide testimony for every month as to:

4

- The data or information actually reviewed as the basis for a "Result" of 2 for "Safety – OSHA Recordable Rate – Team Members

- The data or information actually reviewed as the basis for a "Result" of 1 for "Safety – OSHA Recordable Rate – Contractors."

- The data or information actually reviewed as the basis for a "Result" of 57 for "On Time Delivery."

- The data or information actually reviewed as the basis for a "Result" of 98.77 for "MS-Controllable Hit Rate."

- The data or information actually reviewed as the basis for a "Result" of 0.93 for "Rejects."

- The data or information actually reviewed as the basis for a "Result" of 3.46 for "Rework."

- The data or information actually reviewed as the basis for a "Result" of 0.00 for "Mismatches at Customer."

- The data or information actually reviewed as the basis for a "Result" of 1451 for "Melt Shop"

- The data or information actually reviewed as the basis for a "Result" of 4.46 for "% Improvement of Bottleneck CVT-CAPL."

- The data or information actually reviewed as the basis for a "Result" of 617.70 for "Melt Shop & CRW."

- The data or information actually reviewed as to any categories other than those listed above which appear on Monthly Incentive documents from July, 2015 – December, 2016.

- The identity of the individuals submitting for review the information each month, and what each submitted.

- The identity of the individuals reviewing the information each month, and what action was taken after review.

(H).    The exact substance of POL-HR5-0305, and any revisions, at all times since July 30, 2015.

(I).    The rates at which overtime work was paid for (i.e. when were employees paid overtime at 1.5 times their day shift rate, when were they paid 1.5 times shift rate plus $0.50 shift

5

differential, and when were they paid 1.5 times a weighted average of time worked at day shift rates plus shift differential).

(J)     All policies, procedures, guidelines and instructions given to managers since July 1, 2015 concerning the criteria for approving, or disapproving, pay for time clocked in that exceeded 12 hours a shift.

(K)     For each month since December, 2016 the individuals from 'Production & Planning, Finance, Quality, and HSE" who provided "safety, production, quality and cost data as outlined in HRS 0305" as described in SOP-HRS-2007 dated January 1, 2017, and the exact information each provided.

(L)     For each month from July, 2015 - December, 2016 the individuals who provided any information described in the version of SOP-HRS-2007 in effect at that time, and the exact information each provided.

(M)     The substance of any documents circulated to employees June, 2015 – present describing or referring to "Non-Exempt Bonus Pay Schedule[s]."

(N)     The methodology by which the list of employees required to be provided by District Court Judge Beaverstock was prepared, and the identify of the person(s) who can verify its accuracy.

6